**UNITED STATES DISTRICT COURT**
**SOUTHER DISTRICT OF NEW YORK**

| | |
|---|---|
| N. PANTELYAT, Individually and on Behalf of All Others Similarly Situated,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>BANK OF AMERICA, N.A. and BANK OF AMERICA CORPORATION,<br><br>　　　　　　Defendants | Civil Action No. 1:16-cv-8964<br><br>**CLASS ACTION COMPLAINT**<br><br><br>JURY TRIAL DEMANDED |

## CLASS ACTION COMPLAINT

Plaintiff N. Pantelyat ("Plaintiff"), individually and on behalf of all others similarly situated, based on personal knowledge as to herself, on the investigation of her counsel, and on information and belief as to all other matters, alleges as follows:

### NATURE OF ACTION

1.      Plaintiff brings this Class Action Complaint against Bank of America Corporation, Bank of America, N.A., and their present, former, or future direct and indirect parent companies, subsidiaries, affiliates, agents, and/or other entities (collectively, "Bank of America"), to end and seek redress for, Bank of America's unauthorized, unfair, and unlawful practice of assessing overdraft fees for "non-recurring" debit card transactions that have been misclassified as "recurring" debit card transactions.

2.      Bank of America promises its account holders that it "do[es] not authorize overdrafts for everyday *non-recurring* debit card transactions and ATM transactions" and "do[es] *not charge you an Overdraft Item fee* on an everyday *non-recurring* debit card transaction."

3.      However, with respect to *recurring* debit card transactions, Bank of America promises its account holders that it will authorize overdrafts and charge a corresponding overdraft fee: "*We do charge you an Overdraft Item fee* each time we authorize and pay any other type of overdraft transaction [besides non-recurring transactions].  These other types of transactions include checks and other transactions

made using your checking account number, *recurring debit card transactions*, Online and automatic bill payments, and ACH transactions."

4.      Bank of America explains the distinction between "non-recurring" debit card transactions (which are not subject to overdraft fees) and "recurring" debit card transactions (which are subject to overdraft fees) as follows:

> Everyday non-recurring debit card transactions are usually purchases made with your debit card or debit card number on a one-time or day-to-day basis. As examples, you use your debit card for purchases of groceries, gas, or coffee in the morning. Recurring debit card transactions are usually transactions that you set up to occur automatically, such as automatic bill payments. As examples, you give merchants your debit card number to use for rent, mortgage, car, or utility payments.

5.      Despite Bank of America's contractual obligation to its account holders that it "do[es] not authorize overdrafts for everyday non-recurring debit card transactions and ATM transactions" and "do[es] not charge you an Overdraft Item fee on an everyday non-recurring debit card transaction," Bank of America has systematically authorized overdrafts on everyday non-recurring debit card transactions and has charged a $35.00 overdraft fee for each transaction.  Bank of America does this by misclassifying certain non-recurring debit card transactions, such as Uber transactions, as "recurring" transactions – even though such transactions are plainly "made with [a] debit card or debit card number on a one-time or day-today basis," and not "set up to occur automatically."

6.      Bank of America authorizes these misclassified transactions in order to maximize its overdraft fee revenue.

7.     Plaintiff and other Bank of America customers have been injured by these illegal practices.  On behalf of herself and the putative Classes, Plaintiff seeks damages, restitution and injunctive relief for Bank of America's breach of contract, unjust enrichment, conversion, and violations of New York General Business Law.

## JURISDICTION AND VENUE

8.     The Court has jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. §§ 1332(d)(2) & (6), because the aggregate claims of the putative class members exceed $5 million, exclusive of interest and costs, and because at least one of the members of the proposed classes is a citizen of a different state than Bank of America.

9.     Bank of America is subject to personal jurisdiction in New York pursuant to the "Deposit Agreement and Disclosures" entered into between Plaintiff and Bank of America because New York is the state where the financial center that maintains Plaintiff's account is located. *See* Exhibit ("Ex.") A attached hereto, Deposit Agreement and Disclosures, March 2016 ("Deposit Agreement"), at 48 ("Any action or proceeding regarding your account or this deposit agreement must be brought in the state in which the financial center that maintains your account is located. You submit to the personal jurisdiction of that state.").

10.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Bank of America is subject to personal jurisdiction in this District, *see id.*, because Bank of America regularly conducts business in this District, and because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this District.

**PARTIES**

11.     Plaintiff is a resident and citizen of New York.  At all times mentioned herein, Plaintiff's Bank of America checking account was maintained at a Bank of America financial center in New York.

12.     Bank of America is a national bank with its headquarters and principal place of business in Charlotte, North Carolina.  Bank of America is engaged in the business of, *inter alia*, providing retail banking services to consumers, and has provided personal checking accounts, and issued debit cards for use in conjunction with those personal checking accounts, to Plaintiff and the members of the putative Classes.  Bank of America operates banking centers throughout New York and the United States.

**FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS**

13.     At all relevant times, Plaintiff maintained a personal checking account with Bank of America.

14.     Bank of America issues debit cards to its personal checking account customers, and issued debit cards to Plaintiff and the members of the proposed Classes, to allow them electronic access to their checking accounts for purchases, payments, withdrawals and other electronic debit transactions.

15.     Pursuant to the documents governing Bank of America's relationship with its customers, including Plaintiff and the members of the proposed Classes, Bank of America is permitted to authorize, and to charge a $35.00 fee for, "recurring" debit card transactions for which there are insufficient funds to cover.  But Bank of America is not

4

permitted to authorize, or to charge a $35.00 fee for, one-time, "non-recurring" debit card transactions for which there are insufficient funds to cover.

16.     Despite the plain language of these documents, Bank of America nevertheless authorizes, and imposes overdraft fees for, non-recurring debit card transactions that are misclassified as recurring transactions and that result in a negative balance, as discussed in detail below.

A.      **The Mechanics of a Debit Card Transaction**

17.     A typical debit card transaction occurs in two parts, regardless of whether it is a one-time transaction for a routine daily purchase, or whether it is a recurring debit card transaction for payment of such items as a mortgage or electricity bill.

18.     First, authorization for the purchase amount is requested by the merchant. During this step, when a merchant physically or virtually "swipes" a customer's debit card, the merchant's card terminal connects, via an intermediary, to the customer's bank, and requests authorization that the account is open and active and that the transaction is approved by the bank.

19.     Second, the customer's bank determines whether the account is valid and whether to authorize or decline the transaction, at which point the bank sends either an authorization or a denial back to the merchant's card terminal, via an intermediary.

20.     At issue in this case is the second step – specifically, Bank of America's decision to authorize rather than decline non-recurring debit card transactions where there are insufficient funds available to cover a particular transaction, thereby resulting in the imposition of a $35.00 overdraft fee for each such transaction.

**B.     In 2010, Bank of America Begins Distinguishing Between "Non-Recurring" and "Recurring" Debit Card Transactions**

21.     In 2010, Bank of America decided to cease authorizing overdrafts (and to thus cease charging $35.00 fees) on one-time "non-recurring" debit card transactions, but to continue to authorize overdrafts (and thus continue to charge $35.00 fees) on "recurring" debit card transactions – that is, transactions occurring in regular intervals like payments for mortgages, utilities, insurance premiums, and membership fees.  In short, Bank of America for the first time adopted a radical distinction between two types of debit card transactions – one-time (which were protected from overdraft fees) and recurring (without that protection).

22.     Bank of America used this distinction between one-time, non-recurring transactions and recurring transactions to publically tout, through a massive media effort, its supposedly pro-consumer decision not to charge overdraft fees on routine debit card transactions.  Indeed, Susan Faulkner, an executive at Bank of America, was quoted in a CNN article from 2010 as saying: "Our customers have been clear that **they want to know if a purchase is going to overdraw their account**."[1]  Around the same time, a New York Times article stated:  "In a move that could bring an end to the $40 cup of coffee, Bank of America said on Tuesday that it was doing away with overdraft fees on purchases made with debit cards[.]  Bank [of America] officials said that effective this

---

[1]     Hibah Yousuf, "BofA to scrap overdraft fees on debit purchases", CNN Money, Mar. 10, 2010, available at *http://money.cnn.com/2010/03/10/news/companies/Bank_of_America_overdraft_fees/* (last visited Nov. 14, 2016) (emphasis added).

summer, **customers who try to make purchases with their debit cards without enough money in their checking accounts will simply be declined**."[2]  Faulkner was quoted in the New York Times piece as well: "What our customers kept telling me is **'just don't let me spend money that I don't have'. . . .  We wanted to help them avoid those unexpected overdraft fees**."[3]

23.     Accordingly, as Ms. Faulkner clearly understood, Bank of America's new distinction caused consumers to understand and expect that, when they attempt to use their debit card for a routine non-recurring purchase, the transaction will only be approved so long as sufficient funds exist in their checking account, and, therefore, the transaction will not possibly result in an overdraft fee.

> **C.     The Contract Governing Bank of America's Relationship With Its Account Holders Expressly States That Non-Recurring Transactions Are Immune From Overdraft Fees**

24.     Consistent with Bank of America's public statements, the documents governing the relationship between Bank of America and its personal checking account holders, including Plaintiff and the putative Class members, expressly state that Bank of America will not authorize overdrafts or charge overdraft fees for non-recurring debit card transactions.

---

[2]     Andrew Martin, "Bank of America to End Debit Card Overdraft Fees", The New York Times, Mar. 9, 2010, available at *http://www.nytimes.com/2010/03/10/your-money/credit-and-debit-cards/10overdraft.html* (last visited Nov. 14, 2016) (emphasis added).

[3]     *Id.* (emphasis added).

25.     Indeed, Plaintiff's and the putative Class members' personal checking accounts with Bank of America are, and were at all relevant times, governed by a document entitled "Deposit Agreement and Disclosures" (the "Deposit Agreement") – a standardized contract for deposit accounts, the terms of which are drafted by Bank of America, amended by Bank of America from time to time at its convenience and sole and complete discretion, and imposed by Bank of America on all of its customers. *See* Ex. A.

26.     In June 2010, shortly after the changes to Bank of America's overdraft policies discussed above were implemented, Bank of America issued a new Deposit Agreement (the pertinent terms of which remain in effect in the current version of the Deposit Agreement effective March 4, 2016), which stated in relevant part:

> OVERDRAFT AND DECLINED OR RETURNED ITEMS
> When we determine that you do not have enough available funds in your account to cover a check or other item, then we consider the check or other item an insufficient funds item.  If you have enrolled in one of the optional Overdraft Protection plans and have enough available funds in the linked account under the Overdraft Protection plan, we transfer funds to cover the item.  Otherwise, without notice to you, we either authorize or pay the insufficient funds item and overdraw your account (an overdraft item) or we decline or return the insufficient funds item without payment (a returned item). . . .
>
> PERSONAL ACCOUNTS - OVERDRAFT PRACTICES AND SETTINGS
>
> **With our Standard Overdraft Setting, we do not authorize overdrafts for everyday non-recurring debit card transactions and ATM transactions. This means that we decline everyday non-recurring debit card transactions and ATM transactions when we determine that at the time of the transaction you may not have enough available funds in your account (or in any applicable Overdraft Protection plan) to cover the transaction.** . . .  With this

> overdraft setting, we may authorize and pay overdrafts for other types of transactions. Other types of transactions include checks and other transactions made using your checking account number, recurring debit card transactions, ACH transactions, preauthorized payments, and automatic and online bill payments.

*Id.* at 11-13, 21-22 (emphasis added).

27.     The Deposit Agreement explains the distinction between "non-recurring" and "recurring" debit card transactions as follows:

> *What are everyday non-recurring debit card transactions and what are recurring debit card transactions?* Everyday non-recurring debit card transactions are usually purchases made with your debit card or debit card number on a one-time or day-today basis. As examples, you use your debit card for purchases of groceries, gas, or coffee in the morning. Recurring debit card transactions are usually transactions that you set up to occur automatically, such as automatic bill payments. As examples, you give merchants your debit card number to use for rent, mortgage, car, or utility payments.

*Id.* at 12.

28.     The Deposit Agreement expressly incorporates by reference a document entitled "Schedule of Fees".  The Schedule of Fees states, in pertinent part:

> **We do not charge you an Overdraft Item fee on an everyday non-recurring debit card transaction**. We also do not charge you an Overdraft Item fee on a ATM transaction unless you agreed to our overdraft practices for that particular ATM transaction. We do charge you an Overdraft Item fee each time we authorize and pay any other type of overdraft transaction. These other types of transactions include checks and other transactions made using your checking account number, recurring debit card transactions, Online and automatic bill payments, and ACH transactions.

*See* Ex. B attached hereto, Schedule of Fees, at 13 (emphasis added).

9

29.     In July 2014, Bank of America drafted and imposed on account holders a document entitled "Important Information about Your Card Agreement and Disclosure," which states in pertinent part:

> Overdrafts and Unposted Transactions
>
> **When you do not have enough available funds in your account … to cover everyday non-recurring debit card purchases or ATM withdrawals, we will decline the transaction and you will not be subject to overdraft fees**. For checks, ACH, recurring debit card transactions and online bill payments, we may decline or return the transaction unpaid or we may complete it and overdraw your account.

*See* Ex. C attached hereto, Important Information Brochure: Card Agreement and Disclosure, July 1, 2014, ¶¶ 4b, 7 (emphasis added).

30.     Thus, the express terms of the Deposit Agreement (and related documents) between Bank of America and its customers, including Plaintiff and the putative class members, only permit Bank of America to charge overdraft fees on recurring debit card transactions authorized into a negative balance, and in fact expressly provide that no non-recurring debit card transactions will be authorized, and no overdraft fees will be charged, when there are insufficient available funds in the account to cover the amount of a particular transaction.

31.     On its website, Bank of America reiterates its overdraft fee policy pertaining to recurring and non-recurring transactions as follows:

> ATM withdrawals and everyday, non-recurring debit card transactions (individual debit card purchases such as at the grocery store or a one-time online purchase), will only be authorized when we determine you have enough available funds in your eligible account or in your eligible linked

> Overdraft Protection account at the time of the transaction. Otherwise, we typically decline the transaction and we do not charge an Overdraft Item fee.
>
> For other types of transactions, such as checks, Bill Pay and other electronic payments, as well as recurring debit card payments we may pay transactions when you don't have enough available funds in your checking account or linked Overdraft Protection account at the time of the transaction.

*See* Ex. D attached hereto, Glossary of Banking Terms, Definition of "Standard Setting" (also available at *https://www.bankofamerica.com/deposits/manage/glossary.go* (last visited Nov. 14, 2016)).

      32.     Likewise, the "FAQs" section of the Bank of America webpage pertaining to "overdraft services" states, in pertinent part:

> When you use your debit card for everyday, non-recurring purchases, when we determine you don't have enough funds in your account or linked Overdraft Protection account our standard practice is to decline the transaction, and we do not charge an overdraft fee.
>
> For other types of transactions – like checks, Bill Pay and other electronic payments, as well as recurring debit card payments – made using your checking account number, we may charge you a NSF: Returned Item fee each time we decline or return one of these transactions. If we pay one of these transactions, we charge you an Overdraft Item fee.

*See* Ex. E attached hereto, FAQs: With Bank of America's Overdraft Settings, will I still be subject to Overdraft and NSF: Returned Item fees? (also available at *https://www.bankofamerica.com/deposits/manage/faq-overdraft-services.go* (last visited Nov. 14, 2016)).

33.     Another FAQs section of Bank of America's website expressly states that "[w]e do not charge you an Overdraft item fee on an everyday non-recurring debit transaction." *See* Ex. F attached hereto, FAQs: Bank Account Rates and Fees, What is an Overdraft          Item          fee?          (also          available          at *https://www.bankofamerica.com/deposits/manage/faq-account-rates-fees.go* (last visited Nov. 14, 2016).

34.     And, on the "Checking Clarity Statement" page of its website, described as providing "checking fee and policy information in a simple format so you know the ins and outs of your account," Bank of America provides its account holders a document entitled "Overview of Bank of America Core Checking key policies and fees," which states in pertinent part: "To help you avoid fees, we won't authorize ATM withdrawals or everyday debit card purchases when you don't have enough money in your account at the time of the transaction." *See* Ex. G attached hereto, Checking Clarity Statement (landing page), (also available at *https://www.bankofamerica.com/deposits/checking/checking-clarity-statement.go* (last visited Nov. 14, 2016); *See* Ex. H attached hereto, Overview of Bank of America Core Checking key policies and fees, Aug. 2016, at 1.

35.     As discussed below, both the Account Agreement and the representations on Bank of America's website completely misconstrue the true overdraft fee practices employed by Bank of America with respect to non-recurring debit card transactions.

**D.**      **Bank of America Breaches Its Account Agreement By Imposing Overdraft Fees On Non-Recurring Debit Card Transactions That It Improperly Authorized Into a Negative Balance**

36.      Bank of America's debit card transaction processing and overdraft fee practices are both contrary to the plain language of the governing Account Agreement and related documents, and contrary to the statements on Bank of America's website that interpret those contractual documents for account holders.

37.      First, Bank of America misclassifies, or intentionally fails to properly reclassify, many one-time, "non-recurring" transactions as "recurring" transactions.  For example, Bank of America debit card charges from Uber, among several other merchants, are misclassified as "recurring," because charges from these merchants do not occur, and indeed cannot be set to occur, automatically at a designated interval, such as on a weekly or monthly basis.  Indeed, Uber charges occur on a ride-by-ride basis and thus plainly constitute one-time, every day transactions, clearly falling within Bank of America's own definition of "non-recurring transaction."

38.      Second, Bank of America authorizes, and charges $35.00 overdraft fees for, these misclassified non-recurring debit card transactions when there are insufficient available funds to cover the transactions.[4]  And if a deposit is not made to bring the negative balance into the black within seven days, Bank of America charges another $35.00 "extended overdrawn balance charge" for the misclassified transaction.  Bank of

---

[4]      Significantly, most of these misclassified charges are of nominal dollar amounts (most Uber charges are under $10.00), significantly less than the $35.00 fee imposed by Bank of America.

America assesses these fees despite its repeated contractual representations (and repeated representations on its own website) that (1) it will **only** authorize, and will **only** charge overdraft fees for, **recurring** debit card transactions for which there are insufficient available funds to cover; and (2) that it will **not** authorize, and will **not** charge overdraft fees for, **non-recurring** debit card transactions for which there are insufficient available funds to cover.

39.    These practices are not only contrary to Bank of America's contractual obligations to its account holders, they also fly directly in the face of the express statements from Bank of America that its newly imposed overdraft fee policy was designed "to help [customers] avoid . . . unexpected overdraft fees" by "[not] let[ting] [them] spend money that [they] don't have."

40.    To recap, after having affirmatively told its customers that they no longer need to worry about spending money they don't have in the course of making non-recurring, day-to-day purchases, and after having memorialized those promises in the governing account documents, Bank of America has now broken those promises, and taken advantage of the very trust it instilled in its customers, by authorizing day-to-day transactions (from some of the most popular merchants including Uber) that its customers don't have sufficient funds to cover, for the sole purpose of feeding its insatiable appetite for overdraft fee revenue.

**E.    Bank of America Charges Plaintiff Overdraft Fees for Non-Recurring Debit Card Transactions, In Direct Violation of the Account Agreement**

41.    On March 4, 2016, with a balance of $3.44 in her Bank of America Core Checking account, Plaintiff used her Bank of America debit card to purchase a ride with Uber across town for $10.00.  *See* Ex. I attached hereto, Screenshot of Plaintiff's "BofA Core Checking – 1230" Account.  Later that same day, with a balance of -$6.56 in her account, Plaintiff used her Bank of America debit card to purchase a second ride with Uber across town for $7.67.  *Id.*

42.    Plaintiff's Uber transactions on March 4, 2016 constituted "non-recurring debit card transactions" within the meaning of the Account Agreement and related documents because Uber purchases are made on a one-time, day-to-day basis, and because such purchases were not, and indeed cannot be, set up by Plaintiff to occur automatically at a set interval.

43.    At the time Plaintiff initiated these transactions, Plaintiff reasonably believed, based upon the Account Agreement and related documents, as well as other statements made by Bank of America interpreting those documents, that Uber charges are non-recurring transactions and that such transactions cannot incur an overdraft fee, that Bank of America would only authorize her attempt to purchase a ride with Uber if she had available funds in her checking account to cover the transaction, and that under no circumstances would she be charged an overdraft fee resulting from the transaction.

44.    Nevertheless, Bank of America misclassified both Uber charges as "recurring" debit card transactions.  *See* Ex. J attached hereto, Screenshot of Plaintiff's

March 2016 eStatement for "BofA Core Checking – 1230" Account ("CHECKCARD 0303 UBER TECHNOLOGIES INC 866-576-1039 CA 24492156063719475244111 **RECURRING**" and "CHECKCARD 0303 UBER TECHNOLOGIES INC 866-576-1039 CA 24692166063000556556138 **RECURRING**") (emphasis added).

45.     Accordingly, despite the fact that Plaintiff's checking account did not have sufficient funds to cover either of these one-time and non-recurring transactions, Bank of America authorized them anyway on the grounds that they were each "recurring" — resulting in a balance of -$14.23.

46.     Later that same day, Bank of America charged two separate $35.00 overdraft fees to Plaintiff's checking account as a result of the two misclassified Uber transactions.

47.     The Account Agreement and other related documents expressly prohibited the authorization of, let alone the imposition of any overdraft fees related to, the non-recurring Uber transactions dated March 4, 2016.

48.     Nevertheless, as a result of the first one-time, non-recurring $10.00 debit card transaction to Uber, and the second one-time, non-recurring $7.67 debit card transaction to Uber — neither of which should ever have been authorized in the first instance — Plaintiff has been forced to pay $70.00 in overdraft fees to Bank of America.

49.     No reasonable person would consider Uber charges to be "recurring" charges within the meaning of the Account Agreement and related documentation.

50.     In imposing and collecting overdraft fees resulting from improperly authorized non-recurring transactions misclassified as recurring, Bank of America

16

breached its Account Agreement with Plaintiff and the members of the proposed Classes, converted Plaintiff's and the members of the proposed Classes' money, unjustly enriched itself, and violated New York General Business Law, as discussed below.

## CLASS ALLEGATIONS

51.     Plaintiff brings this action on behalf of herself and all others similarly situated pursuant to Rule 23 of the Federal Rules of Civil Procedure.  This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of Rule 23.

52.     The proposed classes are defined as:

> All Bank of America personal checking account holders in the United States who, from June 1, 2010 through the date of class certification, were charged overdraft fees on non-recurring debit card transactions that were misclassified as recurring debit card transactions and authorized into a negative available balance (the "National Class").

> All Bank of America personal checking account holders in New York who, from June 1, 2010 through the date of class certification, were charged overdraft fees on non-recurring debit card transactions that were misclassified as recurring debit card transactions and authorized into a negative available balance (the "New York Subclass").

The National Class and the New York Subclass are collectively referred to as the "Classes."

53.     Plaintiff reserves the right to modify or amend the definition of the proposed Classes before the Court determines whether certification is appropriate.

54.     Excluded from the Classes are Bank of America, its parents, subsidiaries, affiliates, officers and directors, any entity in which Bank of America has a controlling interest, all customers who make a timely election to be excluded, governmental entities, and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

55.     **Numerosity.**  The members of the Classes are so numerous that joinder is impractical.  The Classes consist of thousands of members, the identity of whom is within the knowledge of and can be ascertained only by resort to Bank of America's records.

56.     **Typicality.**  The claims of the representative Plaintiff are typical of the claims of the Classes in that the representative Plaintiff, like all Class members, was charged overdraft fees by Bank of America as a result of non-recurring debit card transactions that were misclassified as recurring transactions and authorized into a negative balance.  Plaintiff, like all Class members, has been damaged by Bank of America's misconduct in that she was assessed unlawful, unfair, and unconscionable overdraft charges.  Furthermore, the factual basis of Bank of America's misconduct is common to all Class members and represents a common thread of unlawful, unfair, and unconscionable conduct resulting in injury to all members of the Classes.

57.     **Commonality.**  There are numerous questions of law and fact common to the Classes and those common questions predominate over any questions affecting only individual Class members.   Among the questions of law and fact common to the Classes are whether Bank of America:

a.      Misclassified as "recurring," or failed to reclassify a misclassified "recurring" charge as "non-recurring," any debit card transactions that were in fact "non-recurring," pursuant to the meanings given to those terms by the relevant Bank of America contractual documents;

b.      Imposed overdraft fees on any such non-recurring debit card transactions that were misclassified as recurring, or were not reclassified as non-recurring, when those transactions were authorized into negative balances;

c.      Breached its covenant of good faith and fair dealing with Plaintiff and other members of the Classes through its overdraft policies and practices with respect to non-recurring debit card transactions;

d.      Converted money belonging to Plaintiff and other members of the Classes through its overdraft policies and practices with respect to non-recurring debit card transactions;

e.      Was unjustly enriched through its overdraft policies and practices with respect to non-recurring debit card transactions; and

f.      Violated the consumer protection acts of certain states through its overdraft policies and practices with respect to non-recurring debit card transactions.

58.     Other questions of law and fact common to the Classes include:

a.      The proper method or methods by which to measure damages, and

b.      The declaratory relief to which the Classes are entitled.

59.    **Adequacy.**  Plaintiff is committed to the vigorous prosecution of this action and has retained competent counsel experienced in the prosecution of class actions and, in particular, class actions on behalf of consumers and against financial institutions. Plaintiff's claims arise out of the same overdraft policies governed by Bank of America's contract and other related documents and arise out of the same conduct and practices of Bank of America in classifying transactions and imposing overdraft fees.  Thus, Plaintiff has no interests antagonistic to the interests of any other Class member and accordingly, Plaintiff is an adequate representative who will fairly protect the interests of the Classes.

60.    **Superiority.**  A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  Since the amount of each individual Class member's claim is small relative to the complexity of the litigation, and due to the financial resources of Bank of America, no Class member could afford to seek legal redress individually for the claims alleged herein.  Therefore, absent a class action, the Class members will continue to suffer losses and Bank of America's misconduct will proceed without remedy.  Even if Class members themselves could afford such individual litigation, the court system could not.  Given the complex legal and factual issues involved, individualized litigation would significantly increase the delay and expense to all parties and to the Court.  Individualized litigation would also create the potential for inconsistent or contradictory rulings.  By contrast, a class action presents far fewer management difficulties, allows claims to be heard which might otherwise go unheard because of the relative expense of bringing individual lawsuits, and provides the benefits of adjudication, economies of scale, and comprehensive supervision by a single court.

## FIRST CLAIM FOR RELIEF
### Breach of Contract
### (Individually and On Behalf of the Classes)

61.     Plaintiff repeats and incorporates all allegations in paragraphs 1-60 above.

62.     Plaintiff and Bank of America contracted for bank account deposit, checking, ATM, and debit card services, as embodied in Bank of America's Account Agreement and related documentation.

63.     Bank of America breached the terms of the Account Agreement and related documentation by charging overdraft fees on non-recurring debit card transactions that were misclassified as recurring debit card transactions and authorized into a negative balance.

64.     In plain, clear, and simple language, the Account Agreement and related documentation promise: (1) that Bank of America will not authorize, and will not charge overdraft fees on, non-recurring transactions where there are insufficient available funds; and (2) that Bank of America will only authorize, and will only charge overdraft fees on, recurring transactions where there are insufficient available funds. *See* Ex. A, at 12-13.

65.     Bank of America breached these plain contractual promises when it authorized into a negative balance, and then assessed overdraft fees on, "non-recurring" transactions initiated by Plaintiff and the Class members that were misclassified as "recurring" transactions, pursuant to the meanings of those terms as described in the Account Agreement and related documentation.

66.     Specifically, Bank of America breached its contractual promises to Plaintiff and all members of the Classes by mislabeling Uber and other one-time, non-recurring

debit card transactions as "recurring" debit card transactions, and by authorizing and imposing $35.00 overdraft fees on those mislabeled non-recurring debit card transactions.

67.     No reasonable person would consider Uber charges to be "recurring" charges within the meaning of the Account Agreement and related documentation.

68.     Plaintiff and the members of the Classes reasonably believed, based upon the Account Agreement and related documents, as well as other statements made by Bank of America interpreting those documents, that Uber charges are non-recurring transactions and that such transactions cannot incur an overdraft fee, that Bank of America would only authorize Uber purchases if available funds existed to cover the transaction, and that under no circumstances would overdraft fees be imposed resulting from such a transaction.

69.     At no time did any contractual provision exist authorizing Bank of America to charge overdraft fees on non-recurring debit card transactions initiated by Plaintiff or any putative Class member.

70.     Plaintiff and members of the Classes have performed all of the obligations imposed on them under the Account Agreement and related documentation.

71.     Plaintiff and members of the Classes have sustained monetary damages as a result of Bank of America's breach of the account documents.

/   /   /

/   /   /

/   /   /

/   /   /

## SECOND CLAIM FOR RELIEF
### Breach of the Covenant of Good Faith and Fair Dealing
#### (Individually and On Behalf of the Classes)

72.     Plaintiff repeats and incorporates all allegations in paragraphs 1-71 above.

73.     Plaintiff and Bank of America contracted for bank account deposit, checking, ATM, and debit card services, as embodied in Bank of America's Account Agreement and related documentation.

74.     Under the laws of the states where Bank of America does business, good faith is an element of every contract pertaining to the assessment of overdraft fees. Whether by common law or statute, all such contracts impose upon each party a duty of good faith and fair dealing.  Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit – not merely the letter – of the bargain.  Put differently, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form.  Evading the spirit of the bargain and abusing the power to specify terms constitute examples of bad faith in the performance of contracts.

75.     Subterfuge and evasion violate the obligation of good faith in performance even when an actor believes their conduct to be justified.  Bad faith may be overt or may consist of inaction, and fair dealing may require more than honesty.  Examples of bad faith are evasion of the spirit of the bargain, willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance.

76.     Bank of America breached the covenant of good faith and fair dealing by abusing any contractual discretion to which it was entitled to exercise.  Specifically, to the extent Bank of America enjoys discretion under the Account Agreement and related documentation with respect to classifying debit card transactions as either "recurring" or "non-recurring," Bank of America uses that contractual discretion to classify, or to refrain from reclassifying, transactions in a manner contrary to any reasonable, common sense understanding of those terms, for the purpose and with the effect of causing overdraft fees where no reasonable consumer would believe overdraft fees could be imposed.

77.     Plaintiff and members of the Classes have performed all of the obligations imposed on them under the Account Agreement and related documentation.

78.     Plaintiff and members of the Classes have sustained damages as a result of Bank of America's breach of the covenant of good faith and fair dealing.

**THIRD CLAIM FOR RELIEF**
**Conversion**
**(Individually and On Behalf of the Classes)**

79.     Plaintiff repeats and incorporates all allegations in paragraphs 1-78 above.

80.     Bank of America had and continues to have a duty to maintain and preserve its customers' checking accounts and to prevent the diminishment of those accounts through its own wrongful acts.

81.     Bank of America has wrongfully imposed overdraft fees on Plaintiff and the members of the Classes, and has taken specific and readily identifiable funds from their accounts in payment of these fees in order to satisfy them.

82.    Bank of America has, without proper authorization, assumed and exercised the right of ownership over these funds, in hostility to the rights of Plaintiff and the members of the Classes and without legal justification.

83.    Bank of America continues to retain these funds unlawfully without the consent of Plaintiff or members of the Classes.

84.    Bank of America intends to permanently deprive Plaintiff and the members of the Classes of these funds.

85.    These funds are properly owned by Plaintiff and the members of the Classes, not Bank of America.

86.    Bank of America currently claims that it is entitled to the ownership of these funds, contrary to the rights of Plaintiff and the members of the Classes.

87.    Plaintiff and the members of the Classes are entitled to the immediate possession of these funds.

88.    Bank of America has wrongfully converted these specific and readily identifiable funds.

89.    Bank of America's wrongful conduct is continuing.

90.    As a direct and proximate result of this wrongful conversion, Plaintiff and the members of the Classes have suffered and continue to suffer damages.

91.    Accordingly, Plaintiff and the members of the Classes are entitled to recover from Bank of America all amounts that Bank of America has wrongfully converted, including any and all other damages and costs permitted by law.

**FOURTH CLAIM FOR RELIEF**
**Unjust Enrichment**
**(Individually and On Behalf of the Classes)**

92.     Plaintiff repeats and incorporates all allegations in paragraphs 1-91 above.

93.     In the alternative to her breach of contract claims, Plaintiff, on behalf of herself and the Classes, asserts a common law claim for unjust enrichment.

94.     The contractual language of the Deposit Agreement does not directly address and govern all of the unjust conduct alleged herein and, in any event, is unenforceable and illusory based on Bank of America's unlawful conduct, anticipatory breach, and misrepresentations contained therein.

95.     By means of Bank of America's wrongful conduct alleged herein, Bank of America knowingly provided banking services to Plaintiff and members of the Classes that were unfair, unconscionable, and oppressive.

96.     Bank of America knowingly received and retained wrongful benefits and funds from Plaintiff and members of the Classes.  In so doing, Bank of America acted with conscious disregard for the rights of Plaintiff and members of the Classes.

97.     As a result of Bank of America's wrongful conduct as alleged herein, Bank of America has been unjustly enriched at the expense of, and to the detriment of, Plaintiff and members of the Classes.

98.     Bank of America's unjust enrichment is traceable to, and results directly and proximately from, the conduct alleged herein.

99.     Under the common law doctrine of unjust enrichment, it is inequitable for Bank of America to be permitted to retain the benefits it received, and is still receiving,

26

without justification, from the imposition of overdraft fees on Plaintiff and members of the Classes in an unfair, unconscionable, and oppressive manner.  Bank of America's retention of such funds under circumstances making it inequitable to do so constitutes unjust enrichment.

100.   The financial benefits derived by Bank of America from its unfair, unconscionable, and oppressive overdraft fee practices rightfully belong to Plaintiff and members of the Classes.

101.   Plaintiff and members of the Classes have no adequate remedy at law.

102.   Accordingly, Bank of America should be compelled to disgorge in a common fund for the benefit of Plaintiff and members of the Classes all wrongful or inequitable proceeds received from its unfair, unconscionable, and oppressive overdraft fee practices.  A constructive trust should be imposed upon all wrongful or inequitable sums received by Bank of America traceable to Plaintiff and the members of the Classes.

### FIFTH CLAIM FOR RELIEF
### Breach of Fiduciary Duty
### (Individually and On Behalf of the Classes)

103.   Plaintiff repeats and incorporates all allegations in paragraphs 1-102 above.

104.   Bank of America's maintenance of Plaintiff's and the members of the Classes' personal checking accounts imposed heightened fiduciary duties on Bank of America, specifically, to maximize the value of Plaintiff's and the Class members' accounts.

105.   Bank of America knowingly provided banking services to Plaintiff and members of the Classes that diminished the value of their checking accounts, including by imposing unfair, unconscionable, and oppressive overdraft fees.

106.   By means of Bank of America's wrongful conduct alleged herein, Bank of America breached its fiduciary duty of due care owed to Plaintiff and the members of the Classes.

107.   As a direct and proximate result of this breach of fiduciary duty, Plaintiff and the members of the Classes have suffered and continue to suffer damages, and further request an award of punitive damages.

### SIXTH CLAIM FOR RELIEF
### Violation of New York General Business Law § 349
### (Individually and On Behalf of the New York Subclass)

108.   Plaintiff repeats and incorporates all allegations in paragraphs 1-107 above.

109.   This claim is asserted on behalf of Plaintiff and members of the New York Subclass under the N.Y. Gen. Bus. Law § 349.

110.   Bank of America engaged in unfair and/or deceptive acts or practices relating to the imposition of objectively unreasonable $35.00 overdraft fees on consumers, in violation of N.Y. Gen. Bus. Law § 349.

111.   N.Y. Gen. Bus. Law § 349 prohibits "deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in [New York]."

112.   Bank of America engaged in unlawful conduct, made affirmative misrepresentations, or otherwise violated the N.Y. Gen. Bus. Law § 349 by, *inter alia*, knowingly and intentionally employing an unfair and deceptive policy and practice of charging overdraft fees on non-recurring transactions that were misclassified as recurring, and misrepresenting and failing to disclose its policy and practice of misclassifying transactions, or refraining from reclassifying misclassified transactions, and charging overdraft fees on such misclassified transactions.

113.   Bank of America intended for Plaintiff and the members of the New York Subclass to rely on these acts of concealment and omission so that Plaintiff and the members of the New York Subclass would incur and continue to incur overdraft fees.

114.   Bank of America's conduct caused Plaintiff and the members of the New York Subclass to suffer ascertainable losses by imposing $35.00 overdraft fees that, but for Bank of America's unfair and deceptive policy of charging overdraft fees on non-recurring transactions misclassified as recurring transactions, would not have been imposed.

115.   A causal relationship exists between Bank of America's unlawful conduct and the ascertainable losses suffered by Plaintiff and the members of the New York State Subclass.  Had Bank of America not authorized non-recurring transactions improperly classified as recurring where insufficient funds were available, or had Bank of America not charged overdraft fees after authorizing such transactions, Plaintiff and the members of the New York Subclass would not have incurred $35.00 overdraft fees in violation of the N.Y. Gen. Bus. Law § 349.

116.    Plaintiff and the New York Subclass are entitled to, *inter alia*, damages and declaratory relief as redress for Bank of America's repeated and ongoing violations of the N.Y. Gen. Bus. Law § 349.

**SEVENTH CLAIM FOR RELIEF**
**Violation of New York General Business Law § 350**
**(Individually and On Behalf of the New York Subclass)**

117.    Plaintiff repeats and incorporates all allegations in paragraphs 1-116 above.

118.    This claim is asserted on behalf of Plaintiff and members of the New York Subclass under the N.Y. Gen. Bus. Law § 350.

119.    N.Y. Gen. Bus. Law § 350 prohibits "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service in [New York]."

120.    By the acts and omissions alleged herein, Bank of America committed false advertising in the conduct of its business, trade, or commerce in the state of New York.

121.    Bank of America engaged in false advertising, made affirmative misrepresentations, or otherwise violated the N.Y. Gen. Bus. Law § 350 by, *inter alia*, characterizing its banking services as including a feature that prevents consumers from spending money they do not have and avoiding unexpected overdraft fees on day-to-day debit card purchases.

122.    The Deposit Agreement, the document entitled "Important Information about Your Card Agreement and Disclosure," and the Bank of America website all expressly state that: (1) one-time, non-recurring debit card transactions will only be authorized so long as sufficient funds exist; and (2) Bank of America will not charge consumers overdraft fees resulting from such transactions.

123.    These statements were false.  Bank of America knowingly and intentionally made these false statements concerning its unfair and deceptive policy and practice of charging overdraft fees on non-recurring transactions, which were misclassified as recurring.

124.    In making these false statements, Bank of America intended for Plaintiff and the members of the New York Subclass to rely on these false advertisements and acts of concealment and omission, for the purpose of causing Plaintiff and the members of the New York State Subclass to incur and to continue to incur overdraft fees.

125.    The foregoing false advertisements were misleading in a material way because they fundamentally misrepresent Bank of America's terms of service, and because they caused Plaintiff and the members of the New York Class to understand and expect that Uber charges are non-recurring transactions and that such transactions cannot incur an overdraft fee.

126.    Bank of America's conduct caused Plaintiff and the members of the New York Subclass to suffer ascertainable losses, as Plaintiff and New York Subclass members were charged overdraft fees they would not have incurred in the absence of Bank of America's false advertisements.

127.    Plaintiff and New York Subclass members seek, *inter alia*, declaratory relief, restitution for monies wrongfully obtained, disgorgement of ill-gotten revenues and/or profits, injunctive relief prohibiting Bank of America from continuing to disseminate its false and misleading statements, and other relief allowable under N.Y. Gen. Bus. Law § 350.

128.    As redress for Bank of America's repeated and ongoing violations of the

N.Y. Gen. Bus. Law § 350, Plaintiff and the members of the New York Subclass are

entitled to, *inter alia*, damages and declaratory relief.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff and the Classes demand a jury trial on all claims so

triable and judgment as follows:

1.    Declaring Bank of America's overdraft fee policies and practices described

above to be wrongful, unfair, and unconscionable;

2.    Awarding actual damages in an amount according to proof;

3.    Awarding restitution for all overdraft fees collected by Bank of America by

Plaintiff and the Classes resulting from the wrongs alleged herein in an amount to be

determined at trial;

4.    Disgorgement of the ill begotten gains derived by Bank of America from its

misconduct;

5.    Awarding punitive and exemplary damages;

6.    Awarding pre-judgment interest at the maximum rate permitted by

applicable law;

7.    Awarding costs and disbursements assessed by Plaintiff in connection with

this action, including reasonable attorneys' fees pursuant to applicable law; and

8.    Awarding such other relief as this Court deems just and proper.

## <u>JURY TRIAL DEMAND</u>

Plaintiff, on behalf of herself and the Class, hereby demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all claims so triable.

Dated:  November 17, 2016          **AHDOOT & WOLFSON, PC**

TINA WOLFSON
45 Main Street, Suite 230
Brooklyn, New York 11201
Tel:   917-336-0171
Fax:   917-336-0177
*twolfson@ahdootwolfson.com*

**AHDOOT & WOLFSON, PC**
ROBERT R. AHDOOT (*pro hac vice* to be filed)
THEODORE W. MAYA (*pro hac vice* to be filed)
BRADLEY K. KING (*pro hac vice* to be filed)
VANESSA SHAKIB (*pro hac vice* to be filed)
1016 Palm Avenue
West Hollywood, California 90069
Tel:   310-474-9111
Fax:   310-474-8585
*rahdoot@ahdootwolfson.com*
*tmaya@ahdootwolfson.com*
*bking@ahdootwolfson.com*
*vshakib@ahdootwolfson.com*