# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NICOLETTA PANTELYAT, MICHAEL EDWARDS, and ISABELLE SCHERER, Individually and on Behalf of All Others Similarly Situated,<br><br>　　　　　　Plaintiffs,<br><br>v.<br><br>BANK OF AMERICA, N.A. and BANK OF AMERICA CORPORATION,<br><br>　　　　　　Defendants | Civil Action No. 1:16-cv-08964-AJN |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED**

**MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

## TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ................................................................................................ 1

II.  STATEMENT OF FACTS AND PROCEDURAL HISTORY ........................... 3

III. SUMMARY OF PROPOSED SETTLEMENT ................................................. 6

   A. The Settlement Class, Proposed Class Representatives, and Class Counsel ................. 6

   B. The Settlement Fund and Payments to Settlement Class Members .............................. 7

   C. Releases ...................................................................................................... 8

   D. Notice .......................................................................................................... 9

   E. Opt-Out Rights ............................................................................................. 9

   F. Objections to the Settlement ....................................................................... 10

   G. Attorneys' Fees and Expenses and Class Representative Service Awards .................. 10

IV.  ARGUMENT ....................................................................................................... 10

   A. The Court Should Approve the Proposed Settlement Agreement ............................... 10

   B. The Proposed Settlement Is Procedurally Fair ........................................................ 11

   C. The Proposed Settlement Is Substantively Fair ...................................................... 12

      1. The Litigation Is Complex and Would Be Expensive and Lengthy ......................... 13

      2. There Is Sufficient Discovery To Allow the Parties to Resolve the Case ................ 14

      3. Risk of Establishing Liability ........................................................................... 15

      4. Risk of Maintaining Class Status ..................................................................... 16

      5. The Ability of Defendants to Withstand a Greater Judgment ................................. 17

      6. The Settlement Fund Is Substantial in Light of the Possible Recovery and the Risks
         of Litigation ................................................................................................. 17

   D. The Court Should Certify the Settlement Class ...................................................... 19

      1. The Class Is So Numerous That Joinder of All Members Is Impracticable .............. 19

      2. Commonality Is Met ....................................................................................... 20

      3. The Plaintiffs' Claims Are Typical ................................................................... 20

      4. Adequate Representation ................................................................................ 21

      5. Common Questions Predominate ..................................................................... 22

      6. Superiority .................................................................................................... 23

# TABLE OF CONTENTS

**(continued)**                                                                    **Page**

E.  The Proposed Form and Method of Class Notice Is Appropriate ................................ 24

   1.  The Scope of the Notice Program Is Adequate ........................................................ 24

   2.  The Proposed Class Notice Comports with Due Process and with Rule 23 ............. 24

F.  Proposed Schedule ......................................................................................................... 25

V.   CONCLUSION ........................................................................................................................ 25

## <u>TABLE OF AUTHORITIES</u>

**Page**

**Cases**

*Am. Medical Ass'n v. United Healthcare Corp.*, No. 00-cv-2800-LMM, 2009 WL
1437819 (S.D.N.Y. May 19, 2009)................................................................ 13

*Amchem Prods., Inc. v. Windsor,* 521 U.S. 591 (1997).................................... 19, 22

*Athale, et al. v. Sinotech Energy Limited, et al.*, Case No. 11-c-05831 (AJN), 2013 WL
11310686 (S.D.N.Y. Sept. 4, 2013)................................................................ 5

*Bellifemine v. Sanofi-Aventis U.S. LLC*, No. 07-cv-2207-JGK, 2010 WL 3119374
(S.D.N.Y. Aug. 6, 2010)............................................................................. 16

*Bodnar v. Bank of America*, Case No. 5:14-cv-03224-EGS (E.D. Penn)............................. 4

*Charron v. Weiner,* 731 F.3d 241 (2d Cir. 2013) .................................................. 13

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974)................................ 13, 15, 18

*City of Providence v. Aeropostale, Inc.*, No. 11 Civ. 7132, 2014 WL 1883494 (S.D.N.Y.
May 9, 2014)........................................................................................ 14

*Cnty. of Suffolk v. Long Island Lighting Co.*, 710 F. Supp. 1422 (E.D.N.Y. 1989) ............. 19

*Cutler v. Perales*, 128 F.R.D. 39 (S.D.N.Y. 1989).................................................. 20

*D'Alauro v. GC Services Ltd. P'ship*, 168 F.R.D. 451 (E.D.N.Y. 1996) ............................ 21

*D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001)............................................. 11

*Davis v. J.P. Morgan Chase & Co.*, 775 F. Supp. 2d 601 (W.D.N.Y. 2011)................. 11, 17

*Denney v. Deutsche Bank AG*, 443 F.3d 253 (2d Cir. 2006) ........................................ 19

*Dietrich v. Bauer*, 192 F.R.D. 119 (S.D.N.Y. 2000) ............................................... 20

*Dura–Bilt Corp. v. Chase Manhattan Corp.*, 89 F.R.D. 87 (S.D.N.Y. 1981) ....................... 21

*Farrell v. Bank of America*, Case No. 3:16-cv-00492-L-WVG (S.D. Cal.) ........................... 4

*Goldberger v. Integrated Res., Inc.,* 209 F.3d 43 (2d Cir. 2000)................................. 13

*Holocaust Victim Assets Litig.*, 424 F.3d 132 (2d Cir. 2005) ..................................... 8

*In re "Agent Orange" Prod. Liab. Litig.*, 597 F. Supp. 740 (E.D.N.Y. 1984), *aff'd*, 818
F.2d 145 (2d Cir. 1987)............................................................................. 18

*In re Am. Med. Sys., Inc.*, 75 F.3d 1069 (6th Cir. 1996)........................................... 20

*In re AOL Time Warner Inc.*, No. 02-cv-5575-SWK, 2006 WL 903236 (S.D.N.Y. Apr.
6, 2006) ............................................................................................ 18, 19

*In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164 (S.D.N.Y.
2000)................................................................................................ 13, 15

*In re Bear Stearns Co. Sec. Derivative and ERISA Litig.*, 909 F. Supp. 2d 259 (S.D.N.Y.
2012) ................................................................................................ 15

## TABLE OF AUTHORITIES

### (continued)

Page

*In re Citigroup Inc. Securities Litig.*, 199 F. Supp. 3d 845 (S.D.N.Y. 2016) ......................... 8

*In re Enron Corp. Sec. & ERISA Derivative Litig*, 228 F.R.D. 541 (S.D. Tex. 2005) .......... 19

*In re Giant Interactive Group, Inc. Sec. Litig.*, 279 F.R.D. 151 (S.D.N.Y. 2011) ............... 12

*In re Global Crossing Sec. & ERISA Litig.,* 225 F.R.D. 436 (S.D.N.Y. 2004) ......... 13, 14, 16

*In re Indep. Energy Holdings PLC Sec. Litig.*, No. 00-cv-6689-SAS, 2003 WL 22244676 (S.D.N.Y. Sept. 29, 2003) ................................................................................................ 18

*In re Indus. Diamonds Antitrust Litig.*, 167 F.R.D. 374 (S.D.N.Y. 1996) ............................ 21

*In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, No. 02 MDL 1484(JFK), 2007 WL 313474 (S.D.N.Y. Feb. 1, 2007) ................................................................................ 24

*In re NASDAQ Mkt–Makers Antitrust Litig.,* 187 F.R.D. 465 (S.D.N.Y. 1998) .................. 17

*In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104 (S.D.N.Y. 1997) ............................. 15

*In re Scotts EZ Seed Litig.*, 304 F.R.D. 397 (S.D.N.Y. 2015) ............................................. 23

*In re Stock Exchs. Options Trading Antitrust Litig.*, No. 99-cv-962-RCC, 2006 WL 3498590 (S.D.N.Y. Dec. 4, 2006) ................................................................................... 24

*In re Traffic Executive Ass'n Eastern RRs*, 627 F.2d 631 (2d Cir. 1980) ............................ 11

*In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124 (2d Cir. 2001) ..................... 22

*In re Vivendi Universal, S.A.*, 242 F.R.D. 76 (S.D.N.Y. 2007) ............................................ 21

*In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516 (3d Cir. 2004) .................................. 17

*Kindle v. Dejana,* 315 F.R.D. 7 (E.D.N.Y. 2016) ................................................................ 21

*Klein ex rel. Ira v. PDG Remediation, Inc.,* No. 95-cv-4954-DAB, 1999 WL 38179 (S.D.N.Y. Jan. 28, 1999) ................................................................................................ 15

*Morris v. Affinity Health Plan, Inc.,* 859 F. Supp. 2d 611 (S.D.N.Y. 2012) .................. 12, 17

*Newman v. Stein*, 464 F.2d 689 (2d Cir. 1972) .................................................................... 18

*Odom v. Hazen Transport, Inc.*, 275 F.R.D. 400 (W.D.N.Y. 2011) ..................................... 16

*Penn. Ave. Funds v. Inyx Inc.,* No. 08 Civ. 6857(PKC), 2011 WL 2732544 (S.D.N.Y. July 5, 2011) .......................................................................................................................... 22

*Reed v. Continental Guest Svcs. Corp.*, No. 10 Civ. 5642 (DLC), 2011 WL 1311886 (S.D.N.Y. Apr. 4, 2011) ................................................................................................. 11

*Robbins v. Koger Props., Inc.,* 116 F.3d 1441 (11th Cir. 1997) ........................................... 14

*Robidoux v. Celani*, 987 F.2d 931 (2d Cir. 1993) ................................................................ 20

*Saddle Rock Partners Ltd. v. Hiatt*, No. 96-cv-9474-SHS, 2000 WL 1182793 (S.D.N.Y. Aug. 21, 2000) ............................................................................................................... 20

## TABLE OF AUTHORITIES

**(continued)**                                                                         **Page**

*Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*, 258 F. Supp. 2d 254 (S.D.N.Y. 2003) ................................................................................................................. 14

*Thompson v. Metropolitan Life Ins. Co.,* 216 F.R.D. 55 (S.D.N.Y. 2003) ........................... 15

*Trief v. Dun & Bradstreet Corp.*, 144 F.R.D. 193 (S.D.N.Y. 1992) ..................................... 20

*Wal-Mart Stores v. Visa U.S.A.*, 396 F.3d 96 (2d Cir. 2005)........................................... 10, 12

*Weinberger v. Kendrick*, 698 F.2d 61 (2d Cir. 1982) ................................................ 11, 19, 24

**Rules**

Fed. R. Civ. P. 23 .................................................................................................... passim

**Treatises**

Herbert B. Newberg & Alba Conte, *Newberg on Class Actions*, § 11.41 (4th ed. 2002) ................................................................................................................ passim

Manual for Complex Litigation, Fourth .............................................................................. 11

## I.    INTRODUCTION

This class action seeks redress for Bank of America's[1] assessment of overdraft fees charged on debit card transactions for the Uber rideshare service.  Plaintiffs allege that the assessment of such overdraft fees is a breach of Bank of America's Deposit Agreement with account holders.  Bank of America denies these allegations.  Notwithstanding the positions of the Parties, in the interest of avoiding the burden, expense, risk, and uncertainty of continuing these proceedings to trial, and after numerous mediations and extensive negotiations, the Parties have entered into a "Settlement Agreement and Release" ("Settlement Agreement" or "SA") (attached as Exhibit 1 to the concurrently filed Declaration of Robert Ahdoot ("Ahdoot Decl.")).

The Settlement requires Bank of America to pay $22 million dollars to establish a non-reversionary Settlement Fund for the benefit of the proposed Settlement Class Members, who hold 245,200 accounts with Bank of America.  Settlement Class Members need not take any action to obtain payment – all Settlement Shares will be paid automatically.  The Settlement also requires deposit of the Settlement Fund in an interest-bearing account for the benefit of the Class within ten (10) days after this Court issues a Preliminary Approval Order.  The Settlement Fund represents approximately 80% of the total revenues gleaned by Bank of America as a result of the conduct alleged in this Action.

The Settlement Fund will be used to pay: (1) all costs associated with administration of the Settlement (estimated to be $442,775 and capped at $455,000); (2) service awards of up to $2,500 each to the three Plaintiffs, as approved by the Court; (3) an award of attorneys' fees of up to twenty-five percent (25%) of the Settlement Fund, which equals up to $5,500,000, as approved by the Court; and (4) an award of costs, as approved by the

---

[1]     Unless otherwise defined herein, capitalized words and phrases shall have the same meaning as in the Definitions section of the Settlement Agreement.  (SA ¶¶1-47).  The Settlement Agreement is attached as Exhibit 1 to the Declaration of Robert Ahdoot, filed concurrently herewith.

Court.  If approved, Proposed Class Counsel ("Class Counsel") estimate that each Settlement Class Member will receive approximately $20 to $21 *for each* $35 overdraft fee charged to her or his Bank of America account.[2]

The Settlement falls well within the range of possible approval and meets the standards for preliminary approval.  It is based on a thorough review, investigation, and evaluation of the facts and law relating to the matters alleged in the pleadings, it was the product of hard-fought litigation and arm's length settlement negotiations between experienced counsel, with the assistance of a well-established mediator, and it contains no facial deficiencies.  Plaintiffs' Counsel have concluded, based upon their investigation, and taking into account the risks, uncertainties, burdens, and costs entailed by further prosecution of their claims, as well as the substantial benefits the Settlement Class will receive, that a resolution and compromise on the terms set forth in the proposed Settlement Agreement is more than fair, reasonable, adequate, and is in the best interests of the proposed Settlement Class.

In addition, the proposed Class Notice advises Settlement Class Members of the key elements of the Settlement, and the proposed notice program (featuring direct mail of the Class Notice to each Settlement Class Member) is the best practicable under the circumstances, and complies with Due Process.

Plaintiffs respectfully request that the Court: (1) grant preliminary approval of the settlement; (2) provisionally certify the proposed Settlement Class; (3) appoint as Class Counsel Tina Wolfson and Robert Ahdoot of Ahdoot & Wolfson, PC; (4) appoint Plaintiffs Nicoletta Pantelyat, Michael Edwards, and Isabelle Scherer as Settlement Class Representatives; (5) approve the proposed Notice Plan; (6) appoint Epiq Systems, Inc. ("Epiq") to serve as the Settlement Administrator ("Administrator"); and (7) schedule the

---

[2]     This estimate does not take into account (i) interest earned on the Settlement Fund (less any Taxes), and (ii) the number of Successful Opt-Outs – both of which can only increase this estimate.  This estimate assumes Administration Expenses of $450,000 and court approved Attorneys' Fees and Costs of $5,600,000 and Service Awards of $7,500.

Final Approval Hearing and related dates and deadlines.

## II.  STATEMENT OF FACTS AND PROCEDURAL HISTORY

Plaintiff Nicoletta Pantelyat filed this Action on November 16, 2016, alleging that Bank of America improperly assessed overdraft fees for two debit card transactions she made with Uber.  (*See generally* Dkt. 1, Class Action Complaint.)  The complaint alleges that in its Deposit Agreement with account holders, Bank of America promised that it would "not authorize overdrafts for everyday non-recurring debit card transactions and ATM transactions" and would "not charge … an Overdraft Item fee on an everyday non-recurring debit card transaction." (*Id.* ¶¶24-35.)  The Deposit Agreement stated that (i) "non-recurring" debit card transactions (which are not subject to overdraft fees) are "usually purchases made with your debit card or debit card number on a one-time or day-to-day basis [such as] groceries, gas, or coffee in the morning;" and (ii) "recurring" debit card transactions (which are subject to overdraft fees) as "transactions that …[are] set up to occur automatically, such as automatic bill payments." (*Id.*)  Despite these express contractual provisions, Bank of America systematically charged $35 overdraft fees on rides with Uber that are everyday non-recurring debit card transactions.  (*Id.*)

Class Counsel commenced their investigation of this case in April of 2016, approximately seven (7) months before the initial complaint was filed.  (Ahdoot Decl. ¶4.)  This investigation included, *inter alia*, interviews with hundreds of Bank of America deposit account holders and analysis of bank statements, analysis of various versions of the Bank of America Deposit Agreement, analysis of the Bank of America, N.A. Merchant Services Agreement,[3] monitoring of news and social media posts regarding issues relevant to this matter, evaluation of the Uber Application across various operating systems through various

---

[3]     This is an agreement between Bank of America, N.A. and its merchant customers regarding, *inter alia*, the acceptance of cards across various payments networks (such as Visa and MasterCard credit and debit cards, *etc.*).  (Ahdoot Decl. ¶6.)  Through discovery, Bank of America provided information demonstrating that Uber was not subject to such an agreement and was not a Bank of America merchant.  (*Id.*)

application updates, analysis of various other smart phone applications across various operating systems, monitoring of representations made by Uber (including through its Applications, website, and in the media), analysis of other cases against and / or settlements entered into by Bank of America that could possibly be related to the claims of this Action,[4] and whether forced arbitration would be a factor in this case.  (*Id.*)  Class Counsel also conducted detailed research of applicable laws, causes of action and available defenses, including a survey of applicable laws of all U.S. states.  (*Id.* ¶7)

On January 9, 2017, Defendants moved to dismiss the Class Action Complaint and all of its causes of action for failure to state a claim (Dkts. 21-23).  On February 13, 2017, Plaintiff filed an Opposition to Defendants' Motion to Dismiss (Dkt. 34), and the Defendants filed their reply on February 27, 2017 (Dkt. 36).

On or about April 7, 2017, Bank of America's Deposit Agreement was revised with an additional sentence relevant to the claims alleged in the Action.  The Agreement was revised to include the following: "*We rely on the merchant that processes the transaction to determine if it is a recurring transaction or an everyday non-recurring transaction.*"  (SA p. 2.)

After the Motion to Dismiss was filed, the Parties commenced discussions regarding the possibility of resolving this matter.  (Ahdoot Decl. ¶8.)  After months of discussions and preliminary negotiations, during which Class Counsel conducted discovery, the Parties agreed to attend mediation with the Honorable Daniel Weinstein (Ret.) of JAMS.  (*Id.* ¶9.) Judge Weinstein is a well-recognized, respected, and experienced class action mediator.  *See*

---

[4]     *See e.g. Bodnar v. Bank of America*, Case No. 5:14-cv-03224-EGS (E.D. Penn), Dkt. 73-2 (Jan. 13, 2016) (settlement agreement and release in a matter involving overdrafts charged by Bank of America on certain debit card transactions; <http://www.bankofamericaoverdraftsettlement.com/en> (last visited Jan. 17, 2018)).  This process was ongoing and Class Counsel continued to monitor others matters that could affect the rights of the putative Class in this Action.  *See e.g. Farrell v. Bank of America*, Case No. 3:16-cv-00492-L-WVG (S.D. Cal.) Dkt. 69-2 (Oct. 31, 2017) (settlement agreement and release in a matter involving "extended" overdraft charges imposed by Bank of America on deposit accounts).  (Ahdoot Decl. ¶5.)

<https://www.jamsadr.com/weinstein/> (last visited Jan. 4, 2017); *see also Athale, et al. v. Sinotech Energy Limited, et al.*, Case No. 11-c-05831 (AJN), 2013 WL 11310686, at *3 (S.D.N.Y. Sept. 4, 2013) (recognizing Judge Weinstein as an experienced mediator).  Judge Weinstein was assisted in all the mediations conducted in this matter by another respected and experienced mediator, Lizbeth Hasse (*see* <https://www.jamsadr.com/hasse/> (last visited Jan. 4, 2017).  (Ahdoot Decl. ¶11.)  Ultimately the Parties participated in three (3) separate mediations on June 20, 2017, August 3, 2017, and on October 13, 2017, when the Parties finally reached an agreement in principle.  (*Id.* ¶10.)

Class Counsel conducted a thorough examination, investigation, and evaluation of the relevant law and facts to assess the merits of the claims and potential defenses.  (*Id.* ¶12.) For example, Class Counsel consulted with experts regarding the process in which a given transaction is classified as recurring or non-recurring, served discovery and obtained necessary information from Bank of America, interviewed Bank of America employees, and conducted further legal research in to the defenses proffered by Bank of America.  (*Id.* ¶13.)

Before and during all settlement discussions and mediations, the Parties exchanged sufficient information to permit Plaintiffs and Class Counsel to evaluate the claims and potential defenses and to meaningfully conduct informed settlement discussions.  (*Id.* ¶17.)

Discovery revealed, *inter alia*, the following salient facts: during the class period of January 1, 2012 to December 31, 2016: (i) 245,200 accounts were charged one or more $35 Uber Overdraft Fees that were not refunded; (ii) Bank of America charged 774,984 separate Uber Overdraft Fees that were not refunded; and (iii) Bank of America charged a total of $27,124,440 in such overdraft fees.  (*Id.* ¶14.)[5]  Class Counsel also obtained a list of individuals holding the aforementioned 245,200 accounts and the number of Uber Overdraft Fees charged to each account.  (*Id.* ¶15.)

---

[5]     Class Counsel also established that Bank of America charged a total of $30,285,430 in Uber Overdraft Fees and that $3,160,990 of this amount was refunded.  In total, Bank of America charged 865,298 Uber Overdraft Fees of $35 apiece, and refunded 90,314 of such these fees into 26,742 accounts.  (Ahdoot Decl. ¶14.)

After the mediations, the Parties engaged in additional and extensive negotiations, through many telephone discussions and a number of in-person meetings, to finalize and memorialize all aspects of the Settlement Agreement, including each of its exhibits.  (*Id.* ¶18.)  Also, after a competitive bidding process amongst well known national settlement administration companies, the Parties engaged Epiq to advise regarding the mechanics of the Settlement, the notice process, and to administer the Settlement.  (*Id.* ¶19.)  The notice program and each document comprising the notice were negotiated and exhaustively refined, with input from experts at Epiq, to make them easy to read and understand.  (*Id.*; *see also generally* Declaration of Cameron Azari filed concurrently herewith ("Azari Decl.").)

At the same time they filed this Motion, Plaintiffs filed a proposed Amended Class Action Complaint which included Plaintiffs Michael Edwards and Isabel Scherer.  Class Counsel's Co-Plaintiffs' Counsel, the law firms of Whitfield, Bryson & Mason, LLP and Zimmerman Reed, LLP, also appeared in this Action at this time.  These firms cooperated with Class Counsel in the Action and this Settlement to ensure an organized and efficient effort on the behalf of the putative Class.  (*Id.* ¶20.)

### III. SUMMARY OF PROPOSED SETTLEMENT

**A.** <u>The Settlement Class, Proposed Class Representatives, and Class Counsel</u>

Under the terms of the Settlement, the proposed Settlement Class is defined as:

> all holders of consumer deposit accounts with Bank of America, N.A. in the United States who were charged (and not refunded or credited) overdraft fees on debit card transactions made with Uber between January 1, 2012 and December 31, 2016 that were coded (or classified) by the merchant as recurring transactions.   Excluded from the Settlement Class are (a) all persons who are employees, directors, and officers of Bank of America, N.A. and Bank of America Corporation; (b) the Judge presiding over this Action; and (c) the Court staff.

(SA ¶35.)

Plaintiffs Nicoletta Pantelyat, Michael Edwards, and Isabelle Scherer, are designated as the Proposed Class Representatives, and Tina Wolfson and Robert Ahdoot of Ahdoot &

Wolfson, PC are designated as Class Counsel.  (*Id.* ¶¶38, 6.)

**B.      The Settlement Fund and Payments to Settlement Class Members**

The Settlement requires Bank of America to deposit $22 million dollars, within ten days of entry of a Preliminary Approval Order, into an interest-bearing Escrow Account for the benefit of the Class.  (SA ¶79.)  The Escrow Account will be created and administered by Epiq in accordance with the terms of the Settlement Agreement.  (*Id.*)  All interest on the funds in the Escrow Account shall accrue to the benefit of the Settlement Class and be added to the Settlement Fund.  (*Id.*)

The Settlement Fund will be automatically distributed to Settlement Class Members after deduction of the following: (i) the Settlement's Administration Expenses (estimated to be $442,775 and capped by Epiq at $455,000) (Azari Decl. ¶9); (ii) any attorneys' fees and expenses approved by the Court; (iii) any Service Awards approved by the Court; and (iv) any Taxes due on the interest earned by the Escrow Account.  (SA ¶82.)

The Settlement Fund Balance will be automatically distributed to Settlement Class Members, *pro rata*, in proportion to the number of Uber Overdraft Fees each Settlement Class Member incurred.  (*Id.* ¶85.)  Each Settlement Class Member who paid at least one Uber Overdraft Fee is entitled to receive a Settlement Share.  (*Id.* ¶83.)  The Administrator will calculate each Settlement Class Member's Settlement Share as follows: the Settlement Fund Balance will be divided by the total number of all Uber Overdraft Fees paid by Settlement Class Members, to yield a per-Uber-Overdraft-Fee amount.  (*Id.* ¶85.)  Each Settlement Class Member's Settlement Share shall equal the per-Uber-Overdraft-Fee amount multiplied by the number of Uber Overdraft Fee(s) paid by that Settlement Class Member.  (*Id.*)

For example, in the event the Administration Expenses are $450,000, the total Service Awards are $7,500, and the attorneys' Fee and Expense Award totals $5,600,000, then in light of the total number of Uber Overdraft Fees (774,984), the per-Uber-Overdraft-

Fee compensation amount will equal $20.57.[6]  Thus, under this example, a Settlement Class Member who was charged one Uber Overdraft Fee will have a Settlement Share that equals $20.57, a Settlement Class Member charged for two will receive $41.14, *etc*.

Each Settlement Class Member's Settlement Share will be distributed automatically as follows: (i) for those with open Bank of America accounts (as of the Effective Date), by a credit to their account (*Id*. ¶86.); and (ii) for those with closed Bank of America accounts, by check via U.S. Mail (*Id*. ¶87.)  Any Residual Funds will be redistributed to (i) Settlement Class Members who have open accounts, and (ii) Settlement Class Members who have closed accounts and who cashed their previous checks.  (*Id*. ¶89.)  In the event Residual Funds equal to less than $5 per such Settlement Class Members, they will be paid to the Center for Responsible Lending ("CRL"), a non-profit organization that more than reasonably approximates the interests of the Settlement Class.  (*Id*. ¶91; *See also* Declaration of Deborah Goldstein of CRL filed concurrently herewith ("Goldstein Decl.").)[7]

**C.    Releases**

As set forth in greater detail in the Settlement Agreement, upon Final Approval, Plaintiffs and Settlement Class Members will discharge Bank of America and Uber from any claims that: (a) were or could have been asserted in the Action; (b) arise out of, relate to, or are in connection with the assessment of overdraft fees on one-time, non-recurring Uber transactions or (c) arise out of, relate to, or are in connection with the administration of the Settlement.  The released claims do not include any claims that arise out of the assessment

---

[6]    (22,000,000 - (450,000 + 7,500 + 5,600,000)) / 774,984 = 20.57.  This estimate does not account for (i) interest earned on the Settlement Fund (less Taxes), and (ii) the number of opt-outs – both of which can only increase this estimate.

[7]    *See In re Citigroup Inc. Securities Litig.*, 199 F. Supp. 3d 845, 852, 854 (S.D.N.Y. 2016) ("[T]his Court will approve counsel's proposed *cy pres* designees if those … organizations "reasonably approximate" the interests of the class. This standard best preserves the district court's " 'broad supervisory powers ... with respect to the administration and allocation of settlement funds,' " *Holocaust Victim Assets Litig.*, 424 F.3d 132, 146 (2d Cir. 2005) (citation omitted); Fed. R. Civ. P. 23(e), and appropriately gives the Court needed flexibility to review the designations class counsel has proposed.").

of an overdraft fee by Defendants on any transaction other than an Uber transaction.  (SA

¶¶101-104.)  Further, the Release only applies to the persons identified on the Settlement

Class Member List, or those who will be sent the Class Notice.  (SA ¶¶36, 39, 101.)

**D.**     <u>**Notice**</u>

As set forth in greater detail in the Settlement Agreement, within 35 days after entry

of the Preliminary Approval Order, the Administrator will mail the Long Form Class Notice

(Exhibit A to the Settlement Agreement) to each potential Settlement Class Member.  (*Id.*

¶66.)  Bank of America will provide the Settlement Class Member List which includes a last

known address for each potential Settlement Class Member to Epiq within 14 days after the

issuance of the Preliminary Approval Order.  (*Id.* ¶62.)  Epiq will update the last known

address of each person identified through USPS databases and skip trace any addresses that

are returned undeliverable.  (*Id.* ¶64.)

In addition, the Administrator will establish www.RideOverdraftSettlement.com (the

"Website").  The Website will provide relevant dates and deadlines and make certain

important case documents available for review and download.  (*Id.* ¶67.)  The Website also

will provide Settlement Class Members with the ability to complete and submit an on-line

opt-out request.  (*Id.*)  Finally, the Administrator will establish a toll-free telephone number,

through which Settlement Class Members can obtain information about the Settlement and

request a mailed copy of the Class Notice.  (*Id.* ¶68.)

**E.**     <u>**Opt-Out Rights**</u>

In the event a potential Settlement Class Member wishes to be excluded from the

Settlement, and not to be bound by the Agreement or release her or his claims, then that

person must (before the Opt-Out and Objection Deadline, which is 95 days after the issuance

of the Preliminary Approval Order) either: (i) sign and mail a notice of intention to opt out

to the Settlement to the Administrator; or (ii) complete and electronically submit the opt-out

form available on the Website.  (*Id.* ¶74.)  The Settlement Class will not include any persons

who send timely and valid opt-out statements, and persons who opt out will not be entitled

to any benefit under the Settlement and will not release their claims.  (*Id.*)

**F.**     **Objections to the Settlement**

Any Settlement Class Member who does not opt out of the Settlement, may object to any aspect of the Settlement and / or appear at the Final Approval Hearing.  To do so, the Settlement Class Member must first file a written objection with the Court by the Opt-Out and Objection Deadline and serve the objection on all Parties, postmarked no later than that deadline.  (*Id.* ¶75.)  Further, any objector who intends to appear at the Final Approval Hearing must file a Notice of Intention to Appear and serve the Notice on all Parties.  (*Id.*)  Any Settlement Class Member who does not provide a timely, written objection shall be deemed to have waived any objection.  (*Id.*)

**G.**     **Attorneys' Fees and Expenses and Class Representative Service Awards**

On or before 21 days prior to the Opt-Out and Objection Deadline, Plaintiffs' Counsel may file a Fee Application for an award of attorneys' fees (not to exceed 25% of the Settlement Fund, *i.e.*, $5,500,000) and costs, and for Service Awards to Plaintiffs of no more than $2,500 each *via* a Service Award Application, all to be paid from the Settlement Fund.  (*Id.* ¶94.)  The Fee Application and Service Award Application will be made available on the Settlement Website.  The Parties negotiated the maximum amount of the service awards and attorneys' fees and expenses to be sought only after reaching an agreement upon the relief provided to the Settlement Class.  (*Id.* ¶99.)

## IV.  ARGUMENT

**A.**     **The Court Should Approve the Proposed Settlement Agreement**

Courts generally favor settlement of class action lawsuits.  *See Wal-Mart Stores v. Visa U.S.A.*, 396 F.3d 96, 116 (2d Cir. 2005) (affirming approval of class action settlement and emphasizing "strong judicial policy in favor of settlements, particularly in the class action context") (quotation omitted); *see also* Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* ("Newberg"), § 11.41 (4th ed. 2002) ("The compromise of complex litigation is encouraged by the courts and favored by public policy.").  "The central question

raised by the proposed settlement of a class action is whether the compromise is fair, reasonable and adequate.  There are weighty justifications, such as the reduction of litigation and related expenses, for the general policy favoring the settlement of litigation." *Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982) (affirming approval of class settlement) (citation omitted).

At the preliminary approval stage, the Court need only "make a preliminary determination of the fairness, reasonableness and adequacy of the settlement" so that notice may be given to the Class and a fairness hearing may be scheduled to make a final determination regarding the fairness of the settlement.  Newberg § 11.25; Manual for Complex Litigation, Fourth §21.632.  The Court need only find that there is "'probable cause' to submit the [settlement] to class members and hold a full-scale hearing as to its fairness."  *In re Traffic Executive Ass'n Eastern RRs*, 627 F.2d 631, 634 (2d Cir. 1980); Newberg § 11.25 (stating that "[i]f the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness . . . and [it] appears to fall within the range of possible approval," the court should permit notice of the settlement to be sent to class members).

"A proposed settlement of a class action should . . . be preliminarily approved where it 'appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval.'"  *Davis v. J.P. Morgan Chase & Co.*, 775 F. Supp. 2d 601, 607 (W.D.N.Y. 2011) (granting preliminary approval).  To evaluate whether a class settlement is fair, courts must examine the settlement's procedural and substantive fairness.  *Reed v. Continental Guest Svcs. Corp.*, No. 10 Civ. 5642 (DLC), 2011 WL 1311886, at *2 (S.D.N.Y. Apr. 4, 2011).

**B.**     **The Proposed Settlement Is Procedurally Fair**

In assessing procedural fairness, courts examine the negotiating process leading to the settlement.  *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001).  A strong initial

presumption of fairness attaches to the proposed settlement if, as here, the settlement is reached after discovery by experienced counsel and after arm's length negotiations. *Wal-Mart Stores, Inc.,* 396 F.3d at 116. A court may also consider whether the settlement was reached with the assistance of a judicial officer or other experienced neutral. *Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 618 (S.D.N.Y. 2012) ("The involvement of . . . an experienced and well-known . . . class action mediator, is also a strong indicator of procedural fairness."); *In re Giant Interactive Group, Inc. Sec. Litig.*, 279 F.R.D. 151, 160 (S.D.N.Y. 2011) ("[C]ounsel have provided the Court significant evidence demonstrating that this settlement was the product of prolonged, arms-length negotiation, including as facilitated by a respected mediator.").

Here, the proposed Settlement was reached as a result of extensive arm's length negotiations between the Parties and their counsel who have considerable experience litigating class action matters. (*See e.g.* Ahdoot Decl., ¶¶21, 23-29.) Class Counsel conducted discovery, investigated the facts and underlying events relating to the subject matter of the claims, and carefully analyzed the applicable legal principles. (*Id.* ¶21.) Class Counsel investigated the claims at issue by obtaining Bank of America's various contracts with account holders and merchants, interviewing Bank of America account holders regarding Bank of America's practices, and conducting detailed review of account documents. (*Id.*) Class Counsel also interviewed Bank of America employees, served requests for production of documents, and obtained verified information from Bank of America. (*Id.*) Moreover, the negotiations leading to settlement occurred over the course of months and included three in-person mediations under the supervision of highly respected JAMS mediators, Hon. Daniel Weinstein (Ret.) and Lizbeth Hasse, Esq., and numerous other telephonic and in-person discussions. (*Id.* ¶¶9-10.)

## C.   The Proposed Settlement Is Substantively Fair

The Second Circuit has identified nine factors (the *Grinnell* factors) that should be considered in determining the substantive fairness of a proposed settlement:

(1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974) *abrogated on other grounds by Goldberger v. Integrated Res., Inc.,* 209 F.3d 43 (2d Cir. 2000).  While the *Grinnell* factors are routinely considered in connection with final approval of class action settlements, the *Grinnell* factors are considered a "useful guide" at the preliminary approval stage as well.  *Am. Medical Ass'n v. United Healthcare Corp.*, No. 00-cv-2800-LMM, 2009 WL 1437819, at *3-4 (S.D.N.Y. May 19, 2009).  "In finding that a settlement is fair, not every factor must weigh in favor of settlement, rather the court should consider the totality of these factors in light of the particular circumstances."  *In re Global Crossing Sec. & ERISA Litig.,* 225 F.R.D. 436, 456 (S.D.N.Y. 2004) (citation omitted).  As applied here, the *Grinnell* factors weigh heavily in favor of preliminary approval.

    1.    <u>The Litigation Is Complex and Would Be Expensive and Lengthy</u>

With regard to the first *Grinnell* factor, courts have consistently recognized the complexity, expense, and likely duration of litigation as critical factors in evaluating the reasonableness of a class action settlement.  *Charron v. Weiner,* 731 F.3d 241, 247 (2d Cir. 2013).  Indeed, "[m]ost class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them."  *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000).

Here, approval of the Settlement will mean a present recovery for Settlement Class Members.  While Plaintiffs believe that the Action has merit and that they ultimately would prevail at trial, continued litigation would last for an extended period of time before any judgment might be entered in favor of the Class.  If not for the Settlement, a trial could

13

occupy significant attorney and Court time, and involve significant costs.  Then, any

judgment favorable to the Class likely would be the subject of post-trial motions and

appeals, which would significantly prolong the Action.  Delay, not just at the trial stage, but

also through post-trial motions and the appellate process, could force Settlement Class

Members to wait even longer for any recovery, further reducing its value.  *City of*

*Providence v. Aeropostale, Inc.*, No. 11 Civ. 7132, 2014 WL 1883494, at *5 (S.D.N.Y. May

9, 2014) (finding that "[e]ven if the Class could recover a judgment at trial, the additional

delay through trial, post-trial motions, and the appellate process could prevent the Class

from obtaining any recovery for years.").  Settlement of this litigation ensures a recovery

now — for approximately 80% of the total revenues obtained by Bank of America — and

avoids the risk of no recovery at all, whether at trial or on appeal, and avoids the additional

costs continued litigation would entail.  Settling now on such favorable terms is, therefore,

in the best interest of the Class.  *Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*, 258

F. Supp. 2d 254, 261 (S.D.N.Y. 2003) ("[E]ven if a shareholder or class member was willing

to assume all the risks of pursuing the actions through further litigation and trial, the passage

of time would introduce yet more risks in terms of appeals and possible changes in the law

and would, in light of the time value of money, make future recoveries less valuable than

this current recovery.").  Even a trial win does not guarantee a recovery to the Class, because

there is always a risk of reversal on appeal.  *See e.g., Robbins v. Koger Props., Inc.,* 116

F.3d 1441, 1449 (11th Cir. 1997) (reversing $81 million jury verdict and dismissing case

with prejudice).

    2.    <u>There Is Sufficient Discovery To Allow the Parties to Resolve the Case</u>

In considering *Grinnell* factor three, the question "is whether the parties had

adequate information about their claims."  *In re Glob. Crossing*, 225 F.R.D. at 458.  This

factor is "intended to assure the Court 'that counsel for plaintiffs have weighed their position

based on a full consideration of the possibilities facing them.'"  *Id.* (quoting *Klein ex rel. Ira*

*v. PDG Remediation, Inc.*, No. 95-cv-4954-DAB, 1999 WL 38179, at *3 (S.D.N.Y. Jan. 28,

1999)); *In re Bear Stearns Co. Sec. Derivative and ERISA Litig.*, 909 F. Supp. 2d 259, 267 (S.D.N.Y. 2012) ("[T]he question is whether the parties had adequate information about their claims such that their counsel can intelligently evaluate the merits of plaintiff's claims, the strengths of the defenses asserted by defendants, and the value of plaintiff's causes of action for purposes of settlement"); *see also In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d at 176 ("To approve a proposed settlement, the Court need not find that the parties have engaged in extensive discovery . . . it is enough for the parties to have engaged in sufficient investigation of the facts to enable the Court to intelligently make . . . an appraisal of the Settlement.").

As noted above, Class Counsel conducted extensive investigation, analysis, and discovery; they obtained all necessary information to consider their clients' position and the full scope of the damages at issue.  The accumulation of the information through Class Counsel's investigation and discovery efforts permitted Plaintiffs to be well informed and to engage in effective settlement negotiations with Defendants.

3.   Risk of Establishing Liability

In assessing a settlement, a court should balance the benefits afforded the Class, including the immediacy and certainty of a recovery, against the continuing risks of litigation.  *Grinnell*, 495 F.2d at 463.  Courts routinely approve settlements where plaintiffs would have faced significant legal and factual obstacles to establishing liability.  *Thompson v. Metropolitan Life Ins. Co.,* 216 F.R.D. 55, 63 (S.D.N.Y. 2003).  Indeed, "[l]itigation inherently involves risks."  *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 126 (S.D.N.Y. 1997) (approving settlement).

Here, in order to come to a judgment in this Action, the parties would have to litigate extensively, through discovery, class certification, summary judgment, trial, and then appeals.  Defendants articulated a number of defenses that could be accepted by the Court or jury.  Some of these defenses are outlined in the Motion to Dismiss.  (Dkt. 22.)  Defendants maintain, *inter alia*: that their actions complied with the Electronic Fund Transfer Act; that

Uber misclassified the charges as "recurring" and that there is no practical way for Bank of America to track every transaction and so must rely on the merchant classifications, and that all account holders had the opportunity to contest the overdraft charges at issue *via* a statutory process.  Bank of America also steadfastly maintained that Plaintiffs would not be able to certify this Action.  Without a settlement, Bank of America would litigate the case vigorously, forcing Plaintiffs to overcome determinative motions and to demonstrate that the putative classes should be certified.  *See In re Glob. Crossing,* 225 F.R.D. at 456.

While Plaintiffs believe that they would prevail, they also recognize there is no guarantee of success at a trial on the merits, or that judgment in their favor would be upheld on appeal.  Accordingly, in the absence of a settlement, there is a real risk that the Class will recover an amount significantly less than the total Settlement Amount – or even nothing at all.  The payment of $22 million, when viewed in the context of the risks of litigation, and in light of the total revenues Bank of America gleaned from the conduct at issue, weighs heavily in favor of preliminary approval.

4.     Risk of Maintaining Class Status

The sixth *Grinnell* factor — the risk of maintaining the class action — is typically considered in the context of unopposed certification motions for settlement purposes.  *Odom v. Hazen Transport, Inc.*, 275 F.R.D. 400, 411 (W.D.N.Y. 2011) ("Although class certification has been approved by this Court for the purpose of settlement, it is not certain that the case would be certified in the absence of settlement.").

Here, Plaintiffs are confident that they are adequate class representatives and more than capable of achieving and maintaining class status throughout trial.  Nevertheless, Defendants would likely oppose any attempt made by Plaintiffs to certify this case – either on a state or national level.  Even if the Plaintiffs received class certification, Defendants likely would attempt to decertify the class at every step of the litigation including before trial, during trial, or on appeal.  *Bellifemine v. Sanofi-Aventis U.S. LLC*, No. 07-cv-2207-JGK, 2010 WL 3119374, at *4 (S.D.N.Y. Aug. 6, 2010) (noting that there "is no assurance

16

of obtaining class certification through trial, because a court can reevaluate the appropriateness of certification at any time during the proceedings."); *In re NASDAQ Mkt–Makers Antitrust Litig.,* 187 F.R.D. 465, 476–77 (S.D.N.Y. 1998) (risk of class being decertified at trial or risk of class certification being reversed on appeal supported approval of settlement).  The risk that Plaintiffs face in certifying and maintaining certification of the Action weighs in favor of preliminary approval of the proposed Settlement.

     5.     <u>The Ability of Defendants to Withstand a Greater Judgment</u>

A court may also consider a defendant's ability to withstand a judgment greater than that secured by settlement, although it is not generally one of the determining factors.  *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 538 (3d Cir. 2004) (affirming district court's finding that defendant's ability to pay more was irrelevant to assessment of settlement).  While the *inability* of a defendant to withstand greater judgment may weigh in favor of approval of a settlement, the *ability* of a defendant to withstand greater judgment does not necessarily weigh against approval of the settlement.  Indeed, courts generally do not find the ability of a defendant to withstand a greater judgment to be an impediment to settlement when the other factors favor the settlement, and the ability of defendants to pay more money does not render a settlement unreasonable.  *See D'Amato*, 236 F.3d at 86; *Morris v. Affinity Health Plan, Inc.,* 859 F. Supp. 2d 611, 620 (S.D.N.Y. 2012) ("[A] defendant's ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair") (internal citations omitted); *see also Davis,* 827 F. Supp. 2d at 178 (assigning "relatively little weight" to this factor and instead focusing on "the judgment in light of plaintiffs' claims and the other factors that the Court has discussed").  Here, Defendants' ability to withstand a judgment greater than $22 million does not weigh against approval of the proposed Settlement.

     6.     <u>The Settlement Fund Is Substantial in Light of the Possible Recovery and the Risks of Litigation</u>

*Grinnell* factors eight and nine require a court to analyze the "range of

reasonableness" of the settlement fund in light of the case and in light of all the risks associated with litigation. *Grinnell*, 495 F.2d at 463. The adequacy of the amount offered in settlement must be judged "not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case." *In re "Agent Orange" Prod. Liab. Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y. 1984), *aff'd*, 818 F.2d 145 (2d Cir. 1987). The Court need only determine whether the Settlement falls within a "range of reasonableness" – a range that "recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972); *see also In re Global Crossing*, 225 F.R.D. at 461 (noting that "the certainty of [a] settlement amount has to be judged in [the] context of the legal and practical obstacles to obtaining a large recovery"); *In re Indep. Energy Holdings PLC Sec. Litig.*, No. 00-cv-6689-SAS, 2003 WL 22244676, at *4 (S.D.N.Y. Sept. 29, 2003) (noting few cases tried before a jury result in full amount of damages claimed). In considering the reasonableness of the proposed Settlement, the Court should consider that the Settlement provides for payment to the Class now, rather than a speculative payment many years down the road. *In re AOL Time Warner Inc.*, No. 02-cv-5575-SWK, 2006 WL 903236, at *13 (S.D.N.Y. Apr. 6, 2006) ("[T]he benefit of the Settlement will . . . be realized far earlier than a hypothetical post-trial recovery").

The proposed Settlement here represents an excellent result under the circumstances considering that a possible recovery at trial is zero. If Plaintiffs win on their claims in their entirety, are successful in certifying a nationwide class, and the trier of fact accepts Plaintiffs' damage theories, the Class would recover $27.1 million in improper bank overdraft fees assessed for Uber charges. The proposed Settlement thus recoups over 80% of the revenue gleaned by Bank of America. The Settlement Class arguably may be entitled to prejudgment interest; however, even at an inflated prejudgment interest calculation, the

Settlement's recovery is approximately 74% of the possible projected maximum.[8]  Such a large recovery realized immediately weighs heavily in favor of preliminary approval.  *See In re Enron Corp. Sec. & ERISA Derivative Litig*, 228 F.R.D. 541, 566 (S.D. Tex. 2005) ("The settlement at this point would save great expense and would give the Plaintiffs hard cash, a bird in the hand.")

**D.**     **The Court Should Certify the Settlement Class**

Plaintiffs request that the Court certify the Settlement Class for settlement purposes under Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure.  It is well settled that a court may certify a class for settlement purposes, provided that the court conducts an inquiry under Rules 23(a) and (b).[9]  *Weinberger v. Kendrick*, 698 F.2d at 73; *Denney v. Deutsche Bank AG*, 443 F.3d 253, 270 (2d Cir. 2006).  While a class generally must meet all of the requirements of Rule 23, "[s]ettlement is relevant to a class certification" and is "a factor in the calculus."  *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 619, 622 (1997).  As discussed below, Plaintiffs respectfully submit that the Settlement Class satisfies all of the prerequisites of Rule 23(a) and at least one of the subsections of Rule 23(b).

1.     The Class Is So Numerous That Joinder of All Members Is Impracticable

To qualify for certification, a class must be "so numerous that joinder of all members is impracticable."  *In re AOL Time Warner, Inc.*, 2006 WL 903236, at *4 (quoting Fed. R. Civ. P. 23(a)(1)).  "[A] plaintiff need not show that joinder is impossible. . . . Nor need the plaintiff know the exact number of class members."  *Saddle Rock Partners Ltd. v. Hiatt*, No.

---

[8]     Class Counsel obtained data relating to the Uber Overdraft Fee numbers and amounts by state and by month, and conducted a pre-judgment interest analysis using the pre-judgment interest rates and law of each applicable State.  Class Counsel determined that the Settlement Class was arguably owed approximately $2.45 million in pre-judgment interest.  (Ahdoot Decl. ¶16.)

[9]     Newberg, §§ 11.27, *et. seq.* (4th ed. 2002) ("When the court has not yet entered a formal order … that the action may be maintained as a class action, the parties may stipulate that it be maintained as a class action for the purpose of settlement only."); *Cnty. of Suffolk v. Long Island Lighting Co.*, 710 F. Supp. 1422, 1424 (E.D.N.Y. 1989) ("It is appropriate for the parties to a class action .. to negotiate a proposed settlement of the action prior to certification of the class."), *aff'd*, 907 F.2d 1295 (2d Cir. 1990).

96-cv-9474-SHS, 2000 WL 1182793, at *2 (S.D.N.Y. Aug. 21, 2000) (citing *Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993)).  Rather, while "[t]here is no strict numerical test for determining impracticability of joinder[,] . . . [w]hen class size reaches substantial proportions . . . the impracticability requirement is usually satisfied by the numbers alone." *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996) (citing Newberg § 3.05, at 3-26).  There are 245,200 accounts held by the potential Settlement Class Members and thus numerosity is easily established.

> 2.      Commonality Is Met

Rule 23(a)(2) is satisfied where "there are questions of law or fact common to the class." *Cutler v. Perales*, 128 F.R.D. 39 (S.D.N.Y. 1989).  This does not mean that all class members must make identical claims and arguments, or that the circumstances of their purchases must be the same, only that common issues of fact or law affect all class members.  *See Dietrich v. Bauer*, 192 F.R.D. 119, 124 (S.D.N.Y. 2000).  "Generally, courts have liberally construed the commonality requirement to mandate a minimum of one issue common to all class members."  *Trief v. Dun & Bradstreet Corp.*, 144 F.R.D. 193, 198-99 (S.D.N.Y. 1992) (citations omitted).

Here, there are numerous questions of law and fact common to the Class and those common questions predominate over any questions affecting only individual Settlement Class Members.  Bank of America had a contractual relationship with its debit card consumers that was common to all the class members.  The mischaracterization of Uber non-recurring transactions as recurring and the subsequent assessment of overdraft fees were uniform as to all Settlement Class Members.  Whether or not Bank of America breached its contractual obligations to its consumers by charging such overdraft fees is a question that can be answered for all class members in one fell swoop.  There is sufficient commonality under Rule 23(a)(2).

> 3.      The Plaintiffs' Claims Are Typical

Rule 23(a)(3) requires that "claims or defenses of the representative parties [be]

typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3).  This requirement is readily met where "the claims of the named plaintiffs arise from the same practice or course of conduct that gives rise to the claims of the proposed class members." *In re Vivendi Universal, S.A.*, 242 F.R.D. 76, 85 (S.D.N.Y. 2007) (citation omitted).  The requirements of commonality and typicality tend to merge.  *Kindle v. Dejana,* 315 F.R.D. 7, 11 (E.D.N.Y. 2016).  In essence, "[t]he crux of both requirements is to ensure that 'maintenance of a class action is economical and [that] the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.'"  *Id.* (quotation omitted).  There is no requirement that the claims of all members of a purported class be identical.  *D'Alauro v. GC Services Ltd. P'ship*, 168 F.R.D. 451, 456-57 (E.D.N.Y. 1996) ("When the same unlawful conduct was directed at both the named Plaintiffs and the class to be represented, the typicality requirement is usually met irrespective of varying fact patterns which underlie individual claims.") (approving settlement and citing Newberg § 3.13 and *Dura–Bilt Corp. v. Chase Manhattan Corp.*, 89 F.R.D. 87, 99 (S.D.N.Y. 1981)); *In re Indus. Diamonds Antitrust Litig.*, 167 F.R.D. 374, 379 (S.D.N.Y. 1996).

Here, the claims of the representative Plaintiffs are typical of the claims of the Class in that the representative Plaintiffs, like all potential Settlement Class Members, were charged overdraft fees by Bank of America as a result of non-recurring Uber debit card transactions that were misclassified as recurring transactions.  Plaintiffs, like all potential Settlement Class Members, were subject to a uniform contract with Bank of America that contained uniform terms.  Thus, the factual and legal basis of allegations of Bank of America's misconduct is common to all potential Settlement Class Members.

    4.   <u>Adequate Representation</u>

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interest of the class."  The adequacy requirement "serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Prods.,* 521

U.S. at 625 (citation omitted).  The requirement is met if: (1) the named plaintiffs' interests are not antagonistic to the class' interests; and (2) the named plaintiffs' attorneys are qualified, experienced, and generally able to conduct the litigation.  *Penn. Ave. Funds v. Inyx Inc.,* No. 08 Civ. 6857(PKC), 2011 WL 2732544, at *5 (S.D.N.Y. July 5, 2011).

Plaintiffs' and Settlement Class Members' claims arise out of the same overdraft policies governed by Bank of America's uniform contract and arise out of the exact same conduct and practices of Bank of America in imposing overdraft fees.  Thus, Plaintiffs' interests are identical to Settlement Class Members' and there is no conflict.  Plaintiffs are adequate representatives who will fairly protect the interests of the Class.  Moreover, Class Counsel have decades of experience in the prosecution of class actions and, in particular, class actions on behalf of consumers, and can more than adequately represent the Settlement Class.  (Ahdoot Decl. ¶¶23-29.)

5.    Common Questions Predominate

In addition to the four requirements of Rule 23(a), a class also must satisfy one of the three requirements of Rule 23(b).  This Action satisfies Rule 23(b)(3) because factual and legal common issues predominate over issues that are particular to any class member and because a class action is the superior vehicle to resolve the alleged liability.  Courts routinely find that common questions predominate when a complaint alleges a common course of wrongful conduct that affects all class members in the same manner.  Predominance thus requires that "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole . . . predominate over those issues that are subject only to individualized proof."  *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 136 (2d Cir. 2001) (abrogated on other grounds).  Here, the complaint alleges that Defendants improperly and uniformly issued the same overdraft fees for Uber transactions, under a contract that identically effects all Settlement Class Members, and thus the central factual issues predominate.

The central legal issue is whether Defendants' breached the contract with the

Settlement Class Members.  This is a simple legal question that is common to all Settlement

Class Members.  The Amended Class Action Complaint alleges a common law breach of

contract cause of action for the nationwide class.  Even if all fifty states' law applies to the

respective residents of those states, there is still predominance of common legal questions

because the elements of this cause of action do not vary state by state in any significant way.

(Ahdoot Decl. ¶22 and Exhibit 2, 50-State survey of breach of contract law).

      6.   <u>Superiority</u>

Rule 23(b)(3) also sets forth the following non-exhaustive factors to be considered in

determining whether class certification is the superior method of litigation:

> "(A) the class members' interests in individually controlling the prosecution
> . . . of separate actions; (B) the extent and nature of any litigation concerning
> the controversy already begun by . . . class members; (C) the desirability . . .
> of concentrating the litigation of the claims in the particular forum; and (D)
> the likely difficulties in managing a class action."

Fed. R. Civ. P. 23(b)(3).  When "proceeding individually would be prohibitive for class

members with small claims . . . the class action device is frequently superior to individual

actions."  *In re Scotts EZ Seed Litig.*, 304 F.R.D. 397, 415 (S.D.N.Y. 2015) (citing *Seijas v.

Republic of Argentina*, 606 F.3d 53, 58 (2d Cir. 2010) ("Where proceeding individually

would be prohibitive due to the minimal recovery, the class action device is frequently

superior to individual actions.").

Because the amount of each individual Settlement Class Member's claim is small, no

Settlement Class Member would expend the resources necessary for individual litigation.

Moreover, individual litigation would significantly increase the delay and expense to all

parties and to the Court, and create the potential for inconsistent or contradictory rulings.

By contrast, a class action presents far fewer management difficulties, allows claims to be

heard which might otherwise go unheard because of the relative expense of bringing

individual lawsuits, and provides the benefits of adjudication, economies of scale, and

comprehensive supervision by a single court.  It is clearly desirable to concentrate the claims

of all Settlement Class Members in this forum. Accordingly, the requirements of Rule 23(b)(3) are satisfied.

**E.**      **The Proposed Form and Method of Class Notice Is Appropriate**

   1.      The Scope of the Notice Program Is Adequate

When measuring the adequacy of a settlement notice in a class action under either the Due Process Clause or the Federal Rules, a court should look to the notice program's reasonableness. *In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, No. 02 MDL 1484(JFK), 2007 WL 313474, at *8 (S.D.N.Y. Feb. 1, 2007). "Notice need not be perfect, but … only the best notice practicable under the circumstances, and each and every class member need not receive actual notice, so long as class counsel acted reasonably in choosing the means likely to inform potential class members." *Id.* (citation omitted).

Here, the Parties propose mailing the Class Notice to each potential Settlement Class Member and by posting the Class Notice on the Settlement Website.  (Azari Decl. ¶¶10-16.) This process represents the best practicable notice.  (*Id.* ¶12 ("In my opinion, the Notice Plan is the best notice practicable under the circumstances … and satisfies the requirements of due process, including its 'desire to actually inform' requirement.")

   2.      The Proposed Class Notice Comports with Due Process and with Rule 23

The content of a notice is generally found to be reasonable if "the average class member understands the terms of the proposed settlement and the options provided to class members thereunder." *In re Stock Exchs. Options Trading Antitrust Litig.*, No. 99-cv-962-RCC, 2006 WL 3498590, at * 6 (S.D.N.Y. Dec. 4, 2006); *see also Weinberger*, 698 F.2d at 70 (the notice must "'fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with [the] proceedings'").

The Class Notice advises Settlement Class Members, in concise and plain language, of the essential terms of the Settlement, the plan of allocation, and information regarding Class Counsel's motion for attorneys' fees and expenses.  (*See generally* SA, Ex. A.)  The

Class Notice also provides the details on the date, time and place of the Final Approval Hearing, other important dates and deadlines, and set forth the procedures for objecting to the Settlement, and for requesting exclusion from the Class.  (*Id.*)  The information is in a format that is accessible to the reader, and is the same or similar to formats that have been approved by many other courts across the country.  (Azari Decl. ¶¶21-22.)

**F.**    **Proposed Schedule**

Plaintiffs respectfully request that the Court enter the following schedule:

| Event | Time for Compliance |
|---|---|
| Bank of America to deposit $22 million in Escrow Account | Within 10 Days after Entry of Preliminary Approval Order ("PAO Date") |
| Bank of America will provide Settlement Class Member List to the Administrator | Within 14 Days after PAO Date |
| Administrator will complete initial mailing of Class Notice to all persons on Settlement Class Member List | Within 35 Days after PAO Date |
| Class Counsel to file Service Awards Application and Fee Application | 21 Days prior to Opt-Out and Objection Deadline (74 Days after PAO Date) |
| Opt-Out and Objection Deadline | 95 Days after PAO Date |
| Deadline to File All Moving Papers and Briefs in Support of Entry of the Final Approval Order | 110 Days after PAO Date |
| Response to Objections by Parties | 7 Days before Final Approval Hearing |
| Class Counsel to file list of opt-outs | 5 Days before Final Approval Hearing |
| Final Approval Hearing | 126 Days after PAO Date, or Later |

**V.    CONCLUSION**

Based on the foregoing, Plaintiffs respectfully request that the Court enter the Preliminary Approval Order and preliminarily approve the Settlement.

25

Dated: January 19, 2018     Respectfully submitted,

AHDOOT & WOLFSON, PC


Robert R. Ahdoot
Tina Wolfson
45 Main Street, Suite 230
Brooklyn, New York 11201
Tel: 917-336-0171
Fax: 917-336-0177
*rahdoot@ahdootwolfson.com*
*twolfson@ahdootwolfson.com*

AHDOOT & WOLFSON, PC
Tina Wolfson
Robert R. Ahdoot
Theodore W. Maya
Vanessa Shakib
10728 Lindbrook Drive
Los Angeles, California 90024
Tel: 310-474-9111
Fax: 310-474-8585
*rahdoot@ahdootwolfson.com*
*tmaya@ahdootwolfson.com*
*bking@ahdootwolfson.com*
*vshakib@ahdootwolfson.com*

Attorneys for Plaintiffs and proposed
Class Counsel

## CERTIFICATE OF SERVICE

I, Robert R. Ahdoot, hereby certify that a copy of the foregoing document, filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies shall be served by first class mail postage prepaid on all counsel who are not served through the CM/ECF system on January 19, 2018.

_____
Robert R. Ahdoot