**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| NICOLETTA PANTELYAT, MICHAEL EDWARDS, and ISABELLE SCHERER, Individually and on Behalf of All Others Similarly Situated, | Civil Action No. 1:16-cv-08964-AJN |
| Plaintiffs, | **AMENDED CLASS ACTION COMPLAINT** |
| v. | |
| BANK OF AMERICA, N.A. and BANK OF AMERICA CORPORATION, | JURY TRIAL DEMANDED |
| Defendants | |

<u>**AMENDED CLASS ACTION COMPLAINT**</u>

Plaintiffs Nicoletta Pantelyat, Michael Edwards, and Isabelle Scherer (collectively, "Plaintiffs"), individually and on behalf of all others similarly situated, based on personal knowledge as to themselves, on the investigation of their counsel, and on information and belief as to all other matters, allege as follows:

**NATURE OF ACTION**

1.      Plaintiffs bring this Class Action Complaint against Bank of America Corporation, Bank of America, N.A., and their present, former, or future direct and indirect parent companies, subsidiaries, affiliates, agents, and/or other entities (collectively, "Bank of America"), to end and seek redress for, Bank of America's unauthorized, unfair, and unlawful practice of assessing overdraft fees for "non-recurring" debit card transactions that have been misclassified as "recurring" debit card transactions.

2.      Bank of America promises its account holders that it "do[es] not authorize overdrafts for everyday *non-recurring* debit card transactions and ATM transactions" and "do[es] *not charge you an Overdraft Item fee* on an everyday *non-recurring* debit card transaction."

3.      However, with respect to *recurring* debit card transactions, Bank of America promises its account holders that it will authorize overdrafts and charge a corresponding overdraft fee: "*We do charge you an Overdraft Item fee* each time we authorize and pay any other type of overdraft transaction [besides non-recurring transactions].  These other types of transactions include checks and other transactions made using your checking account number, *recurring debit card transactions*, Online and automatic bill payments, and ACH transactions."

4.     Bank of America explains the distinction between "non-recurring" debit card transactions (which are not subject to overdraft fees) and "recurring" debit card transactions (which are subject to overdraft fees) as follows:

> Everyday non-recurring debit card transactions are usually purchases made with your debit card or debit card number on a one-time or day-to-day basis. As examples, you use your debit card for purchases of groceries, gas, or coffee in the morning. Recurring debit card transactions are usually transactions that you set up to occur automatically, such as automatic bill payments. As examples, you give merchants your debit card number to use for rent, mortgage, car, or utility payments.

5.     Despite Bank of America's contractual obligation to its account holders that it "do[es] not authorize overdrafts for everyday non-recurring debit card transactions and ATM transactions" and "do[es] not charge you an Overdraft Item fee on an everyday non-recurring debit card transaction," Bank of America has systematically authorized overdrafts on Uber non-recurring debit card transactions and has charged a $35.00 overdraft fee for each such transaction.  Uber non-recurring debit card transactions were misclassified as "recurring" transactions – even though such transactions are plainly "made with [a] debit card or debit card number on a one-time or day-today basis," and not "set up to occur automatically."

6.     Plaintiffs and other Bank of America customers have been injured by these illegal practices.  On behalf of themselves and the putative Class, Plaintiffs seek damages, restitution and injunctive relief for Bank of America's breach of contract, unjust enrichment, conversion, and violations of New York General Business Law.

## JURISDICTION AND VENUE

7.     The Court has jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. §§ 1332(d)(2) & (6), because the aggregate claims of the putative class members exceed $5 million, exclusive of interest and costs, and because at least one of the

members of the proposed class is a citizen of a different state than Bank of America.

8.     Bank of America is subject to personal jurisdiction in New York pursuant to the "Deposit Agreement and Disclosures" entered into between Plaintiffs and Bank of America because New York is the state where the financial center that maintains Plaintiff Pantelyat's account is located.   *See* Exhibit A ("Ex. A") attached hereto, Deposit Agreement and Disclosures, March 2016 ("Deposit Agreement"), at 48 ("Any action or proceeding regarding your account or this deposit agreement must be brought in the state in which the financial center that maintains your account is located.  You submit to the personal jurisdiction of that state.").

9.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Bank of America is subject to personal jurisdiction in this District, *see id.*, because Bank of America regularly conducts business in this District, and because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this District.

**PARTIES**

10.     Plaintiff Nicoletta Pantelyat is a resident and citizen of New York.  At all times mentioned herein, Plaintiff Pantelyat's Bank of America checking account was maintained at a Bank of America financial center in New York.

11.     Plaintiff Michael Edwards is a resident and citizen of Illinois. At all times mentioned herein, Plaintiff Edwards' Bank of America checking account was maintained at a Bank of America financial center in Illinois.

12.     Plaintiff Isabelle Scherer is a resident and citizen of New Jersey.  At all times mentioned herein, Plaintiff Scherer's Bank of America checking account was maintained at a Bank of America financial center in New Jersey.

13.     Bank of America is a national bank with its headquarters and principal place of business in Charlotte, North Carolina.  Bank of America is engaged in the business of, *inter alia*, providing retail banking services to consumers, and has provided personal checking accounts, and issued debit cards for use in conjunction with those personal checking accounts, to Plaintiffs and the members of the putative Class.  Bank of America operates banking centers throughout the United States of America, with account holders in each State.

### FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

14.     At all relevant times, Plaintiffs each maintained a personal checking account with Bank of America.

15.     Bank of America issues debit cards to its personal checking account customers, and issued debit cards to Plaintiffs and the members of the proposed Class, to allow them electronic access to their checking accounts for purchases, payments, withdrawals and other electronic debit transactions.

16.     Pursuant to the documents governing Bank of America's relationship with its customers, including Plaintiffs and the members of the proposed Class, Bank of America is permitted to authorize, and to charge a $35.00 fee for, "recurring" debit card transactions for which there are insufficient funds to cover.  But Bank of America is not permitted to authorize, or to charge a $35.00 fee for, one-time, "non-recurring" debit card transactions for which there are insufficient funds to cover.

17.     Despite the plain language of these documents, Bank of America nevertheless authorized, and imposed overdraft fees for, non-recurring debit card transactions made with Uber Technologies, Inc. ("Uber") that are misclassified as recurring transactions and that result in a negative balance, as discussed in detail below.

### A.    The Mechanics of a Debit Card Transaction

18.    A typical debit card transaction occurs in two parts, regardless of whether it is a one-time transaction for a routine daily purchase, or whether it is a recurring debit card transaction for payment of such items as a mortgage or electricity bill.

19.    First, authorization for the purchase amount is requested by the merchant.  During this step, when a merchant physically or virtually "swipes" a customer's debit card, the merchant's card terminal connects, via an intermediary, to the customer's bank, and requests authorization that the account is open and active and that the transaction is approved by the bank.

20.    Second, the customer's bank determines whether the account is valid and whether to authorize or decline the transaction, at which point the bank sends either an authorization or a denial back to the merchant's card terminal, via an intermediary.

21.    At issue in this case is the first step – specifically, the request for authorization to Bank of America, thereby resulting in the authorization of transactions even when insufficient funds were available and the imposition of an overdraft fee for each such transaction.

### B.    In 2010, Bank of America Begins Distinguishing Between "Non-Recurring" and "Recurring" Debit Card Transactions

22.    In 2010, Bank of America decided to cease authorizing overdrafts (and to thus cease charging $35.00 fees) on one-time "non-recurring" debit card transactions, but to continue to authorize overdrafts (and thus continue to charge $35.00 fees) on "recurring" debit card transactions – that is, transactions occurring in regular intervals like payments for mortgages, utilities, insurance premiums, and membership fees.  In short, Bank of America for the first time adopted a distinction between two types of debit card transactions – one-time (which were protected from overdraft fees) and recurring (without that protection).

23.    Bank of America used this distinction between one-time, non-recurring

transactions and recurring transactions to publically tout, through a massive media effort, its supposedly pro-consumer decision not to charge overdraft fees on routine debit card transactions. Indeed, Susan Faulkner, an executive at Bank of America, was quoted in a CNN article from 2010 as saying: "Our customers have been clear that **they want to know if a purchase is going to overdraw their account**."[1]  Around the same time, a New York Times article stated:  "In a move that could bring an end to the $40 cup of coffee, Bank of America said on Tuesday that it was doing away with overdraft fees on purchases made with debit cards[.]  Bank [of America] officials said that effective this summer, **customers who try to make purchases with their debit cards without enough money in their checking accounts will simply be declined**."[2] Faulkner was quoted in the New York Times piece as well: "What our customers kept telling me is **'just don't let me spend money that I don't have'. . . .  We wanted to help them avoid those unexpected overdraft fees**."[3]

24.    Accordingly, as Ms. Faulkner clearly understood, Bank of America's new distinction caused consumers to understand and expect that, when they attempt to use their debit card for a routine non-recurring purchase, the transaction will only be approved so long as sufficient funds exist in their checking account, and, therefore, the transaction will not possibly

---

[1]    Hibah Yousuf, "BofA to scrap overdraft fees on debit purchases", CNN Money, Mar.  10,  2010,  available  at *http://money.cnn.com/2010/03/10/news/companies/Bank_of_America_overdraft_fees/* (last visited Nov. 14, 2016) (emphasis added).

[2]    Andrew Martin, "Bank of America to End Debit Card Overdraft Fees", The New York Times, Mar. 9, 2010, available at *http://www.nytimes.com/2010/03/10/your-money/credit-and-debit-cards/10overdraft.html* (last visited Nov. 14, 2016) (emphasis added).

[3]    *Id.* (emphasis added).

result in an overdraft fee.

**C.** **The Contract Governing Bank of America's Relationship With Its Account Holders Expressly States That Non-Recurring Transactions Are Immune From Overdraft Fees**

25.     Consistent with Bank of America's public statements, the documents governing the relationship between Bank of America and its personal checking account holders, including Plaintiffs and the putative Class members, expressly state that Bank of America will not authorize overdrafts or charge overdraft fees for non-recurring debit card transactions.

26.     Indeed, Plaintiffs' and the putative Class members' personal checking accounts with Bank of America are, and were at all relevant times, governed by a document entitled "Deposit Agreement and Disclosures" (the "Deposit Agreement") – a standardized contract for deposit accounts, the terms of which are drafted by Bank of America, amended by Bank of America from time to time at its convenience and sole and complete discretion, and imposed by Bank of America on all of its customers. *See* Ex. A.

27.     In June 2010, shortly after the changes to Bank of America's overdraft policies discussed above were implemented, Bank of America issued a new Deposit Agreement (the pertinent terms of which remained in effect in the version of the Deposit Agreement effective March 4, 2016), which stated in relevant part:

> OVERDRAFT AND DECLINED OR RETURNED ITEMS
> When we determine that you do not have enough available funds in your account to cover a check or other item, then we consider the check or other item an insufficient funds item.  If you have enrolled in one of the optional Overdraft Protection plans and have enough available funds in the linked account under the Overdraft Protection plan, we transfer funds to cover the item.  Otherwise, without notice to you, we either authorize or pay the insufficient funds item and overdraw your account (an overdraft item) or we decline or return the insufficient funds item without payment (a returned item). . . .

PERSONAL ACCOUNTS - OVERDRAFT PRACTICES AND SETTINGS

**With our Standard Overdraft Setting, we do not authorize overdrafts for everyday non-recurring debit card transactions and ATM transactions. This means that we decline everyday non-recurring debit card transactions and ATM transactions when we determine that at the time of the transaction you may not have enough available funds in your account (or in any applicable Overdraft Protection plan) to cover the transaction.** . . . With this overdraft setting, we may authorize and pay overdrafts for other types of transactions. Other types of transactions include checks and other transactions made using your checking account number, recurring debit card transactions, ACH transactions, preauthorized payments, and automatic and online bill payments.

*Id.* at 11-13, 21-22 (emphasis added).

28.     The Deposit Agreement explains the distinction between "non-recurring" and "recurring" debit card transactions as follows:

> *What are everyday non-recurring debit card transactions and what are recurring debit card transactions?* Everyday non-recurring debit card transactions are usually purchases made with your debit card or debit card number on a one-time or day-today basis. As examples, you use your debit card for purchases of groceries, gas, or coffee in the morning. Recurring debit card transactions are usually transactions that you set up to occur automatically, such as automatic bill payments. As examples, you give merchants your debit card number to use for rent, mortgage, car, or utility payments.

*Id.* at 12.

29.     The Deposit Agreement expressly incorporates by reference a document entitled "Schedule of Fees". The Schedule of Fees states, in pertinent part:

> **We do not charge you an Overdraft Item fee on an everyday non-recurring debit card transaction**. We also do not charge you an Overdraft Item fee on a ATM transaction unless you agreed to our overdraft practices for that particular ATM transaction. We do charge you an Overdraft Item fee each time we authorize and pay

8

> any other type of overdraft transaction. These other types of
> transactions include checks and other transactions made using your
> checking account number, recurring debit card transactions, Online
> and automatic bill payments, and ACH transactions.

*See* Ex. B attached hereto, Schedule of Fees, at 13 (emphasis added).

30.     In July 2014, Bank of America drafted and imposed on account holders a

document entitled "Important Information about Your Card Agreement and Disclosure," which

states in pertinent part:

> Overdrafts and Unposted Transactions
>
> **When you do not have enough available funds in your account
> … to cover everyday non-recurring debit card purchases or
> ATM withdrawals, we will decline the transaction and you will
> not be subject to overdraft fees.** For checks, ACH, recurring
> debit card transactions and online bill payments, we may decline or
> return the transaction unpaid or we may complete it and overdraw
> your account.

*See* Ex. C attached hereto, Important Information Brochure: Card Agreement and Disclosure,

July 1, 2014, ¶¶ 4b, 7 (emphasis added).

31.     Thus, the express terms of the Deposit Agreement (and related documents)

between Bank of America and its customers, including Plaintiffs and the putative class members,

only permit Bank of America to charge overdraft fees on recurring debit card transactions

authorized into a negative balance, and in fact expressly provide that no non-recurring debit card

transactions will be authorized, and no overdraft fees will be charged, when there are insufficient

available funds in the account to cover the amount of a particular transaction.

32.     On its website, Bank of America reiterates its overdraft fee policy pertaining to

recurring and non-recurring transactions as follows:

> ATM withdrawals and everyday, non-recurring debit card
> transactions (individual debit card purchases such as at the grocery

store or a one-time online purchase), will only be authorized when
we determine you have enough available funds in your eligible
account or in your eligible linked Overdraft Protection account at
the time of the transaction. Otherwise, we typically decline the
transaction and we do not charge an Overdraft Item fee.

For other types of transactions, such as checks, Bill Pay and other
electronic payments, as well as recurring debit card payments we
may pay transactions when you don't have enough available funds
in your checking account or linked Overdraft Protection account at
the time of the transaction.

*See* Ex. D attached hereto, Glossary of Banking Terms, Definition of "Standard Setting" (also

available at *https://www.bankofamerica.com/deposits/manage/glossary.go* (last visited Nov. 14,

2016)).

33.     Likewise, the "FAQs" section of the Bank of America webpage pertaining to

"overdraft services" states, in pertinent part:

When you use your debit card for everyday, non-recurring
purchases, when we determine you don't have enough funds in
your account or linked Overdraft Protection account our standard
practice is to decline the transaction, and we do not charge an
overdraft fee.

For other types of transactions – like checks, Bill Pay and other
electronic payments, as well as recurring debit card payments –
made using your checking account number, we may charge you a
NSF: Returned Item fee each time we decline or return one of
these transactions. If we pay one of these transactions, we charge
you an Overdraft Item fee.

*See* Ex. E attached hereto, FAQs: With Bank of America's Overdraft Settings, will I still be

subject to Overdraft and NSF: Returned Item fees? (also available at

*https://www.bankofamerica.com/deposits/manage/faq-overdraft-services.go* (last visited Nov.

14, 2016)).

34.    Another FAQs section of Bank of America's website expressly states that "[w]e do not charge you an Overdraft item fee on an everyday non-recurring debit transaction." *See* Ex. F attached hereto, FAQs: Bank Account Rates and Fees, What is an Overdraft Item fee? (also available at *https://www.bankofamerica.com/deposits/manage/faq-account-rates-fees.go* (last visited Nov. 14, 2016).

35.    And, on the "Checking Clarity Statement" page of its website, described as providing "checking fee and policy information in a simple format so you know the ins and outs of your account," Bank of America provides its account holders a document entitled "Overview of Bank of America Core Checking key policies and fees," which states in pertinent part: "To help you avoid fees, we won't authorize ATM withdrawals or everyday debit card purchases when you don't have enough money in your account at the time of the transaction." *See* Ex. G attached hereto, Checking Clarity Statement (landing page), (also available at *https://www.bankofamerica.com/deposits/checking/checking-clarity-statement.go* (last visited Nov. 14, 2016); *See* Ex. H attached hereto, Overview of Bank of America Core Checking key policies and fees, Aug. 2016, at 1.

**D.    Bank of America Breaches Its Account Agreement By Imposing Overdraft Fees On Non-Recurring Debit Card Transactions That It Improperly Authorized Into a Negative Balance**

36.    Bank of America's debit card transaction processing and overdraft fee practices with respect to Uber transactions are both contrary to the plain language of the governing Account Agreement and related documents, and contrary to the statements on Bank of America's website that interpret those contractual documents for account holders.

37.    First, one-time, "non-recurring" Uber transactions were incorrectly classified as "recurring" transactions.   Specifically, Bank of America debit card charges from Uber are

misclassified as "recurring," because charges from Uber do not occur automatically at a designated interval, such as on a weekly or monthly basis.  Indeed, Uber charges occur on a ride-by-ride basis and thus plainly constitute one-time, every day transactions, clearly falling within Bank of America's own definition of "non-recurring transaction."

38.     Second, Bank of America authorized, and charged $35.00 overdraft fees for, these misclassified non-recurring debit card transactions made with Uber when there are insufficient available funds to cover the transactions.[4]  Bank of America assesses these overdraft fees despite its repeated contractual representations (and repeated representations on its own website) that (1) it will **only** authorize, and will **only** charge overdraft fees for, **recurring** debit card transactions for which there are insufficient available funds to cover; and (2) that it will **not** authorize, and will **not** charge overdraft fees for, **non-recurring** debit card transactions for which there are insufficient available funds to cover.

39.     These practices are not only contrary to Bank of America's contractual obligations to its account holders, they also fly directly in the face of the express statements from Bank of America that its newly imposed overdraft fee policy was designed "to help [customers] avoid . . . unexpected overdraft fees" by "[not] let[ting] [them] spend money that [they] don't have."

40.     To recap, after having affirmatively told its customers that they no longer need to worry about spending money they don't have in the course of making non-recurring, day-to-day purchases, and after having memorialized those promises in the governing account documents, Bank of America has now broken those promises by authorizing day-to-day Uber transactions

---

[4]     Significantly, most of these misclassified charges are of nominal dollar amounts (most Uber charges are under $10.00), significantly less than the $35.00 fee imposed by Bank of America.

that its customers don't have sufficient funds to cover.

     **E.**    **Bank of America Charges Plaintiffs Overdraft Fees for Non-Recurring Debit Card Transactions, In Direct Violation of the Account Agreement**

    41.    On March 4, 2016, with a balance of $3.44 in her Bank of America Core Checking account, Plaintiff Pantelyat used her Bank of America debit card to purchase a ride with Uber across town for $10.00. *See* Ex. I attached hereto, Screenshot of Plaintiff Pantelyat's "BofA Core Checking – 1230" Account. Later that same day, with a balance of -$6.56 in her account, Plaintiff Pantelyat used her Bank of America debit card to purchase a second ride with Uber across town for $7.67. *Id.*

    42.    Plaintiff Pantelyat's Uber transactions on March 4, 2016 constituted "non-recurring debit card transactions" within the meaning of the Account Agreement and related documents because Uber purchases are made on a one-time, day-to-day basis, and because such purchases were not set up by Plaintiff Pantelyat to occur automatically at a set interval.

    43.    At the time Plaintiff Pantelyat initiated these transactions, Plaintiff Pantelyat reasonably believed, based upon the Account Agreement and related documents, as well as other statements made by Bank of America interpreting those documents, that Uber charges are non-recurring transactions and that such transactions cannot incur an overdraft fee, that Bank of America would only authorize her attempt to purchase a ride with Uber if she had available funds in her checking account to cover the transaction, and that under no circumstances would she be charged an overdraft fee resulting from the transaction.

    44.    Nevertheless, both Uber charges were misclassified as "recurring" debit card transactions. *See* Ex. J attached hereto, Screenshot of Plaintiff Pantelyat's March 2016 eStatement for "BofA Core Checking – 1230" Account ("CHECKCARD 0303 UBER TECHNOLOGIES INC 866-576-1039 CA 24492156063719475244111 **RECURRING**" and

"CHECKCARD     0303     UBER     TECHNOLOGIES     INC     866-576-1039     CA
24692166063000556556138 **RECURRING**") (emphasis added).

45.     Accordingly, despite the fact that Plaintiff Pantelyat's checking account did not
have sufficient funds to cover either of these one-time and non-recurring transactions, Bank of
America authorized them anyway on the grounds that they were each "recurring" — resulting in
a balance of -$14.23.

46.     Later that same day, Bank of America charged two separate $35.00 overdraft fees
to Plaintiff Pantelyat's checking account as a result of the two misclassified Uber transactions.

47.     The Account Agreement and other related documents expressly prohibited the
authorization of, let alone the imposition of any overdraft fees related to, the non-recurring Uber
transactions dated March 4, 2016.

48.     Nevertheless, as a result of the first one-time, non-recurring $10.00 debit card
transaction to Uber, and the second one-time, non-recurring $7.67 debit card transaction to Uber
— neither of which should ever have been authorized in the first instance — Plaintiff Pantelyat
has been forced to pay $70.00 in overdraft fees to Bank of America.

49.     On May 10, 2016, with a balance of $0.04 in his Bank of America Core Checking
account, Plaintiff Edwards used his Bank of America debit card to purchase a ride with Uber for
$7.14. *See* Ex. K attached hereto, Screenshot of Plaintiff Edwards's "BofA Core Checking –
1282" Account.

50.     Plaintiff Edwards's Uber transaction on May 10, 2016 constituted a "non-
recurring debit card transaction" within the meaning of the Account Agreement and related
documents because Uber purchases are made on a one-time, day-to-day basis, and because such
purchases were not set up by Plaintiff Edwards to occur automatically at a set interval.

51.     At the time Plaintiff Edwards initiated the transaction, Plaintiff Edwards reasonably believed, based upon the Account Agreement and related documents, as well as other statements made by Bank of America interpreting those documents, that Uber charges are non-recurring transactions and that such transactions cannot incur an overdraft fee, that Bank of America would only authorize his attempt to purchase a ride with Uber if he had available funds in his checking account to cover the transaction, and that under no circumstances would he be charged an overdraft fee resulting from the transaction.

52.     Nevertheless, his Uber charge was misclassified as a "recurring" debit card transaction. *See* Ex. K attached hereto, Screenshot of Plaintiff Edwards's "BofA Core Checking – 1282" Account ("CHECKCARD 0509 UBER TECHNOLOGIES 866-576-1039 CA 55432866130000297662735 **RECURRING**") (emphasis added).

53.     Accordingly, despite the fact that Plaintiff Edwards's checking account did not have sufficient funds to cover this one-time and non-recurring transaction, Bank of America authorized it anyway on the grounds that it was "recurring" – resulting in a overdraft fee of $35.00 and a balance of -$42.10.

54.     On May 17, 2016, Bank of America charged an additional $35.00 extended overdrawn balance charge to Plaintiff Edwards's checking account as a result of the misclassified Uber transaction dated May 10, 2016, which put his account in the negative.

55.     As a result of the one-time, non-recurring $7.14 debit card transaction to Uber, which should never have been authorized in the first instance – Plaintiff Edwards has been forced to pay a $35.00 overdraft fee and an additional $35.00 extended overdrawn balance charge to Bank of America.

56.     On October 26, 2015, with a balance of \$0.74 her Bank of America Core Checking account, Plaintiff Scherer used her Bank of America debit card to purchase a ride with Uber for \$5.60.  On November 23, 2015, with a balance of \$8.23 in her Bank of America Core Checking Account, Plaintiff Scherer used her Bank of America debit card to purchase a ride with Uber for \$13.23.  On November 25, 2015, with a balance of -\$54.00 in her Bank of America Core Checking Account, Plaintiff Scherer used her Bank of America debit card to purchase a ride with Uber for \$14.74. *See* Ex. L attached hereto, Plaintiff Scherer's "BofA Core Checking – 4390" Account.

57.     Plaintiff Scherer's Uber transactions on October 26, 2015, November 23, 2015, and November 25, 2015 constituted "non-recurring debit card transactions" within the meaning of the Account Agreement and related documents because Uber purchases are made on a one-time, day-to-day basis, and because such purchases were not, and indeed cannot be, set up by Plaintiff to occur automatically at a set interval.

58.     At the time Plaintiff Scherer initiated these transactions, Plaintiff Scherer reasonably believed, based upon the Account Agreement and related documents, as well as other statements made by Bank of America interpreting those documents, that Uber  charges are non-recurring transactions and that such transactions cannot incur an overdraft fee, that Bank of America would only authorize her attempt to purchase a ride with Uber if she had available funds in her checking account to cover the transactions, and that under no circumstances would she be charged an overdraft fee resulting from the transaction.

59.     Despite the fact that Plaintiff Scherer's checking account did not have sufficient funds to cover any of these one-time and non-recurring transactions, Bank of America authorized them anyway on the grounds that they were each "recurring."  As a result of the Uber

transactions, Plaintiff Scherer has been forced to pay more than $35.00 in overdraft fees to Bank of America.

60.     Uber charges are not "recurring."

61.     No reasonable person would consider Uber charges to be "recurring" charges within the meaning of the Account Agreement and related documentation.

62.     In imposing and collecting overdraft fees resulting from improperly authorized non-recurring transactions misclassified as recurring, Bank of America breached its Account Agreement with Plaintiffs and the members of the proposed Class, converted Plaintiffs' and the members of the proposed Class' money, unjustly enriched itself, and violated New York General Business Law, as discussed below.

### CLASS ALLEGATIONS

63.     Plaintiffs bring this action on behalf of themselves and all others similarly situated pursuant to Rule 23 of the Federal Rules of Civil Procedure.  This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of Rule 23.

64.     The proposed class is defined as:

> All holders of consumer deposit accounts with Bank of America, N.A. in the United States who were charged (and not refunded or credited) overdraft fees on debit card transactions made with Uber Technologies, Inc. between January 1, 2012 and December 31, 2016 that were coded (or classified) by the merchant as recurring transactions (the "Class").

65.     Plaintiffs reserve the right to modify or amend the definition of the proposed Class before the Court determines whether certification is appropriate.

66.     Excluded from the Class are Bank of America, its employees, officers and directors, all customers who make a timely election to be excluded, and all judges assigned to hear any aspect of this litigation and Court staff.

67.     **Numerosity.**   The members of the Class are so numerous that joinder is impractical.  The Class consists of thousands of members, the identity of whom is within the knowledge of and can be ascertained only by resort to Bank of America's records.

68.     **Typicality.**  The claims of the representative Plaintiffs are typical of the claims of the Class in that the representative Plaintiffs, like all Class members, were charged overdraft fees by Bank of America as a result of non-recurring debit card transactions made with Uber that were misclassified as recurring transactions and authorized into a negative balance.  Plaintiffs, like all Class members, have been damaged by Bank of America's misconduct in that they were assessed unlawful, unfair, and unconscionable overdraft charges.  Furthermore, the factual basis of Bank of America's misconduct is common to all Class members and represents a common thread of unlawful, unfair, and unconscionable conduct resulting in injury to all members of the Class.

69.     **Commonality.**  There are numerous questions of law and fact common to the Class and those common questions predominate over any questions affecting only individual Class members.  Among the questions of law and fact common to the Class are whether:

a.     Uber transactions that were in fact "non-recurring" were misclassified as "recurring" pursuant to the meanings given to those terms by the relevant Bank of America contractual documents;

b.     Bank of America imposed overdraft fees on any such non-recurring debit card transactions made with Uber that were misclassified as recurring, or were not reclassified as non-recurring, when those transactions were authorized into negative balances;

c.     Bank of America breached its contract;

d.     Bank of America breached its covenant of good faith and fair dealing with

Plaintiffs and other members of the Class through its overdraft policies and practices with respect to non-recurring debit card transactions made with Uber;  and

   e. Bank of America was unjustly enriched through its overdraft policies and practices with respect to non-recurring debit card transactions made with Uber.

  70. Other questions of law and fact common to the Class include: (i) the proper method or methods by which to measure damages, and the declaratory relief to which the Class is entitled.

  71. **Adequacy.**  Plaintiffs are committed to the vigorous prosecution of this action and have retained competent counsel experienced in the prosecution of class actions and, in particular, class actions on behalf of consumers and against financial institutions.  Plaintiffs' claims arise out of the same overdraft policies governed by Bank of America's contract and other related documents and arise out of the same conduct and practices of Bank of America in imposing overdraft fees.  Thus, Plaintiffs have no interests antagonistic to the interests of any other Class member and accordingly, Plaintiffs are adequate representatives who will fairly protect the interests of the Class.

  72. **Superiority.**  A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  Since the amount of each individual Class member's claim is small relative to the complexity of the litigation, and due to the financial resources of Bank of America, no Class member could afford to seek legal redress individually for the claims alleged herein.  Therefore, absent a class action, the Class members will continue to suffer losses and Bank of America's misconduct will proceed without remedy.  Even if Class members themselves could afford such individual litigation, the court system could not.  Given the complex legal and factual issues involved, individualized litigation would significantly increase

the delay and expense to all parties and to the Court.  Individualized litigation would also create the potential for inconsistent or contradictory rulings.  By contrast, a class action presents far fewer management difficulties, allows claims to be heard which might otherwise go unheard because of the relative expense of bringing individual lawsuits, and provides the benefits of adjudication, economies of scale, and comprehensive supervision by a single court.

**FIRST CLAIM FOR RELIEF**
**Breach of Contract**
**(Individually and On Behalf of the Class)**

73.     Plaintiffs repeat and incorporate all allegation in paragraphs 1-71 above.

74.     Plaintiffs and Bank of America contracted for bank account deposit, checking, ATM, and debit card services, as embodied in Bank of America's Account Agreement and related documentation.

75.     Bank of America breached the terms of the Account Agreement and related documentation by charging overdraft fees on non-recurring debit card transactions made with Uber that were misclassified as recurring debit card transactions and authorized into a negative balance.

76.     In plain, clear, and simple language, the Account Agreement and related documentation promise: (1) that Bank of America will not authorize, and will not charge overdraft fees on, non-recurring transactions where there are insufficient available funds; and (2) that Bank of America will only authorize, and will only charge overdraft fees on, recurring transactions where there are insufficient available funds.  See Ex. A, at 12-13.

77.     Bank of America breached these plain contractual promises when it authorized into a negative balance, and then assessed overdraft fees on, "non-recurring" Uber transactions initiated by Plaintiffs and the Class members that were misclassified as "recurring" transactions,

pursuant to the meanings of those terms as described in the Account Agreement and related documentation.

78.     Specifically, Bank of America breached its contractual promises to Plaintiff and all members of the Classes by charging overdraft fees on one-time, non-recurring debit card transactions made with Uber that were misclassified as "recurring" debit card transactions, and by authorizing and imposing $35.00 overdraft fees on those mislabeled non-recurring debit card transactions.

79.     No reasonable person would consider Uber charges to be "recurring" charges within the meaning of the Account Agreement and related documentation.

80.     Plaintiffs and the members of the Class reasonably believed, based upon the Account Agreement and related documents, as well as other statements made by Bank of America interpreting those documents, that Uber charges are non-recurring transactions and that such transactions cannot incur an overdraft fee, that Bank of America would only authorize Uber purchases if available funds existed to cover the transaction, and that under no circumstances would overdraft fees be imposed resulting from such a transaction.

81.     At no time did any contractual provision exist authorizing Bank of America to charge overdraft fees on non-recurring debit card transactions initiated by Plaintiffs or any putative Class member.

82.     Plaintiffs and members of the Classes have performed all of the obligations imposed on them under the Account Agreement and related documentation.

83.     Plaintiffs and members of the Classes have sustained monetary damages as a result of Bank of America's breach of the account documents.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs and the Class demand a jury trial on all claims so triable and judgment as follows:

1.      Declaring Bank of America's overdraft fee policies and practices described above to be wrongful, unfair, and unconscionable;

2.      Awarding actual damages in an amount according to proof;

3.      Awarding restitution for all overdraft fees collected by Bank of America by Plaintiffs and the Class resulting from the wrongs alleged herein in an amount to be determined at trial;

4.      Disgorgement of the ill begotten gains derived by Bank of America from its misconduct;

5.      Awarding pre-judgment interest at the maximum rate permitted by applicable law;

6.      Awarding costs and disbursements assessed by Plaintiffs in connection with this action, including reasonable attorneys' fees pursuant to applicable law; and

7.      Awarding such other relief as this Court deems just and proper.


## JURY TRIAL DEMAND

Plaintiffs, on behalf of themselves and the Class, hereby demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all claims so triable.

Dated:  January 18, 2018

**AHDOOT & WOLFSON, PC**

_/s/ T. Wolfson_
_____
TINA WOLFSON
45 Main Street, Suite 230
Brooklyn, New York 11201
Tel:    917-336-0171
Fax:    917-336-0177
_twolfson@ahdootwolfson.com_

**AHDOOT & WOLFSON, PC**
ROBERT R. AHDOOT
THEODORE W. MAYA
BRADLEY K. KING
VANESSA SHAKIB
10728 Lindbrook Drive
Los Angeles, California 90024
Tel:    310-474-9111
Fax:    310-474-8585
_rahdoot@ahdootwolfson.com_
_tmaya@ahdootwolfson.com_
_bking@ahdootwolfson.com_
_vshakib@ahdootwolfson.com_


**WHITFIELD, BRYSON & MASON, LLP**
Daniel K. Bryson (_pro hac vice_ to be filed)
900 W. Morgan Street
Raleigh, North Carolina 27603
Tel:    919-600-5000
Fax:    919-600-5035
_dan@wbmllp.com_


**ZIMMERMAN REED LLP**
Christopher P. Ridout (_pro hac vice_ to be filed)
2381 Rosecrans Avenue, Suite 238
Manhattan Beach, California 90245
Tel:    877-500-8780
Fax:    877-700-8781
_christopher.ridout@zimmreed.com_

_Attorneys for Plaintiffs_