**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| NICOLETTA PANTELYAT, MICHAEL EDWARDS, and ISABELLE SCHERER, Individually and on Behalf of All Others Similarly Situated, | Civil Action No. 1:16-cv-08964-AJN |
| Plaintiffs, | |
| v. | |
| BANK OF AMERICA, N.A. and BANK OF AMERICA CORPORATION, | |
| Defendants | |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR AWARD OF SERVICE PAYMENTS TO CLASS REPRESENTATIVES, AWARD OF ATTORNEYS' FEES, AND REIMBURSEMENT OF EXPENSES**

## TABLE OF CONTENTS

I.   INTRODUCTION ................................................................................................1

II.  SUMMARY OF THE SETTLEMENT AND LITIGATION ...............................2

    A.   This Action Presented Novel Theories Of Liability.............................................2

    B.   The Settlement Is An Outstanding Result For The Settlement Class........................2

    C.   Class Counsel Expended Substantial Resources To Investigate, Prosecute, And
        Resolve The Action ......................................................................................3

    D.   The Settlement Administrator Effectuated The Court-Approved Notice Plan.............5

III. ARGUMENT ......................................................................................................6

    A.   The Court Should Approve The Modest Service Awards To The Class
        Representatives .............................................................................................6

    B.   The Requested Attorneys' Fee Award Is Fair And Reasonable ...............................7

        1.   The Percentage Method Is Appropriate In This Case.............................................8

        2.   The Requested Attorneys' Fees Are Reasonable Under The Percentage
            Method .............................................................................................11

        3.   The Goldberger Factors Confirm That A 25% Fee Is Fair And Reasonable ........13

            a.   The Time And Labor Expended By Class Counsel Support The Requested
                Fee ...........................................................................................14

            b.   The Magnitude And Complexity Of The Actions Support The Requested
                Fee ...........................................................................................15

            c.   The Risks Of The Litigation Support The Requested Fee ............................16

            d.   The Quality Of Class Counsel's Representation Supports The Requested
                Fee ...........................................................................................18

            e.   The Relationship Between The Amount Requested And The Settlement
                 Fund Supports The Requested Fee ............................................................19

            f.   The Public's Interest Would Be Served By Awarding The Requested Fee....20

        4.   The Lodestar "Cross-Check" Further Confirms The Reasonableness Of The
            Requested Fee.....................................................................................21

        5.   Class Counsel's Litigation Expenses Are Reasonable And Should Be Approved
            For Reimbursement..............................................................................25

IV.  CONCLUSION..................................................................................................25

## TABLE OF AUTHORITIES

Page

**CASES**

*Aponte v. Comprehensive Health Mgmt., Inc.*, No. 10-cv-4825, 2013 WL 1364147 (S.D.N.Y. April 2, 2013) .........................................................................................................15

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182 (2d Cir. 2008) ...............................................................................................................9, 11

*Beckman v. KeyBank, N.A.*, 293 F.R.D. 467 (S.D.N.Y. 2013)...................................12, 16, 23, 24

*Blum v. Stenson*, 465 U.S. 886 (1984) ...................................................................... 8, 11, 21

*Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980) .........................................................................8

*Cassese v. Williams*, 503 F. App'x 55 (2d Cir. 2012) ...............................................................21

*Castagna v. Madison Square Garden, L.P.*, No. 09-cv-10211-LTS-HP, 2011 WL 2208614 (S.D.N.Y. June 7, 2011).........................................................................................12

*Citiline Holdings, Inc. iStar Fin., Inc.*, No. 08-cv-03612-RJS (S.D.N.Y. Apr. 5, 2013) .............12

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974) .................................................16

*City of Providence v. Aeropostale, Inc.,* No. 11-cv-7132-CM-GWG, 2014 WL 1883494 (S.D.N.Y. May 9, 2014)..................................................................................... 9, 11

*Clark v. Ecolab, Inc.*, No. 07-cv-8623-PAC, 2010 WL 1948198 (S.D.N.Y. May 11, 2010).......11

*Clem v. KeyBank, N.A.*, No. 13-cv-789-JCF, 2014 WL 2895918 (S.D.N.Y. June 20, 2014).......13

*Cosgrove v. Sullivan*, 759 F. Supp. 166 (S.D.N.Y. 1991) .........................................................23

*Craft v. County of San Bernardino*, 624 F. Supp. 2d 1113 (C.D. Cal. 2008) .............................23

*Davis v. J.P. Morgan Chase & Co.,* 827 F. Supp. 2d 172 (W.D.N.Y. 2011) .............................23

*Di Giacomo v. Plains All Am. Pipeline*, No. 99-cv-4137-H, 2001 WL 34633373 (S.D. Tex. Dec. 19, 2001) .......................................................................................................23

*Dornberger v. Metro. Life Ins. Co.*, 203 F.R.D. 118 (S.D.N.Y. 2001).........................................7

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974) .................................................................20

*Fleisher v. Phoenix Life Ins. Co.*, No. 11-cv-8406-CM, 2015 WL 10847814 (S.D.N.Y. Sept. 9, 2015) ................................................................................................................9

*G.B. ex rel. N.B. v. Tuxedo Union Free School Dist.*, 894 F. Supp. 2d 415 (S.D.N.Y. 2012)........9

*Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43 (2d Cir. 2000)............................... passim

*Hayes v. Harmony Gold Mining Co. Ltd.*, 509 F. App'x 21 (2d Cir. 2013) ...............................11

*Hayes v. Harmony Gold Mining Co. Ltd.*, No. 08-cv-03653-BSJ-MHD, 2011 WL 6019219 (S.D.N.Y. Dec. 2, 2011).........................................................................................11

## TABLE OF AUTHORITIES

### (continued)

Page

*Hernandez v. Merrill Lynch & Co., Inc.*, No. 11-cv-8472-KBF-DCF, 2012 WL 5862749
(S.D.N.Y. Nov. 15, 2012) ....................................................................................................13

*Hernandez v. Merrill Lynch & Co., Inc.*, No. 11-cv-8472-KBF-DCF, 2013 WL 1209563
(S.D.N.Y. Mar. 21, 2013).....................................................................................................13

*Hicks v. Stanley*, No. 01-cv-10071-RJH, 2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005).............21

*Hyun v. Ippudo USA Holdings*, No. 14-cv-8706-AJN, 2016 WL 1222347 (S.D.N.Y. Mar. 24,
2016) .....................................................................................................................................24

*In re Adelphia Commc'ns Corp. Sec. & Derivative Litig.*, 272 F. App'x 9 (2d Cir. 2008) ..........19

*In re Adelphia Commc'ns Corp. Sec. & Derivative Litig.*, No. 03-MDL-1529-LMM, 2006 WL
3378705 (S.D.N.Y. Nov. 16, 2006) ......................................................................................19

*In re Am. Bank Note Holographics*, 127 F. Supp. 2d 418 (S.D.N.Y. 2001) ..........................12, 16

*In re Avon Prods., Inc. Sec. Litig.*, No. 89-cv-6216-MEL, 1992 WL 349768, at *3 (S.D.N.Y.
Nov. 6, 1992).........................................................................................................................8

*In re Beacon Assocs. Litig.*, No. 09-cv-3907-CM, 2013 WL 2450960 (S.D.N.Y. May 9, 2013)...8

*In re Citigroup Inc. Sec. Litig.*, 965 F. Supp. 2d 369 (S.D.N.Y. 2013) .......................................9

*In re Colgate-Palmolive Co. ERISA Litig.*, 36 F. Supp. 3d 344 (S.D.N.Y. 2014) ................10, 21

*In re Comverse Tech., Inc. Sec. Litig*, No. 06-cv-1825-NGG, 2010 WL 2653354 (E.D.N.Y.
June 24, 2010)........................................................................................................................19

*In re Currency Conversion Fee Antitrust Litig.*, 263 F.R.D. 110 (S.D.N.Y. Oct. 22, 2009)..........7

*In re Facebook, Inc. IPO Sec. and Derivative Litig.*, MDL No. 12-2389, 2015 WL 6971424
(S.D.N.Y. Nov. 9, 2015) ......................................................................................................14

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*, No. 02-cv-3400-CM-PED, 2010 WL 4537550
(S.D.N.Y. Nov. 8, 2010) ..........................................................................................16, 17, 25

*In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436 (S.D.N.Y. 2004)...........................18

*In re Indep. Energy Holdings PLC Sec. Litig.*, 302 F. Supp. 2d 180 (S.D.N.Y. 2003)...............25

*In re Initial Public Offering Secs. Litig.*, 671 F. Supp. 2d 467 (S.D.N.Y. 2009).........................11

*In re Interpublic Sec. Litig.*, No. 02-cv-6527-DLC, 2004 WL 2397190 (S.D.N.Y. Oct. 26,
2004) .....................................................................................................................................12

*In re Marsh ERISA Litig.*, 265 F.R.D. 128 (S.D.N.Y. 2010) .........................................17, 19, 25

*In re Merrill Lynch Tyco Research Sec. Litig.*, 249 F.R.D. 124 (S.D.N.Y. 2008)......................18

*In re Merry-Go-Round Enters., Inc.*, 244 B.R. 327 (Bankr. D. Md. 2000) ................................23

**TABLE OF AUTHORITIES**
**(continued)**

Page

*In re MetLife Demutualization Litig.*, 689 F. Supp. 2d 297 (E.D.N.Y. 2010) ............................19

*In re NASDAQ Mkt.-Makers Antitrust Litig.*, 187 F.R.D. 465 (S.D.N.Y. 1998).....................9, 15

*In re Priceline.com, Inc.*, No. 00-cv-1884-AVC, 2007 U.S. Dist. LEXIS 52538 (D. Conn. July 19, 2007)..................................................................................................................................12

*In re Rite Aid Corp. Sec. Litig.*, 146 F. Supp. 2d 706 (E.D. Pa. 2001) ........................................23

*In re Rite Aid Corp. Secs. Litig.*, 362 F. Supp. 2d 587 (E.D. Pa. 2005)......................................23

*In re RJR Nabisco, Inc. Sec. Litig.*, No. 88-cv-7905, 1992 WL 210138 (S.D.N.Y. Aug. 24, 1992) ......................................................................................................................................23

*In re Sadia S.A. Sec. Litig.*, No. 08-cv-9528-SAS, 2011 WL 6825235 (S.D.N.Y. Dec. 28, 2011) ......................................................................................................................................12

*In re Sumitomo Copper Litig.*, 74 F. Supp. 2d 393 (S.D.N.Y. 1999) .........................................20

*In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570 (S.D.N.Y. 2008) .........................................8, 9

*In re Veeco Instruments Inc. Secs. Litig.*, No. 05-MDL-01695-CM, 2007 WL 4115808 (S.D.N.Y. Nov. 7, 2007) ...................................................................................................18, 19

*Khait v. Whirlpool Corp.*, No. 06-cv-6381-ALC, 2010 WL 2025106 (E.D.N.Y. Jan. 20, 2010) .................................................................................................................................11, 12

*LeBlanc-Sternberg v. Fletcher,* 143 F. 3d 748 (2d Cir. 1998) ..................................................22

*Luciano v. Olsten Corp.*, 109 F.3d 111 (2d Cir. 1997)................................................................21

*Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358 (S.D.N.Y. 2002)......................................9

*Massiah v. MetroPlus Health Plan, Inc.*, No. 11-cv-05669-BMC, 2012 WL 5874655 (E.D.N.Y. Nov. 20, 2012) ....................................................................................................20

*McDaniel v. County Of Schenectady*, 595 F.3d 411 (2d Cir. 2010)....................................10, 24

*McMahon v. Olivier Cheng Catering & Events, LLC*, No. 08-cv-8713-PGG, 2010 WL 2399328 (S.D.N.Y. March 3, 2010)...................................................................................12, 24

*Missouri v. Jenkins*, 491 U.S. 274 (1989) ............................................................................11, 22

*Monzon v. 103W77 Partners, LLC*, No. 13-cv-5951-AT, 2015 WL 993038 (S.D.N.Y. Mar. 5, 2015) ........................................................................................................................................9

*New England Carpenters Health Benefits Fund v. First Databank*, No. 05-cv-11148-PBS, 2009 WL 2408560 (D. Mass. Aug. 3, 2009)..........................................................................23

*Parker v. Jekyll & Hyde Ent. Holdings, LLC*, No. 08-cv-7670-BSJ-JCF, 2010 WL 532960 (S.D.N.Y. Feb. 9, 2010) .........................................................................................................24

# TABLE OF AUTHORITIES
### (continued)
Page

*Parker v. Time Warner Ent. Co., L.P.*, 631 F. Supp. 2d 242 (E.D.N.Y. 2009)............................21

*Reyes v. Altamarea Group*, No. 10-cv-6451-RLE, 2011 WL 4599822 (S.D.N.Y. Aug. 16, 2011) ...................................................................................................................... 6, 11

*Roberts v. Texaco, Inc.*, 979 F. Supp. 185 (S.D.N.Y. 1997) ..........................................................6

*Sewell v. Bovis Lend Lease, Inc.*, No. 09-cv-6548-RLE, 2012 WL 1320124 (S.D.N.Y. Apr. 16, 2012) ...........................................................................................................................9

*Shapiro v. JPMorgan Chase & Co.*, No. 11-cv-7961-CM, 2014 WL 1224666 (S.D.N.Y. Mar. 24, 2014) .........................................................................................................passim

*Springer v. Code Rebel Corp.*, No. 16-cv-3492-AJN, 2018 WL 1773137 (S.D.N.Y. Apr. 10, 2018) .........................................................................................................................11

*Stefaniak v. HSBC Bank USA, N.A.*, No. 05-cv-720, 2008 U.S. Dist. LEXIS 53872 (W.D.N.Y. June 28, 2008)...........................................................................................................12

*Steiner v. Am. Broad. Co.*, 248 F. App'x 780 (9th Cir. 2007) ....................................................23

*Sukhnandan v. Royal Health Care of Long Island LLC*, No. 12-cv-4216-RLE, 2014 WL 3778173 (S.D.N.Y. July 31, 2014) .....................................................................................13

*Taft v. Ackermans*, No. 02-cv-7951-PKL, 2007 WL 414493 (S.D.N.Y. Jan. 31, 2007) .............18

*Taylor v. Trusted Media Brands, Inc.*, No. 16-CV-01812-KMK (S.D.N.Y Feb. 1, 2018)...........23

*Viafara v. MCIZ Corp.*, No. 12-cv-7452-RLE, 2014 WL 1777438 (S.D.N.Y. May 1, 2014)......13

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002) ......................................................23

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96 (2d Cir. 2005) ......................................10

*Westerfield v. Wash. Mut. Bank*, No. 06-cv-2817-JMA, 2009 U.S. Dist. LEXIS 94544 (E.D.N.Y. Oct. 2, 2009) ..............................................................................................12

*Wilkins v. HSBC Bank Nevada, N.A.*, No. 14-cv-190, 2015 WL 890566 (N.D. Ill. Feb. 27, 2015) .........................................................................................................................23

*Willix v. Healthfirst, Inc.*, No. 07-cv-1143-ENV-RER, 2011 WL 754862 (E.D.N.Y. Feb. 18, 2011) .........................................................................................................................11

*Yuzary v. HSBC Bank USA, N.A.*, No. 12-cv-3693-PGG, 2013 WL 5492998 (S.D.N.Y. Oct. 2, 2013) ................................................................................................12, 13, 23, 24

**RULES**

Fed. R. Civ. P. 23(h) ..................................................................................................7

## I.    **INTRODUCTION**

Class Counsel Ahdoot & Wolfson, PC achieved an exemplary result in this novel class action litigation. They recovered 80% of all of the revenues charged by Defendants as result of the Uber Overdrafts, in the form of a non-reversionary settlement fund of $22 million, which will be distributed through direct payments to Class Members. They did so despite the uncertainty of recovery through litigation, and they did so efficiently, without wasting the Court's and the parties' resources, while expending those resources necessary to vigorously prosecute the case.

Class Counsel now request that the Court approve payments of modest service awards of $2,500 to each Class Representative ($7,500 in total); approve a payment of attorneys' fees to Class Counsel in the amount of 25% of the Settlement Fund (or $5,500,000); and approve reimbursement of reasonable and necessary out-of-pocket litigation expenses in the amount of $51,562.67.

Given the excellent recovery obtained for the Settlement Class, the novel and complex nature of the claims, the amount of work involved, the skill and expertise required, and the significant risks that counsel undertook, the requested award of 25% of the Settlement Amount — a standard benchmark — is fair and reasonable. A lodestar cross-check confirms the reasonableness of the requested fee, which represents a multiplier of 4.88. The requested attorneys' fees are commensurate with those awarded by federal courts in this District and throughout the nation in complex class cases.

More than five weeks have passed since dissemination of the Notice and, in that time, as of May 31, 3018, there have been no objections and only 68 opt-out requests, a figure that represents a strikingly-low 0.00028% of the Settlement Class. Accordingly, the Settlement Class's reaction to the Settlement has thus far been one of overwhelming approval, further supporting the requested service awards, fee award, and expense award.

## II.   SUMMARY OF THE SETTLEMENT AND LITIGATION

**A.   This Action Presented Novel Theories Of Liability**

Class Counsel identified, investigated and researched novel class-wide claims for relief against Bank of America based on a never-before-seen theory of liability. In just 14 months, they vigorously prosecuted those claims on behalf of the approximately 254,194 Settlement Class Members, and then negotiated an exemplary settlement for the Class.

The case presents novel claims and is the first case against a bank for allegedly breaching a consumer deposit agreement by charging overdraft fees as a result of "non-recurring" debit card transactions that had been misclassified as "recurring" transactions — in this case, Uber charges. Had Class Counsel not identified, investigated, and prosecuted these claims, it is unlikely that any of the Settlement Class Members would have recovered anything.

**B.   The Settlement Is An Outstanding Result For The Settlement Class**

The Settlement requires Bank of America to establish an all-cash, non-reversionary Settlement Fund in the amount of $22 million — a sum representing approximately 80% of the total revenues gleaned by Bank of America through the conduct alleged in this Action — all of which, assuming final approve is granted, will be automatically distributed[1] (after first deducting administrative expenses, service awards, and attorneys' fees and expenses authorized by the Court) to each of the 245,194 Settlement Class Members. (Declaration of Tina Wolfson filed herewith ("Wolfson Decl.") ¶¶ 15-16, fn. 1.) Pursuant to the Settlement, the Fund was deposited in an interest-bearing escrow account and, as of May 31, 2018, has accrued $37,953.22 in

---

[1]     Unlike many class action settlements in which all claiming class members receive the same *pro rata* share of the fund (regardless of disparities in individual damages), in this case Class Counsel negotiated a Settlement in which each Settlement Class member will receive a payment from the Settlement Fund that is based on the number of overdraft fees that he or she actually incurred as a result of an Uber transaction. In other words, a Settlement Class member who suffered five $35 overdraft fees as a result of Uber transactions will receive five times the amount of money from the Settlement Fund as someone who incurred just one such overdraft fee. Not only is distribution of the Settlement Fund equitable, it occurs automatically and without any procedural hurdles whatsoever. Settlement Class Members need not submit a claim form or take any other action to receive payment from the Settlement, as the net Settlement Fund will be distributed automatically to each Settlement Class Member.

interest for the benefit of the Class. (*Id.* ¶ 29.)

The Settlement Fund will be used to pay: (1) all costs associated with administration of the Settlement (estimated to be $442,775 and capped at $455,000); (2) the Service Awards requested here (up to $2,500 for each of the three Plaintiffs); (3) attorneys' fees of up to 25% of the Settlement Fund (*i.e.* $5,500,000), as requested here; and (4) reimbursement of the $51,562.67 in expenses requested here. If approved, Class Counsel estimate that each Settlement Class Member will receive approximately $20 for each $35 overdraft fee charged to her or his Bank of America account.

Class Counsel and the Class Representatives strongly believe that the Settlement is more than fair, reasonable, and adequate, and that it is in the best interest of the Settlement Class. (Wolfson Decl. ¶ 24; *See generally* Declarations of Nicoletta Pantelyat ("Pantelyat Decl."), Michael Edwards ("Edwards Decl."), and Isabelle Scherer ("Scherer Decl.") filed herewith).

**C.    Class Counsel Expended Substantial Resources To Investigate, Prosecute, And Resolve The Action**

The Settlement was achieved through the skill, tenacity, and considerable efforts of Class Counsel, who litigated this Action on a wholly contingent basis against highly skilled defense counsel, in the face of a substantial risk of zero recovery.

As detailed in the Declaration of Tina Wolfson, Class Counsel diligently pursued this Action from its outset.  (Wolfson Decl. ¶¶ 3-27.)  These efforts generally included:

(i)    Conducting a thorough pre-filing examination, investigation, and evaluation of the relevant law and claims in the Action.  This work included a seven-month pre-filing process that involved interviews with hundreds of Bank of America account holders, analysis and inspection of a multitude of these individuals' bank statements, researching changes in Bank of America's business practices that became effective circa 2010, reviewing publicly available online materials including consumer complaints to government agencies, researching government enforcement actions against Defendants, analysis of the myriad contractual provisions in the many

iterations of Bank of America's deposit agreements and other account-related documents, analysis of lengthy Bank of America Merchant Services Agreements, analysis and inspection of the Uber website and application across various operating systems, consultations with experts regarding the debit card payment systems and networks, analysis of potential arbitration-related issues, and the other pre-filing investigative work described in the Wolfson Declaration.  (Wolfson Decl. ¶ 3.)

(ii)     Exhaustive legal research concerning potentially applicable causes of action and available defenses, and a survey of potentially applicable laws across the United States, as well as choice of law issues. (*Id.* ¶ 4.)

(iii)    Drafting the detailed Class Action Complaint based on this factual and legal investigation. (*Id.*)

(iv)     Drafting and serving a preservation demand and comprehensive discovery requests on Defendants, covering every issue relevant to liability and class certification.  (*Id.* ¶ 5.)

(v)      Drafting and negotiating a protective order that was entered by the Court, as well as an ESI protocol to govern the production of documents. (*Id.* ¶ 6.)

(vi)     Performing further extensive legal research and analysis concerning the issues presented in Defendants' motion to dismiss and drafting the Opposition.  (*Id.* ¶ 7.)

(vii)    Engaging in early discussions with Bank of America regarding the possibility of resolving the Action, which involved lengthy preliminary negotiations, and discovery concerning issues pertaining to the Settlement Class and the underlying claims. (*Id.* ¶ 8.)

(viii)   Reviewing and analyzing documents and information produced by Bank of America. (*Id.* ¶ 9.)

(ix)     Drafting a comprehensive mediation brief and attending three separate mediation sessions with the Honorable Daniel Weinstein (Ret.) of JAMS and his co-mediator Lizbeth Hasse, Esq. (*Id.* ¶¶ 10-12.)

(x)      Participating in further extensive arms-length negotiations and in-person meetings

with defense counsel following mediation, to finalize and memorialize all aspects of the Settlement Agreement and its exhibits. (*Id.* ¶ 18.)

(xi)     Conducting confirmatory discovery, including obtaining voluminous data and conducting in-person interviews of Bank of America employees. (*Id.* ¶ 14.)

(xii)    Coordinating with Plaintiffs' counsel, Zimmerman Reed, LLP and Whitfield, Bryson & Mason, LLP to ensure an organized and efficient litigation effort. (*Id.* ¶¶ 23, 31.)

(xiii)   Drafting the voluminous Settlement-related pleadings and the amended complaint. (*Id.* ¶ 22.)

(xiv)    Organizing a competitive bidding process, obtaining and reviewing bids from potential settlement administrators, and negotiating an administration contract with Epiq (including a cap on Epiq's fee), and a detailed escrow agent agreement. (*Id.* ¶¶ 19-20, 26.)

(xv)     Supervising dissemination of Notice to the Class and the Class response. (*Id.* ¶ 27.)

(xvi)    Responding to Settlement Class Member inquiries (which involved in-person discussions and written communications among Class Counsel) regarding the Settlement. (*Id.* ¶ 27.)

Class Counsel respectfully submit that the Settlement would not have been possible without these extensive efforts, undertaken by Class Counsel on behalf of the Class in the face of substantial litigation risks and hurdles at every turn. The result is a testament to their hard work and the quality of their representation.

**D.     The Settlement Administrator Effectuated The Court-Approved Notice Plan**

As required by the Court's Preliminary Approval Order (Dkt. 71), Notice was mailed to all 245,194 Settlement Class Members by April 23, 2018. (Wolfson Decl. ¶¶ 15-16, 29, fn. 1 & Ex. A (the Notice).) A Settlement Website was established specifically for this Settlement to provide relevant dates and deadlines and to make the Notice and certain important case documents available for review and download. (*See* www.rideoverdraftsettlement.com; Wolfson Decl. ¶ 28.) The Notice advised potential Settlement Class Members that Class Counsel would

seek attorneys' fees in an amount not to exceed 25% of the Settlement Fund, and also would seek reimbursement of costs. (Wolfson Decl. Ex. A ¶ 13.) The Notice further advised Settlement Class Members that Class Counsel would apply for Service Awards of $2,500 to each named Plaintiff. (*Id*. at ¶14.)

While the deadline for Settlement Class Members to object to the requested attorneys' fees and expenses — June 22, 2018 — has not yet passed, to date there is not a single objection to Class Counsel's fee request or the Settlement. (Wolfson Decl. ¶ 28.)  If any objections are received, they will be addressed in the Motion for Final Approval of Class Action Settlement, which is due on July 6, 2018.

## III.   ARGUMENT

In view of the novel, complex nature of this Action, the gravity of the risks, and the results achieved, the Court should approve the requested service awards and attorneys' fees and expenses, as they are eminently fair and reasonable.

### A.   The Court Should Approve The Modest Service Awards To The Class Representatives

The Court should approve services awards to the three Class Representatives in the amount of $2,500 each. In the Second Circuit, subject to the Court's discretion, a class representative is eligible to receive an additional payment at the conclusion of the case, in recognition of the effort required to initiate and spearhead the litigation. *Roberts v. Texaco, Inc.*, 979 F. Supp. 185, 200 (S.D.N.Y. 1997). Courts routinely approve service awards to encourage individual plaintiffs to undertake representative lawsuits for the benefit of society, and to compensate such plaintiffs for the time and effort expended in assisting with the litigation, the risk incurred by becoming a litigant, and other burdens required of such plaintiffs. *Reyes v. Altamarea Group*, No. 10-cv-6451-RLE, 2011 WL 4599822, at *9 (S.D.N.Y. Aug. 16, 2011).

There is ample basis for the Court to approve service awards to Ms. Pantelyat, Mr. Edwards, and Ms. Scherer in the amount requested. Each chose to pursue a claim against a large and powerful bank on behalf of the Class. Each retained counsel, provided critical information

and documents at various stages of the Action, reviewed documents and the Settlement, stayed abreast of and in regular communication regarding the case, conferred with Class Counsel regarding settlement, and reviewed and ultimately executed the Settlement Agreement. (Pantelyat Decl.; Edward Decl.; Scherer Decl.) But for the initiative and participation of these Class Representatives, the 245,194 Settlement Class Members would likely not have obtained any of the relief promised by the Settlement.

In addition to expending time and effort toward the prosecution of the Action, each representative undertook the burden and risk of having their names associated with litigation in the public record and accepted the potential negative consequences such actions could have on their personal life, and did so for the benefit of the class. For example, it is no secret that many employers utilize background checks when considering hiring and may look askance at candidates who sue corporations. The class representatives nevertheless chose to stand up for the rights of class members despite such risks. Service awards are warranted in this case.

District courts of the Second Circuit have awarded service awards ranging from $2,500 to $85,000. *Dornberger v. Metro. Life Ins. Co.*, 203 F.R.D. 118, 125 (S.D.N.Y. 2001) (noting case law supports payments of between $2,500 and $85,000). The requested awards of $2,500 to each Class Representative fall on the low end of that range, and the aggregate amount to all three Class Representatives ($7,500) is similar to the service award amounts approved in other class settlements in this Circuit. *See, e.g.*, *In re Currency Conversion Fee Antitrust Litig.*, 263 F.R.D. 110, 131 (S.D.N.Y. Oct. 22, 2009) (approving incentive awards of $5,000 to each class representative). Finally, the total amount of service awards requested ($7,500) is just 0.0003% of the Settlement Fund — a very small percentage that is both fair and reasonable.

**B.      The Requested Attorneys' Fee Award Is Fair And Reasonable**

Rule 23 provides that "[i]n a certified class action, the court may award reasonable attorney's fees . . . that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h).

This is a "common fund" case. Because Defendants are paying a specific sum to the Settlement Class, the Court determines "a reasonable attorney's fee from the fund as a whole."

*Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). The rationale for the doctrine is equitable as much as it is prudential.  It "prevents unjust enrichment of those benefiting from a lawsuit without contributing to its cost," *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 47 (2d Cir. 2000), and "serve[s] to encourage skilled counsel to represent those who seek redress for damages inflicted on entire classes of persons, and to discourage future misconduct of a similar nature," *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 585 (S.D.N.Y. 2008).

   **1.     The Percentage Method Is Appropriate In This Case**

   Traditionally, courts have used two methods to calculate reasonable attorneys' fees under the common-fund doctrine: (1) the percentage-of-the-fund method, in which the court awards fees as a reasonable percentage of the common fund; or (2) the lodestar method, which involves multiplying the number of hours reasonably expended by a reasonable hourly rate and then applying a discretionary "multiplier based on 'other less objective factors,' such as the risk of the litigation and the performance of the attorneys." *Goldberger*, 209 F.3d at 47. In this case, the Court should apply the percentage-of-the-fund method, which best replicates the type of contingency-fee arrangement that any Settlement Class Member would have entered into with Class Counsel in a hypothetical *ex ante* fee negotiation, and which also best aligns the interests of Class Counsel with those of the Settlement Class.

   The Supreme Court historically has preferred the percentage-of-the-fund method, having found that where a class suit produces a fund for the class, as is the case here, "a reasonable fee" is one "based on a percentage of the fund bestowed on the class." *See Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984). Although the Court has discretion in choosing which method to employ, "the trend in this Circuit has been toward the use of a percentage of recovery as the preferred method of calculating the award for class counsel in common fund cases." *In re Beacon Assocs. Litig.*, No. 09-cv-3907-CM, 2013 WL 2450960, at *5 (S.D.N.Y. May 9, 2013); *see also, e.g.*, *In re Avon Prods., Inc. Sec. Litig.*, No. 89-cv-6216-MEL, 1992 WL 349768 (S.D.N.Y. Nov. 6, 1992). In fact, the "trend" of using the percentage of the fund method to compensate class counsel is now "firmly entrenched in the jurisprudence of this Circuit." *In re Citigroup Inc. Sec.*

*Litig.*, 965 F. Supp. 2d 369, 388 (S.D.N.Y. 2013); *Fleisher v. Phoenix Life Ins. Co.*, No. 11-cv-8406-CM, 2015 WL 10847814, at *14 (S.D.N.Y. Sept. 9, 2015) (collecting cases); *In re Telik*, 576 F. Supp. 2d at 586 (noting a "strong consensus—both in this Circuit and across the country—in favor of awarding attorneys' fees in common fund cases as a percentage of the recovery"); *In re NASDAQ Mkt.-Makers Antitrust Litig.*, 187 F.R.D. 465, 484 (S.D.N.Y. 1998) ("[T]here is strong support for the percentage approach from district courts in this Circuit."); *Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 370 (S.D.N.Y. 2002) (citing *Goldberger* and observing that "the trend within this Circuit is to use the percentage of recovery method to calculate fee awards to class counsel"); *City of Providence v. Aeropostale, Inc.,* No. 11-cv-7132-CM-GWG, 2014 WL 1883494, at *11 (S.D.N.Y. May 9, 2014) ("The trend among district courts in the Second Circuit is to award fees using the percentage method.").

The percentage-of-the-fund method is typically used in contingency-fee cases, and in all likelihood is the means by which an informed Settlement Class and Class Counsel here would have established counsel's fee at the outset. *See Monzon v. 103W77 Partners, LLC*, No. 13-cv-5951-AT, 2015 WL 993038, at *2 (S.D.N.Y. Mar. 5, 2015) (finding the percentage-of-the-fund method aligns closely with market practices, as it "mimics the compensation system actually used by individual clients to compensate their attorneys"); *G.B. ex rel. N.B. v. Tuxedo Union Free School Dist.*, 894 F. Supp. 2d 415, 427 (S.D.N.Y. 2012) ("[C]ourts in the Second Circuit no longer use the 'lodestar' method for computing attorneys' fees.") (citing *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 190 (2d Cir. 2008)); *Sewell v. Bovis Lend Lease, Inc.*, No. 09-cv-6548-RLE, 2012 WL 1320124, at *10 (S.D.N.Y. Apr. 16, 2012) ("[The percentage] method is similar to private practice where counsel operates on a contingency fee, negotiating a reasonable percentage of any fee ultimately awarded.").

The method also better aligns Class Counsel's interests with those of the Settlement Class because it bases the fee on the results the lawyers achieve for their clients, rather than on the number of hours they work, avoiding incentives for counsel to delay resolution of the case when an early resolution may be in the clients' best interests.  *See Wal-Mart Stores, Inc. v. Visa U.S.A.,*

*Inc.*, 396 F.3d 96, 121 (2d Cir. 2005) (the percentage method "directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation," whereas, "[i]n contrast, the 'lodestar method create[s] an unanticipated disincentive to early settlements, tempt[s] lawyers to run up their hours, and compel[s] district courts to engage in a gimlet-eyed review of line-item fee audits.") (citation omitted); *Goldberger*, 209 F.3d at 48-49 (criticizing lodestar method as "vexing," creating a "temptation for lawyers to run up the number of hours for which they could be paid," creating a "disincentive to early settlements," and causing a waste of judicial resources by forcing districts courts to engage in "gimlet-eyed review of line-item fee audits"); *McDaniel v. County Of Schenectady*, 595 F.3d 411, 418 (2d Cir. 2010) (noting that the percentage-of-the-fund-method discourages plaintiffs' lawyers from running up their billable hours, in stark contrast with the lodestar method, which "creates an incentive for attorneys to bill as many hours as possible, to do unnecessary work, and for these reasons can also create a disincentive to early settlement"); *In re Colgate-Palmolive Co. ERISA Litig.*, 36 F. Supp. 3d 344, 348 (S.D.N.Y. 2014).

And the percentage method is simpler to apply. *See Shapiro v. JPMorgan Chase & Co.*, No. 11-cv-7961-CM, 2014 WL 1224666, at *18 (S.D.N.Y. Mar. 24, 2014) (finding the percentage-of-the-fund method preferable because of its "ease in administration, permitting the judge to focus on 'a showing that the fund conferring a benefit on the class resulted from the lawyers' efforts' . . . rather than collateral disputes over billing") (internal quotation omitted).[2]

As set forth below, this Court should follow the trend in this Circuit by awarding attorneys' fees of 25% of the Settlement Fund, the reasonableness of which is well supported by a lodestar cross check.

---

[2]    Nevertheless, the Second Circuit has stated that the lodestar-times-multiplier approach is not so flawed that it should be entirely off-limits to district courts in their simulation of an *ex ante* arm's-length negotiation between an informed class and class counsel, *Goldberger*, 209 F.3d at 50, and that district courts are thus permitted to consider Class Counsel's lodestar in awarding fees from a common fund, in order to both formulate an absolute "baseline" fee award (without any risk enhancement) and loosely "cross check" the reasonableness of the fee actually requested.  In this case, as discussed at the conclusion of this brief, a lodestar cross check confirms the reasonableness of the requested 25% of the Settlement Fund as a fee award.

2. **The Requested Attorneys' Fees Are Reasonable Under The Percentage Method**

Class Counsel respectfully request an award of attorneys' fees of 25% of the Settlement Fund, which is a fair and reasonable fee for the legal services provided in this case.

In determining a fee percentage, the Supreme Court has directed courts to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at that time. *Missouri v. Jenkins*, 491 U.S. 274, 285-86 (1989). The Supreme Court also has noted that one-third of a client's total recovery is a typical contingency fee for general litigation. *See Blum*, 465 U.S. at 904 ("In tort suites, an attorney might receive one-third of whatever amount the plaintiff recovers. In those cases, therefore, the fee is directly proportional to the recovery.") (Brennan, J., concurring). Likewise, in the consumer class action context, district courts in this Circuit routinely approve fee requests for one-third of a common fund.[3]

Class Counsel's request for a fee of 25% of the Settlement Fund thus falls well within the range of reasonableness for fee awards in this District for settlements of comparable dollar amounts. *See, e.g.*, *In re Sadia S.A. Sec. Litig.*, No. 08-cv-9528-SAS, 2011 WL 6825235, at *2

---

[3]   S*ee, e.g., Springer v. Code Rebel Corp.*, No. 16-cv-3492-AJN, 2018 WL 1773137, at *5 (S.D.N.Y. Apr. 10, 2018) (Nathan, J.) ( applying the percentage method, and finding that "33.3% is well within the range of fee awards typically awarded"); *Hayes v. Harmony Gold Mining Co. Ltd.*, No. 08-cv-03653-BSJ-MHD, 2011 WL 6019219, at *1 (S.D.N.Y. Dec. 2, 2011) (awarding "attorneys' fees in the amount of one third" of a $9 million settlement fund), *aff'd* 509 F. App'x 21, 23-24 (2d Cir. 2013) (affirming fee award: "the prospect of a percentage fee award from a common fund settlement, as here, aligns the interests of class counsel with those of the class"); *In re Initial Public Offering Secs. Litig.*, 671 F. Supp. 2d 467, 516 (S.D.N.Y. 2009) (awarding one-third of the $510 million net settlement fund); *City of Providence v. Aeropostale, Inc.*, No. 11-cv-7132-CM-GWG, 2014 WL 1883494, at *20 (S.D.N.Y. May 9, 2014) (awarding 33% of $15 million settlement fund); *Khait v. Whirlpool Corp.*, No. 06-cv-6381-ALC, 2010 WL 2025106, at *8 (E.D.N.Y. Jan. 20, 2010) (awarding 33% of $9.25 million settlement fund); *Willix v. Healthfirst, Inc.*, No. 07-cv-1143-ENV-RER, 2011 WL 754862, at *6–7 (E.D.N.Y. Feb. 18, 2011) (awarding one-third of $7.675 million settlement fund); *Clark v. Ecolab, Inc.*, No. 07-cv-8623-PAC, 2010 WL 1948198, at *8–9 (S.D.N.Y. May 11, 2010) (awarding one-third of $6 million settlement fund). The courts in this Circuit have noted that fee requests for one-third of common funds represent what "reasonable, paying client[s] … typically pay … of their recoveries under private retainer agreements." *Reyes*, 2011 WL 4599822, at *8 (citing *Arbor Hill*, 522 F.3d at 191).

(S.D.N.Y. Dec. 28, 2011) (awarding 30% of $27 million common-fund settlement); *Citiline Holdings, Inc. iStar Fin., Inc.*, No. 08-cv-03612-RJS (S.D.N.Y. Apr. 5, 2013), ECF No. 127, at 1 (awarding 30% of $29 million common-fund settlement); *In re Am. Bank Note Holographics*, 127 F. Supp. 2d 418, 433 (S.D.N.Y. 2001) (awarding 25% of $21 million common-fund settlement); *Yuzary v. HSBC Bank USA, N.A.*, No. 12-cv-3693-PGG, 2013 WL 5492998, at *10 (S.D.N.Y. Oct. 2, 2013) (noting "Class Counsel's request for 31.7% of the [f]und is reasonable and 'consistent with the norms of class litigation in this circuit.'") (quoting *McMahon v. Olivier Cheng Catering & Events, LLC*, No. 08-cv-8713-PGG, 2010 WL 2399328, at *7 (S.D.N.Y. March 3, 2010)).[4]

As a result of the diligence and efficiency with which this litigation was prosecuted, Class Counsel reached the Settlement just 14 months after commencing the Action — a remarkable achievement that further underscores the appropriateness of the requested 25% fee. *See Castagna v. Madison Square Garden, L.P.*, No. 09-cv-10211-LTS-HP, 2011 WL 2208614, at *10 (S.D.N.Y. June 7, 2011) (commending plaintiffs' attorneys for negotiating "an excellent settlement early in the litigation thus saving hundreds of hours of legal time that would have increased their fees"); *In re Interpublic Sec. Litig.*, No. 02-cv-6527-DLC, 2004 WL 2397190, at *12 (S.D.N.Y. Oct. 26, 2004) ("Any award of attorneys' fees therefore should recognize this risk and should not penalize counsel for settling at an early stage of the litigation when it appeared appropriate to do so."); *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 474 (S.D.N.Y. 2013) (noting that this Court "encourage[s] early settlement of class actions, when warranted, because early settlement allows class members to recover without unnecessary delay and allows the judicial

---

[4]     The requested percentage of 25% is less than the percentage awarded in many common-fund settlements elsewhere in the Second Circuit. *See, e.g., Khait*, 2010 WL 2025106, at *22 (awarding 33% of $9.25 million common-fund settlement); *Westerfield v. Wash. Mut. Bank*, No. 06-cv-2817-JMA, 2009 U.S. Dist. LEXIS 94544, at *13 (E.D.N.Y. Oct. 2, 2009) (awarding 30% of the $11.4 million common-fund settlement); *Stefaniak v. HSBC Bank USA, N.A.*, No. 05-cv-720, 2008 U.S. Dist. LEXIS 53872, at *9 (W.D.N.Y. June 28, 2008) (awarding 33% of $2.9 million common-fund settlement, characterizing award as "typical in class actions settlements in the Second Circuit"); *In re Priceline.com, Inc.*, No. 00-cv-1884-AVC, 2007 U.S. Dist. LEXIS 52538, at *13 (D. Conn. July 19, 2007) (awarding 30% of $80 million common-fund settlement).

system to focus resources elsewhere"); *Hernandez v. Merrill Lynch & Co., Inc.*, No. 11-cv-8472-KBF-DCF, 2012 WL 5862749, at *2 (S.D.N.Y. Nov. 15, 2012) (endorsing early settlement of class action).

The 25% requested is below the amounts awarded in numerous prior consumer class actions litigated in this District that achieved settlements within a similar time frame.  *See, e.g.*, *Sukhnandan v. Royal Health Care of Long Island LLC*, No. 12-cv-4216-RLE, 2014 WL 3778173, at *15 (S.D.N.Y. July 31, 2014) (awarding one-third of fund from a settlement reached in 15 months); *Yuzary,* 2013 WL 5492998, at *10 (awarding 31.7% of fund from settlement reached in 12 months); *Viafara v. MCIZ Corp.*, No. 12-cv-7452-RLE, 2014 WL 1777438, at *15 (S.D.N.Y. May 1, 2014) (awarding one-third of the fund from settlement reached in 8-9 months); *Clem v. KeyBank, N.A.*, No. 13-cv-789-JCF, 2014 WL 2895918, at *8 (S.D.N.Y. June 20, 2014) (awarding 33% of the fund from settlement reached in 13 months); *Hernandez v. Merrill Lynch & Co., Inc.*, No. 11-cv-8472-KBF-DCF, 2013 WL 1209563, at *8 (S.D.N.Y. Mar. 21, 2013) (awarding 33% of settlement reached less than a year from filing initial complaint).

Accordingly, the requested fee of 25% of the Settlement Fund represents the low end of the market rate for the legal services performed by Class Counsel and compares favorably with fee percentages awarded in cases of similar type, size, and duration in this District. The attorneys' fee award requested by Class Counsel is fair and reasonable and should be approved.

**3.    The *Goldberger* Factors Confirm That A 25% Fee Is Fair And Reasonable**

In computing a reasonable fee in a common-fund settlement, district courts in the Second Circuit consider the factors articulated in *Goldberger*:

> (1) the time and labor expended by counsel;
> (2) the magnitude and complexities of the litigation;
> (3) the risk of litigation;
> (4) the quality of representation;
> (5) the requested fee in relation to the settlement; and
> (6) public policy considerations.

209 F.3d at 50. All of the *Goldberger* factors weigh in favor of approving the requested fee in

this case.

### a.     The Time And Labor Expended By Class Counsel Support The Requested Fee

The first *Goldberger* factor, the time expended by counsel, weighs in favor of the requested fee of 25% of the Settlement Fund. While Class Counsel secured the Settlement expeditiously — a mere 14 months after the case was first filed — Class Counsel nonetheless expended a substantial amount of time and work getting there, both before and after the Action was filed, as explained above (*supra* Part II.C), and as detailed in the accompanying Wolfson Declaration (¶¶ 3-28).

This work required the involvement of multiple lawyers and resulted in the expenditure of 1,612.80 hours of attorney time and tens of thousands of dollars of costs — a significant investment for the benefit of the Settlement Class. Class Counsel expended a total of 1,454.10 hours (Wolfson Decl. ¶¶ 48-49) and Plaintiffs' Counsel a total of 157.70 hours. (*See* the concurrently filed Declarations of Daniel K. Bryson ("Bryson Decl.") ¶ _, and Christopher P. Ridout ("Ridout Decl.") ¶__.) This investment secured the $22 million Settlement Fund — a sum that represents approximately 80% of the total revenues that Defendants gleaned through the underlying conduct alleged in the Action (*i.e.*, overdraft fees assessed as a result of Uber transactions).

In addition to the substantial amount of time and labor already expended, Class Counsel will continue to devote time and labor after the Settlement is finally approved, including overseeing the administration of the Settlement on behalf of the Settlement Class, responding to inquiries and answering questions from Settlement Class Members, working with the Settlement Administrator to resolve any concerns that may arise, among other tasks. (Wolfson Decl. ¶ 28.) This future expenditure supports the requested fee award. *See In re Facebook, Inc. IPO Sec. and Derivative Litig.*, MDL No. 12-2389, 2015 WL 6971424, at *10 (S.D.N.Y. Nov. 9, 2015) (considering class counsel's future efforts to oversee the claims process in awarding a 33% fee); *Aponte v. Comprehensive Health Mgmt., Inc.*, No. 10-cv-4825, 2013 WL 1364147, at *7

(S.D.N.Y. April 2, 2013) ("The fact that Class Counsel's fee award will not only compensate them for time and effort already expended, but for time that they will be required to spend administering the settlement going forward, also supports their fee request.").

Class Counsel have invested, and will continue to invest, substantial resources in these comprehensive, complex, and wide-ranging litigation and settlement efforts. The first *Goldberger* factor thus supports Class Counsel's request for a fee of 25% of the Settlement Fund.

### b. The Magnitude And Complexity Of The Actions Support The Requested Fee

The second *Goldberger* factor, the magnitude and complexity of the Action, further supports Class Counsel's requested fee. "[C]lass actions have a well-deserved reputation as being most complex." *In re NASDAQ Mkt.-Makers*, 187 F.R.D. at 477 (internal citation and quotations omitted). This case was no exception, either factually or legally. It involved multiple layers of factual complexity, much of which was obscured at the outset due to the classification of Uber debit card transactions as "recurring" on account holders' bank statements. Plaintiffs' theory of liability turned not on the party responsible for actually classifying the transactions but on the contractual promises made in the deposit agreement. As a result, Class Counsel necessarily conducted an extensive investigation of Defendants' business practices, the various versions of their deposit agreement in existence from 2010 through present, their methods of processing debit card transactions, and the nature of their relationships with Uber and various other third-parties.

The case involved complex legal issues as well. Among other things, Defendants challenged the timeliness of the suit, arguing that a pre-suit notice requirement mandated by the EFTA (a complex Federal law) for certain types of banking errors applied to Plaintiffs' claims. Defendants also insisted that the merchant's purported misclassification of the transactions at issue absolved Defendants from liability. These were difficult legal issues. They were also issues of first impression because, as noted above, the Action presented a first-of-its-kind legal

challenge to the propriety of certain large categories of overdraft fees assessed against consumer deposit accounts in this country.

Thus, the novelty and complexity of the issues, and the magnitude of the Action itself, strongly support the requested fee award. *See Beckman*, 293 F.R.D. at 479 (reasoning this factor supported fee award of 33%).

### c.     The Risks Of The Litigation Support The Requested Fee

The third *Goldberger* factor, the risk undertaken by Class Counsel in accepting the Action, likewise supports Class Counsel's requested fee. *Goldberger*, 209 F.3d at 55 ("It is well-established that litigation risk must be established as of when the case is filed."). This factor recognizes the risk of non-payment in cases prosecuted on a contingency basis, which can justify higher fees. *See Shapiro*, 2014 WL 1224666, at *21 ("The Second Circuit long ago recognized that courts should consider the risks associated with lawyers undertaking a case on a contingent fee basis."); *In re Am. Bank Note Holographics*, 127 F. Supp. 2d at 433 (noting the appropriateness of "tak[ing] [contingency-fee] risk into account in determining the appropriate fee to award"); *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, No. 02-cv-3400-CM-PED, 2010 WL 4537550, at *27 (S.D.N.Y. Nov. 8, 2010) ("Courts in the Second Circuit have recognized that the risk associated with a case undertaken on a contingent fee basis is an important factor in determining an appropriate fee award."). (*See also* Wolfson Decl. ¶¶ 43, 55.)

As the Second Circuit has explained, the risk of non-recovery in contingency-fee cases generally, as well as any heightened risk presented by a particularly complex matter, are important considerations for any *ex ante* negotiation between lawyer and prospective client:

> No one expects a lawyer whose compensation is contingent upon his success to charge, when successful, as little as he would charge a client who in advance had agreed to pay for his services, regardless of success. Nor, particularly in complicated cases producing large recoveries, is it just to make a fee depend solely on the reasonable amount of time expended.

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 470 (2d Cir. 1974) (citation omitted). "Indeed, the risk of non-payment in complex cases, . . . is very real. There are numerous class actions in

which counsel expended thousands of hours and yet received no remuneration . . . . There is no guarantee of reaching trial, and even a victory at trial does not guarantee recovery." *In re Flag Telecom Holdings*, 2010 WL 4537550, at *27. "It is well settled that class actions are notoriously complex and difficult to litigate." *Shapiro*, 2014 WL 1224666, at *21 (internal citation omitted).

As discussed above, the sheer novelty, complexity, and untested nature of the claims alleged rendered this Action difficult to litigate and presented many risks of non-payment for Class Counsel in addition to the typical risks of non-payment present in all class actions. Defendants filed a motion to dismiss which articulated a number of defenses to liability, including that their actions complied with the Electronic Fund Transfer Act; that Uber misclassified the charges as "recurring" and that there was no practical way for Defendants to track every transaction rather than merely relying on the merchant's classification; and that all account holders had the opportunity to contest the overdraft charges at issue through a statutory process built into the EFTA. Although Class Counsel remain confident in their ability to prove these claims and to effectively rebut Defendants' defenses, the complexity and lack of controlling legal precedent on many of the issues rendered success far from a sure thing. If Defendants had prevailed on any one of the aforementioned defenses, the Settlement Class Members would have recovered nothing in the Action and Class Counsel would have received no reimbursement of fees or costs.

From the start, Class Counsel knew that this litigation would be lengthy, complex, labor-intensive, and risky, but Class Counsel nonetheless took on the case. Class Counsel investigated and developed these claims for months, and ultimately filed suit on a pure contingency basis, investing substantial time and money to prosecute the Action, all without any guarantee of recovery or even any established track record of recovery to follow in prior cases resolved based on a similar legal theory.

Class Counsel should be rewarded for undertaking this litigation in the face of such risks. *See, e.g.*, *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 148 (S.D.N.Y. 2010) ("There was significant risk of non-payment in this case, and Plaintiffs' Counsel should be rewarded for

having borne and successfully overcome that risk.").  Thus, the third *Goldberger* factor weighs in favor of approving the requested fee award of 25%.

### d.  The Quality Of Class Counsel's Representation Supports The Requested Fee

The fourth *Goldberger* factor, the quality of the representation, is evaluated by "review[ing] the recovery obtained and the background of the lawyers involved in the lawsuit." *In re Merrill Lynch Tyco Research Sec. Litig.*, 249 F.R.D. 124, 141 (S.D.N.Y. 2008). This factor strongly supports the reasonableness of the requested fee in this case.

As a threshold matter, the quality of Class Counsel's representation is best evidenced by the $22 million recovery provided by the Settlement, which represents approximately 80% of the total revenues gleaned by Defendants through the alleged wrongful conduct. *See, e.g.*, *In re Veeco Instruments Inc. Secs. Litig.*, No. 05-MDL-01695-CM, 2007 WL 4115808, at *7 (S.D.N.Y. Nov. 7, 2007) ("[T]he quality of the representation of Plaintiffs' Counsel is best evidenced by the result."); *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 467 (S.D.N.Y. 2004) ("[T]he quality . . . of representation is best evidenced by the recovery obtained[.]"). After deducting administrative expenses and the requested service awards and attorneys' fee and expense awards, Settlement Class Members will receive an estimated $20 for each Uber overdraft fee incurred. (Wolfson Decl. Ex. A ¶ 7.) The Settlement is an excellent result for the Settlement Class, particularly given the risk of total non-recovery posed by continued litigation.

This outstanding result was attributable to the skill and substantial experience of Class Counsel. *See, e.g.*, *Taft v. Ackermans*, No. 02-cv-7951-PKL, 2007 WL 414493, at *10 (S.D.N.Y. Jan. 31, 2007) (assessing the quality of representation requires review of, *inter alia*, the backgrounds of the lawyers involved in the suit). Class Counsel at Ahdoot & Wolfson, PC are well-respected attorneys with significant experience litigating consumer class actions of similar size, scope, and complexity as this Action. (Wolfson Decl. ¶¶ 34-42.) It was that experience, along with a lot of hard work, that allowed Class Counsel to develop and execute on such a

comprehensive litigation strategy, overcome the significant obstacles raised by Defendants, and ultimately resolve the Action on favorable terms for the Settlement Class.

Furthermore, "[t]he quality of the opposition should be taken into consideration in assessing the quality of the plaintiffs' counsel's performance." *In re MetLife Demutualization Litig.*, 689 F. Supp. 2d 297, 362 (E.D.N.Y. 2010). Class Counsel achieved an exceptional result in the Action while facing a well-capitalized adversary represented by sophisticated and experienced defense counsel. That the Settlement was achieved against such formidable adversaries is a further testament to the quality and effectiveness of Class Counsel's representation. *See In re Marsh ERISA Litig.*, 265 F.R.D. at 148; *In re Adelphia Commc'ns Corp. Sec. & Derivative Litig.*, No. 03-MDL-1529-LMM, 2006 WL 3378705, at *3 (S.D.N.Y. Nov. 16, 2006), *aff'd*, 272 F. App'x 9 (2d Cir. 2008); *In re Veeco Instruments*, 2007 WL 4115808, at *7.

Class Counsel used their expertise to litigate this case efficiently, effectively, and civilly, against some of the most talented members of the defense bar. The excellent result is a function of the high quality of that work. Accordingly, the fifth *Goldberger* factor weighs in favor of approving the requested fee award of 25% of the Settlement Fund.

### e.     The Relationship Between The Amount Requested And The Settlement Fund Supports The Requested Fee

The fifth *Goldberger* factor considers the requested fee in relation to the settlement, to determine whether the requested fee amount represents a fair and reasonable percentage of the total recovery. "When determining whether a fee request is reasonable in relation to a settlement amount, 'the court compares a fee application awarded in similar . . . settlements of comparable value.'" *In re Comverse Tech., Inc. Sec. Litig*, No. 06-cv-1825-NGG, 2010 WL 2653354, at *3 (E.D.N.Y. June 24, 2010). As explained above, courts in this Circuit routinely approve fee requests for one-third of a common fund. *See supra*, Part B.2. In this case, Class Counsel seek fees of just 25% of the Settlement Fund, substantially less than those requested in many common-fund class action settlements of comparable size and type. The fifth *Goldberger* factor

thus supports Class Counsel's requested fee award.

**f.     The Public's Interest Would Be Served By Awarding The Requested Fee**

The final *Goldberger* factor considers whether awarding the requested fee would serve the public interest. In analyzing this factor, the Second Circuit and its district courts look to the social and economic value of class actions.  *See In re Sumitomo Copper Litig.*, 74 F. Supp. 2d 393, 399 (S.D.N.Y. 1999).

"Skilled counsel must be incentivized to pursue complex and risky claims [that protect the public on a contingency basis]." *Shapiro*, 2014 WL 1224666, at *24. Reasonable fee awards must be provided in order to ensure that attorneys are incentivized to litigate class actions, which serve as private enforcement tools to police defendants who engage in misconduct. *Id.* "Attorneys who fill the private attorney general role must be adequately compensated for their efforts," otherwise the public risks an absence of a "remedy because attorneys would be unwilling to take on the risk." *Massiah v. MetroPlus Health Plan, Inc.*, No. 11-cv-05669-BMC, 2012 WL 5874655, at *7 (E.D.N.Y. Nov. 20, 2012) (citing *Goldberger*, 209 F.3d at 51). Further, when individual class members seek a relatively small amount of damages, "economic reality dictates that [their] suit proceed as a class action or not at all." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 161 (1974).

Society undoubtedly has a strong interest in incentivizing lawyers to bring complex litigation that is necessary to protect consumers from being improperly assessed overdraft fees by the very financial institutions responsible for holding and protecting their money. In fact, class action litigation in this area is the most realistic means of safeguarding consumers from such banking practices because consumers generally are unaware of subtle distinctions in the deposit agreements that govern their accounts, and of the way in which transactions are processed and classified. Thus, the alternative to a class action in this case would have been no enforcement at all, and Defendants' allegedly unlawful conduct would have continued unabated. Meanwhile, aggrieved consumers would have lost their legal rights by attrition.

20

Awarding Class Counsel the requested fee award will serve the public interest by "providing lawyers with sufficient incentive to bring common fund cases" like this one in the future, *In re Colgate-Palmolive*, 36 F. Supp. 3d at 352, as well as helping to ensure that the public is represented by talented and experienced trial counsel in such proceedings. *Hicks v. Stanley*, No. 01-cv-10071-RJH, 2005 WL 2757792, at *9 (S.D.N.Y. Oct. 24, 2005). The final *Goldberger* factor supports Class Counsel's requested fee award.

### 4.    The Lodestar "Cross-Check" Further Confirms The Reasonableness Of The Requested Fee

A lodestar cross-check further supports the requested fee. Where the lodestar is "used as a mere cross-check, the hours documented by counsel need not be exhaustively scrutinized by the district court." *Goldberger*, 209 F.3d at 50; *see also Cassese v. Williams*, 503 F. App'x 55, 59 (2d Cir. 2012) (noting the "need for exact [billing] records [is] not imperative" where the lodestar is used as a "mere cross-check").

To calculate a lodestar, counsel's reasonable hours expended on the litigation are multiplied by counsel's reasonable rates. *Blum*, 465 U.S. at 897; *Parker v. Time Warner Ent. Co., L.P.*, 631 F. Supp. 2d 242, 264 (E.D.N.Y. 2009).  The resulting figure may be adjusted at the court's discretion by a multiplier, taking into account various equitable factors, including the contingent nature of the fee, the risks of non-payment, the quality of representation, and the results achieved. *See Wal–Mart Stores, Inc.*, 396 F.3d at 121; *Parker*, 631 F. Supp. 2d at 264; *Shapiro*, 2014 WL 1224666, at *24 ("[U]nder the lodestar method, a positive multiplier is typically applied to the lodestar in recognition of the risk of litigation, the complexity of the issues, the contingent nature of the engagement, the skill of the attorneys, and other factors.") (internal quotations and citations omitted).

The hourly billing rate to be applied is the hourly rate that is normally charged in the community where the counsel practices, *i.e.*, the "market rate." *Blum*, 465 U.S. at 895; *see also Luciano v. Olsten Corp.*, 109 F.3d 111, 115-16 (2d Cir. 1997) ("The 'lodestar' figure should be

'in line with those [rates] prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.'") (alteration in original) (citation omitted). In this case, the hourly rates used by Class Counsel in prosecuting the Action are comparable to rates charged by attorneys with similar experience, skill, and reputation, for similar services in the New York legal market. (Wolfson Decl. ¶ 53-54, 58-59.)[5]

In total, as of May 30, 2018, Class Counsel reasonably expended 1454.1 hours of attorney time identifying, investigating, prosecuting, and resolving the Action. (*Id.* ¶¶ 42-49.) These hours were expended by the following timekeepers at the following reasonable hourly rates:

| Professional | Title | Billable Rate | Billable Hours | Billable Fees |
|---|---|---|---|---|
| Tina Wolfson | Senior Partner | $850 | 125.1 | $ 106,335.00 |
| Robert Ahdoot | Senior Partner | $850 | 542.7 | $ 461,295.00 |
| Theodore Maya | Partner | $675 | 473.7 | $ 319,747.50 |
| Bradley King | Associate | $475 | 113.5 | $ 53,912.50 |
| Vanessa Shakib | Associate | $475 | 143.6 | $ 68,210.00 |
| Meredith Lierz | Associate | $450 | 29.1 | $13,095.00 |
| Diana Kiem | Paralegal | $125 | 26.4 | $ 3,300.00 |
| TOTALS: | | | 1,454.1 | $ 1,025,895.00 |

The hourly rates above used by Class Counsel are comparable to rates charged by attorneys with similar experience, skill, and reputation, for similar services in the New York legal market. (Wolfson Decl. ¶¶ 52-58 & Exs. C - F.)  Plaintiffs' Counsel Zimmerman Reed, LLP and Whitefield Bryson & Mason, LLP expended and additional 158.7 hours of work, amounting to lodestars of $24,754.50 and $74,645.00, respectively. (Bryson Decl. ¶¶ 7-13; Ridout Decl. ¶¶ 4-6.  These hours were justified and reflect reasonable billing rates of the individuals contributing the work.  (Bryson Decl. ¶¶ 3-6, 18-30; Ridout Decl. ¶¶ 3, 9-24.)

Class Counsel's and co-Plaintiffs Counsel's base lodestar to date — the sum of the hours

---

[5]     The Supreme Court and other courts have held that the use of current rates is proper since such rates compensate for inflation and the loss of use of funds. *See Missouri v. Jenkins*, 491 U.S.  274, 283-84 (1989) (recognizing "an appropriate adjustment for delay in payment— whether by the application of current rather than historic hourly rates or otherwise"); *LeBlanc-Sternberg v. Fletcher,* 143 F. 3d 748, 764 (2d Cir. 1998) ("The lodestar should be based on 'prevailing market rates' … and current rates, rather than historical rates, should be applied in order to compensate for the delay in payment") (citation omitted).

reasonably expended by each attorney multiplied by his or her reasonable hourly rate — is $1,125,294.50.  Accordingly, Class Counsel's requested fee award of $5,500,000 reflects an approximately 4.88 multiplier on Class Counsel's regular hourly rates. Federal courts in this District, elsewhere in the Second Circuit, and throughout the country routinely approve multipliers in that range — and much higher — in connection with class action settlements.[6]

Significantly, courts in this District have made clear that a high multiplier "should not result in penalizing plaintiffs' counsel for achieving an early settlement, particularly where," as

---

[6]     *See Beckman*, 293 F.R.D. at 481-82 (awarding 33% of $4.9 million settlement, a lodestar multiplier of 6.3, and observing that "[c]ourts regularly award lodestar multipliers of up to eight times the lodestar, and in some cases, even higher multipliers"); *Yuzary v. HSBC Bank USA, N.A.*, No. 12-cv-3693-PGG, 2013 WL 5492998, at *10 (S.D.N.Y. Oct. 2, 2013) (reasoning "[c]ourts regularly award lodestar multipliers of up to eight times lodestar, and in some cases, even higher multipliers," and awarding 31.7% of the common fund, representing a multiplier of 7.6); *Davis v. J.P. Morgan Chase & Co.*, 827 F. Supp. 2d 172, 185 (W.D.N.Y. 2011) (awarding one third of $42 million, a lodestar multiplier of 5.3); *In re RJR Nabisco, Inc. Sec. Litig.*, No. 88-cv-7905, 1992 WL 210138, at *5 (S.D.N.Y. Aug. 24, 1992) (awarding multiplier of 6); *Cosgrove v. Sullivan*, 759 F. Supp. 166, 167 n.1 (S.D.N.Y. 1991) (awarding lodestar multiplier of 8.74); *Taylor v. Trusted Media Brands, Inc.*, No. 16-CV-01812-KMK (S.D.N.Y Feb. 1, 2018), Dkt. 87 (granting class counsel one-third of $8.25 million settlement fund, representing a lodestar multiplier of 11.7, as set forth in counsel's motion for attorneys' fees, *see* Dkt. 79 at 18); *see also Wilkins v. HSBC Bank Nevada, N.A.*, No. 14-cv-190, 2015 WL 890566, at *11-12 (N.D. Ill. Feb. 27, 2015) (approving 11.03 lodestar multiplier in a TCPA case); *In re Merry-Go-Round Enters., Inc.*, 244 B.R. 327, 335 (Bankr. D. Md. 2000) (approving 19.6 lodestar multiplier); *New England Carpenters Health Benefits Fund v. First Databank*, No. 05-cv-11148-PBS, 2009 WL 2408560, at *2 (D. Mass. Aug. 3, 2009) (awarding 24% of a $350 million settlement, yielding a multiplier of 8.3); *In re Rite Aid Corp. Secs. Litig.*, 362 F. Supp. 2d 587, 590-91 (E.D. Pa. 2005) (awarding 25% of the $126,641,315 settlement fund, yielding a multiplier of 6.96); *Steiner v. Am. Broad. Co.*, 248 F. App'x 780, 783 (9th Cir. 2007) (upholding fee award constituting a lodestar multiplier of 6.85, finding that it "falls well within the range of multipliers that courts have allowed"); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1051 (9th Cir. 2002) (affirming 28% fee award where multiplier equaled 3.65, plus costs; and citing cases approving multipliers in common fund cases going as high as 19.6); *Craft v. County of San Bernardino*, 624 F. Supp. 2d 1113, 1125 (C.D. Cal. 2008) (approving fee award yielding a multiplier of 5.2 and stating that "there is ample authority for such awards resulting in multipliers in this range or higher"); *Di Giacomo v. Plains All Am. Pipeline*, No. 99-cv-4137-H, 2001 WL 34633373, at *13 (S.D. Tex. Dec. 19, 2001) (awarding 30% of $29.5 million global settlement, yielding a multiplier of 5.3); *In re Rite Aid Corp. Sec. Litig.*, 146 F. Supp. 2d 706, 736 n.44 (E.D. Pa. 2001) (awarding 25% of a $193 million settlement and stating a lodestar multiplier in the range of 4.5 to 8.5 is "unquestionably reasonable").

in this Action, "the settlement amount was substantial." *Beckman*, 293 F.R.D. at 482; *Hyun v. Ippudo USA Holdings*, No. 14-cv-8706-AJN, 2016 WL 1222347, at *3 (S.D.N.Y. Mar. 24, 2016) ("In this case, where the parties were able to settle relatively early and before any depositions occurred . . . the Court finds that the percentage method, which avoids the lodestar method's potential to 'create a disincentive to early settlement' . . . is appropriate.") (citing *McDaniel*, 595 F.3d at 418). In this case, Class Counsel recognized that an efficient settlement was the best result for the Settlement Class Members, many of whom are living paycheck to paycheck and have an immediate need for the monetary relief that the Settlement will provide. Indeed, Class Counsel believe that the disbursement of the Settlement Fund will have an immediate positive effect on the everyday lives of many Settlement Class Members.

Class Counsel's lodestar multiplier is also reasonable because it will increase over time, even after the Court grants final approval and decides the instant motion. "[A]s class counsel is likely to expend significant effort in the future implementing the complex procedure agreed upon for collecting and distributing the settlement funds, the multiplier will diminish over time." *Parker v. Jekyll & Hyde Ent. Holdings, LLC*, No. 08-cv-7670-BSJ-JCF, 2010 WL 532960, at * 2 (S.D.N.Y. Feb. 9, 2010). Here, "[t]he fact that Class Counsel's fee award will not only compensate them for time and effort already expended, but for time that they will be required to spend administering the settlement going forward, also supports their fee request." *Yuzary*, 2013 WL 5492998, at *11 (quoting *McMahon*, 2010 WL 2399328, at *8).

The parties acted responsibly in reaching a relatively early settlement of the Action. Class Counsel should be rewarded for identifying the novel legal theory underlying the Action, and for efficiently prosecuting and resolving the Action on behalf of the Settlement Class. The attorneys' fee award requested by Class Counsel is fair and reasonable and should be approved.

5.     **Class Counsel's Litigation Expenses Are Reasonable And Should Be Approved For Reimbursement**

Class Counsel respectfully seek reimbursement of their reasonable and necessary expenses. *See In re Marsh ERISA Litig.*, 265 F.R.D. at 150; *In re Flag Telecom Holdings*, 2010 WL 4537550, at *30 ("It is well accepted that counsel who create a common fund are entitled to the reimbursement of expenses that they advanced to a class."); *In re Indep. Energy Holdings PLC Sec. Litig.*, 302 F. Supp. 2d 180, 183 n.3 (S.D.N.Y. 2003) (reasoning court may compensate class counsel for reasonable out-of-pocket expenses necessary for the representation of the class).

Class Counsel respectfully request reimbursement of litigation expenses in the amount of $51,562.67, which includes (i) Class Counsel's expenses in the amount of $49,641.47 for fees for an expert, filings, service of process, attorney service, mediation, postage, outside copying, travel, transport and parking  (itemized in Wolfson Decl. ¶¶ 59-62); and (ii) Co-Plaintiffs' Counsel's expenses in the amount of $1,921.20 for other out-of-pocket litigation expenses (itemized in Bryson Decl. ¶¶ 14-17; Ridout Decl. ¶¶ 7-8), all of which were necessary to the effective prosecution and resolution of the Action on behalf of the Settlement Class.[7] These costs and expenses are fully documented and reasonable. (*See* Wolfson Decl. ¶¶ 59-62.)

## IV.     CONCLUSION

For the foregoing reasons, Class Counsel respectfully request that the Court approve disbursement of the following monetary awards from the Settlement Fund of: (i) service awards to the Class Representatives of $2,500 each ($7,500 in total); (ii) an attorneys' fee award to Class Counsel of 25% of the Settlement Fund, or $5,500,000; and (iii) an expense award to Class Counsel of $51,562.67.

---

[7]     Class Counsel also anticipate incurring additional expenses through the end of the claims process, for which Class Counsel will not seek additional reimbursement.

Dated: June 1, 2018                     Respectfully submitted,


                                        By: _____
                                            Tina Wolfson

                                        AHDOOT & WOLFSON PC
                                        Tina Wolfson
                                        Bradley K. King
                                        45 Main Street, Suite 230
                                        Brooklyn, New York 11201
                                        Tel:    917-336-0171
                                        Fax:    917-336-0177
                                        *twolfson@ahdootwolfson.com*
                                        *bking@ahdootwolfson.com*


                                        AHDOOT & WOLFSON, PC
                                        Robert R. Ahdoot*
                                        Theodore W. Maya*
                                        Vanessa Shakib*
                                        10728 Lindbrook Drive
                                        Los Angeles, California 90024
                                        Tel:    310-474-9111
                                        Fax:    310-474-8585
                                        *rahdoot@ahdootwolfson.com*
                                        *tmaya@ahdootwolfson.com*
                                        *vshakib@ahdootwolfson.com*
                                        *admitted *pro hac vice*

                                        *Class Counsel and Attorneys for
                                        Plaintiffs*


                                        Daniel K. Bryson*
                                        WHITFIELD BRYSON & MASON LLP
                                        900 W. Morgan St.
                                        Raleigh, NC 27603
                                        Tel: (919) 600-5000
                                        Fax: (919) 600-5035
                                        Email: *dan@wbmllp.com*
                                        *admitted *pro hac vice*

                                        *Attorneys for Plaintiffs*

Christopher P. Ridout
ZIMMERMAN REED LLP
2381 Rosecrans Ave., Suite 328
Manhattan Beach, CA 90245
Tel: (877) 500-8780
Fax: (877) 500-8781
Email: *christopher.ridout@zimmreed.com*
*admitted pro hac vice*

*Attorneys for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I, Tina Wolfson, hereby certify that a copy of the foregoing document, filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies shall be served by first class mail postage prepaid on all counsel who are not served through the CM/ECF system on June 1, 2018.

Tina Wolfson