UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



N. Pantelyat, *individually and on behalf of all others similarly situated,*

Plaintiffs,

-v-

Bank of America, N.A., *et al.,*

Defendants.

16-cv-8964 (AJN)

OPINION & ORDER

ALISON J. NATHAN, District Judge:

A hearing was held on August 8, 2018, during which time the Court heard Plaintiffs'
Motion for Final Approval of the Class Action Settlement and their Application for Award of
Attorneys' Fees and Expenses and Incentive Award for Class Representatives. Having
considered the written submissions of the parties, having held a final fairness hearing, and having
considered the arguments offered at that hearing, it is hereby ordered that the Class is finally
certified and the Settlement is finally approved.

## I.     Procedural Background

This putative class alleges that Bank of America breached its contractual obligations to
consumers by charging overdraft fees on non-recurring debit card transactions made with Uber
Technologies, Inc ("Uber"). *See* Dkt. No. 72. On March 19, 2018, the Court approved a
23(b)(3) class for settlement purposes, granted preliminary approval of the parties' proposed
settlement, and approved a direct notice program. Dkt. No. 71. The Court also granted leave for
Plaintiff Nicoletta Pantelyat to amend her initial complaint adding two additional plaintiffs and
otherwise revising the initial complaint. *See* Dkt. Nos. 70, 72.

In anticipation of the August 8, 2018 fairness hearing, the parties filed (1) a motion for attorneys' fees, expenses, and service payments to Settlement Class Representatives and accompanying declarations and (2) a motion for final approval of the class action settlement and accompanying declarations. *See* Dkt. Nos. 79–86, 89–93, 100, 103. In addition, the parties jointly submitted a supplemental memorandum and accompanying declarations responding to an objection submitted by several state attorneys general. *See* Dkt. Nos. 94, 96–98. Finally, the parties submitted an amended settlement agreement and release and a revised proposed approval order in response to the Court's questions at the fairness hearing. *See* Dkt. Nos. 104–06.

## II.  Class Certification

This Order incorporates the definitions in the Settlement Agreement, and all terms used in this Order have the same meanings as set forth in the Settlement Agreement, unless otherwise defined herein. The Class is defined as follows, with the described exceptions:

> [A]ll holders of consumer deposit accounts with Bank of America, N.A. in the United States who were charged (and not refunded or credited) overdraft fees on debit card transactions made with Uber between January 1, 2012 and December 31, 2016 that were coded (or classified) by the merchant as recurring transactions. Excluded from the Settlement Class are: (a) all persons who are employees, directors, and officers of Bank of America, N.A. and Bank of America Corporation; (b) the Judge presiding over this Action; and (c) the Court staff.

Settlement Agreement, Dkt. No. 65-1 ¶ 35. The Settlement Class Representatives are Plaintiffs Nicoletta Pantelyat, Michael Edwards, and Isabelle Scherer. *Id.* ¶ 38.

For the reasons set forth below, for purposes of this settlement, the Class is certified because it satisfies the requirements of Rule 23(a) and Rule 23(b)(3) of the Federal Rules of Civil Procedure.

### A.    The Settlement Class Meets the Rule 23(a) Criteria

"Rule 23(a) imposes four threshold requirements: (1) numerosity ('the class is so numerous that joinder of all members is impracticable'), (2) commonality ('there are questions of law or fact common to the class'), (3) typicality ('the claims or defenses of the representative parties are typical of the claims or defenses of the class'), and (4) adequacy of representation ('the representative parties will fairly and adequately protect the interests of the class')." *Ferrick v. Spotify USA Inc.*, No. 16-CV-8412 (AJN), 2018 WL 2324076, at *1 (S.D.N.Y. May 22, 2018) (quoting Fed. R. Civ. P. 23(a)).

### 1. Numerosity

Numerosity is satisfied in this action, as the Class consists of individuals holding 245,194 Bank of America accounts. Final Approval Br., Dkt. No. 90 at 5; Marquez Decl, Dkt. No. 103 ¶ 4; *see also Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995) ("[N]umerosity is presumed at a level of 40 members . . . .").

### 2. Commonality and Typicality

The Court turns next to commonality and typicality, the requirements of which tend to merge. *See Kindle v. Dejana*, 315 F.R.D. 7, 11 (E.D.N.Y. 2016). Resolution of the primary issue in this case—whether Bank of America breached its contractual obligations to consumers by mischaracterizing non-recurring Uber transactions as recurring and accordingly charging overdraft fees—is a common contention "the truth or falsity" of which "will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). As to typicality, "the claims of the named plaintiffs arise from the same practice or course of conduct that gives rise to the claims of the proposed class members." *In re Vivendi Universal, S.A.*, 242 F.R.D. 6, 85 (S.D.N.Y. 2007). The Settlement Class

Representatives allege they were charged overdraft fees as a result of the misclassified transactions at the heart of this case. *See* Preliminary Approval Br., Dkt. No. 64 at 21.

### 3. Adequacy

Finally, the representative parties will adequately protect the class's interests. The Settlement Class Representatives' interests arose out of the same conduct as the class members', and the groups' interests are aligned. The only possible conflict arises from incentive payments to the Settlement Class Representatives, but awarding incentive payments has been approved by courts in this Circuit as discussed further below. As to counsel, the Settlement Class is represented by Tina Wolfson and Robert Ahdoot of Ahdoot & Wolfson, PC ("Class Counsel"), who represent that they "have decades of experience in the prosecution of [consumer] class actions." Preliminary Approval Br. at 22 (citing Ahdoot Preliminary Decl., Dkt. No. 65 ¶¶ 23–29).

Having concluded that the Settlement Class meets the four Rule 23(a) criteria, the Court turns next to Rule 23(b)(3).

### B. The Settlement Class Meets the Relevant Rule 23(b)(3) Criteria

To meet the requirements of Rule 23(b)(3), the Court must conclude "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). In examining a settlement-only class, "a district court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) (internal citation omitted).

In this case, Rule 23(b)(3) is satisfied. For class issues to predominate over individual ones, "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole," must "predominate over those issues subject only to individualized proof." *Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 107–08 (2d Cir. 20017) (quotation omitted). Because Bank of America allegedly charged each class member the same overdraft fee(s) under contracts with identical relevant provisions, there is a significant issue common to all class members. Moreover, the class action device is a superior method for resolving this action because "proceeding individually would be prohibitive" due to the minimal recovery available to each class member. *Seijas v. Republic of Argentina*, 606 F.3d 53, 58 (2d Cir. 2010).

## III. Notice Was Appropriate

As required by the Preliminary Approval Order, Dkt. No. 71 ¶¶ 7–8, the class was provided with written notice of the terms of the settlement, the procedures for objecting to the settlement, and procedures for opting out of the Settlement Class. Notice was administered by third-party administrator Epiq Systems. Bank of America provided notice to state entities as required by the Class Action Fairness Act and provided Epiq with the names and addresses of all potential Settlement Class members and the number of overdraft charges to each account. Final Approval Br. at 9 (citing Hendriksen Decl., Dkt. No. 92, ¶¶ 2–6). Epiq then mailed notice to each unique address corresponding to accounts that received overdraft charges for a total of 244,184 class notices. *Id.* at 9 (citing Azari Final Decl., Dkt. No. 93 ¶¶ 9–12, 24–25 & Ex. A). Epiq used LexisNexis databases and email addresses as stopgap measures for those class members who could not be reached through these means. *Id.* (citing Azari Final Decl. ¶¶ 13–14 & Ex. B). According to the administrator, this process successfully reached 98.8% of the

Settlement Class. *Id.* (citing Azari Final Decl. ¶ 16). Notice directed class members to the settlement website, where they could review the pleadings associated with this case and submit opt-outs. *Id.* at 9–10 (citing Azari Final Decl. ¶ 17–18).

The content of the written notice, the manner in which notice was provided, and the high success rate at which notice was accomplished were sufficient to satisfy the requirements of Rule 23 and due process. The notice to government entities, as given, complied with 28 U.S.C. § 1715.

## IV.    The Settlement Is Finally Approved

The Court's approval of a settlement is contingent on a finding that the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). This inquiry entails a review of procedural and substantive fairness. *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001). The reviewing court should be "mindful of the 'strong judicial policy in favor of settlements, particularly in the class action context.'" *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (quoting *In re PaineWebber Ltd. P'ships Litig.*, 147 F.3d 132, 138 (2d Cir. 1998)). As the Second Circuit has explained, "[t]he compromise of complex litigation is encouraged by the courts and favored by public policy." *Id.* at 117 (quotation omitted).

### A.    The Settlement Is Procedurally Fair

A proposed settlement is presumed procedurally fair, reasonable, and adequate if it culminates from "arm's-length negotiations between experienced, capable counsel after meaningful discovery." *McReynolds v. Richards-Cantave*, 588 F.3d 790, 803 (2d Cir. 2009) (quotation omitted).

This case warrants the presumption. Settlement discussions occurred over the course of several months and after three in-person mediations under the supervision of experienced JAMS

mediators, including the retired Hon. Daniel Weinstein. Settlement Agreement at 2; Ahdoot Preliminary Decl. ¶¶ 8–10. As discussed briefly above, Class Counsel are capable members of the consumer class action bar. *Id.* ¶¶ 23–31. Finally, discovery was meaningful. Accounting for both pre-filing investigation and discovery, Class Counsel capably interviewed accountholders, examined bank statements and account documents, obtained an accounting of the affected accounts, consulted with experts, and interviewed Bank of American employees. Wolfson Decl., Dkt. No. 81 ¶¶ 3, 13–14.

B.     **The Settlement Is Substantively Fair**

A proposed settlement is substantively fair if a totality of the nine factors outlined in *City of Detroit v. Grinnell Corp.* weigh in favor of that conclusion. *See Wal-Mart*, 396 F.3d at 117 (citing *Grinnell*, 495 F.2d 448, 463 (2d Cir. 1974), *abrogated on other grounds by Missouri v. Jenkins*, 491 U.S. 274, 288–89 (1989) *and Goldberger v. Integrated Resources*, 209 F.3d 43, 48–50 (2d Cir. 2000)); *Ferrick*, 2018 WL 2324076, at *4. This case also presents the discrete issue, brought to this Court's attention by several State Attorneys General, whether the Settlement Agreement's third-party release provision is inequitable. The Court discusses that issue first, before explaining why the modified release term and *Grinnell* factors also favor a finding of substantive fairness.

1.     **The Attorneys General's Objection Does Not Render the Settlement Substantively Unfair**

On July 25, 2018, consumer protection offices of the Attorneys General of the States of New York, Arizona, Iowa, Massachusetts, Mississippi, Nebraska, New Mexico, Pennsylvania, Oregon, Rhode island, and Washington ("the Attorneys General") filed a letter with the Court expressing concern that the proposed settlement purported to release Uber from liability despite

its third-party status.[1] Attorneys General Letter, Dkt. No. 94 at 1. In relevant part, the provision releases Uber from "any claim[s] . . . from the beginning of the world until today . . . that . . . were or could have been asserted in the Complaint [or] arise out of, relate to, or are in connection with the assessment of overdraft fees on one-time, non-recurring Uber transactions." Settlement Agreement ¶ 101; *see also* Amendment to Settlement Agreement, Dkt. No. 104 ¶ 101 (modifying the foregoing to "with Bank of America's assessment of overdraft fees on one-time, non-recurring Uber transactions"). The Attorneys General's objection does not warrant modification of the final settlement, as the law of this Circuit permits third-party releases under the circumstances presented here.

The Attorneys General argue that the third-party release is inappropriate because Uber is a third party to this litigation and does not appear to bear liability derivative of Bank of America's. Attorneys General Letter at 1. Their submission levels three specific objections: (1) the class members' release as to Uber may have been inadvertent because Uber is not named as a party to the litigation and consumers may not have expected the settlement provision; (2) releases should not be granted as to third-party nonparticipants who have not paid consideration in exchange; and (3) in the absence of claims against Uber, it is "difficult to understand how Class Counsel can purport to advise class members of the advisability of releasing such claims, or to accurately evaluate their usefulness as a bargaining chip as part of the settlement." *Id.* at 2. On August 1, 2018, the parties filed a joint response to the letter disagreeing with the Attorneys General. Supp. Response, Dkt. No. 96.

---

[1] The Court need not reach the question of whether the Attorneys General have standing to assert this objection, and instead follows other courts in this district in treating their letter as an *amicus curiae* submission. *See In re Am. Int'l Grp., Inc. Sec. Litig.*, 916 F. Supp. 2d 454, 462 n.5 (S.D.N.Y. 2013).

Based on the parties' submissions, their representations about this matter at the Fairness

Hearing, and an additional authority letter filed on December 6, 2018, *see* Dkt. No. 115, for the

reasons below, the Court concludes that no modification of the third-party release in this

settlement agreement is warranted.

### a. Notice and Counsel

First, as the parties explain, there is little cause for concern that members of the class

were unaware of the release as to Uber. Although Uber is not a party to this action, its relevance

to this matter was clear from the nature of the class claims. Further, the notice mailing twice

identifies Uber as a released party. *See* Supp. Response at 4, 8. Second, the Court sees no

reason to doubt Plaintiffs' representation that Class Counsel conducted an exhaustive

investigation of the value of any claims against Uber before agreeing to the relevant release

language. *See* Dkt. No. 96 at 9–12; Weinstein Decl., Dkt. No. 97 ¶¶ 15–16. Together, the Court

finds these arguments and this legal background convincing, and sufficient to address the

Attorneys General's first and third concerns.

### b. Consideration for Third-Party Release

Turning to the broader requirements for third-party releases, there is nothing unusual

about releasing a third party in a class action settlement when the defendant could face further

litigation based on the same factual predicate as the claims presently being settled. *See In re*

*Lloyd's Am. Tr. Fund Litig.*, No. 96-CV-1262 (RWS), 2002 WL 31663577, at *11, 13 (S.D.N.Y.

Nov. 26, 2002) (noting that third-party releases are common as to, for example, (a) insurers and

auditors in securities fraud cases and (b) downstream sellers and distributors in products liability

cases). "The law is well established in this Circuit . . . that class action releases may include

claims not presented and even those which could not have been presented as long as the released

conduct arises out of the 'identical factual predicate' as the settled conduct." *Wal-Mart*, 396

F.3d at 107; *see also TBK Partners, Ltd. v. Western Union Corp.*, 675 F.2d 456, 460 (2d Cir. 1982). This "identical factual predicate" principle extends to releases of non-parties. *Wal-Mart*, 396 F.3d at 109. But the Attorneys General suggest that the release as to Uber is impermissible for the distinct reason that Uber, unlike the typical released third party, did not pay any consideration in exchange for this benefit.

The Court disagrees. It is correct, as the Attorneys General suggest, that many of the cases in which third party releases have been permitted involved third-party consideration of some kind. *See, e.g., Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1289–90 (9th Cir. 1992); *In re Lloyd's Am. Tr. Fund Litig.*, 2002 WL 31663577, at *11. Although courts in this Circuit treat the identical factual predicate doctrine as the primary factor in evaluating third-party releases, they frequently note that third parties' settlement contributions bolster this determination. *See, e.g., Wal-Mart*, 396 F.3d at 108–09. And at least one out-of-circuit court has objected to the "counter-intuitive" move of giving this kind of "free ride" to "bad actors"— although even that court declined to reverse the district court's approval decision given that the district court had concluded the parties intended the release. *In re Y&A Grp. Sec. Litig.*, 38 F.3d 380, 384 (8th Cir. 1994).

Nonetheless, the Court is not convinced that the case law supports *requiring* consideration, particularly when the release presents other indicia of fairness. The Attorneys General identify no authority for their position, and at least one court in this district has explicitly rejected it. In *In re Worldcom, Inc.*, the bankruptcy judge rejected an objection to a nonparty release as "without merit" given the presence of "the same underlying factual predicate" between the released claims and the class claims. 347 B.R. 123, 156 (S.D.N.Y. Bankr. 2006); *see also, e.g., Am. Med. Ass'n v. United Healthcare Corp.*, No. 00-CV-2800 (LMM), 2009 WL 4403185,

10

at *3 n.1 (S.D.N.Y. Dec. 1, 2009) (finding "permissible" release of non-party insurance carriers

for the stated purpose of "prevent[ing] any further challenges from being raised against any

party" arising from the claims settled in the action); *Klein v. O'Neal*, 705 F. Supp. 2d. 632, 666–

67 (N.D. Tex. 2010) ("That [third parties] have not contributed to the proposed settlement does

not preclude the court from approving an agreement that releases them, provided the settlement

is fair, reasonable, and adequate to the class as a whole.").[2]

Applying this test to the present case, the Court finds that the third-party release is

reasonable and raises no significant fairness concerns. The release addresses the same factual

predicate—Bank of America's assessment of overdraft fees on one-time, non-recurring Uber

transactions—as the underlying claims. *See* Amendment to Settlement Agreement ¶ 101.

Although the release's language is broader than the "identical factual predicate" test, the parties'

representations at the Fairness Hearing make clear that its breadth is designed to ensure it covers

both the original and the amended complaint, as well as variations in law across 50 states—not to

reach further unrelated conduct. Hearing Tr. at 21:18–22:9. And the parties' submissions and

representations at the Fairness Hearing resolve any concerns that the release compromises class

interests. Specifically, the parties explained that Bank of America sought finality in the

settlement, and would agree to the settlement amount only if assured it would face no further

liability to class members either directly or through litigation against Uber. Hearing Tr. at 16:4–

6, 17:20–19:7; *see also* Newberg on Class Actions § 18.20 (noting that defendants "may be

unlikely to settle a class action if class members can later pursue unasserted claims, or claims

---

[2] The parties identify *In re Holocaust Victim Assets Litigation*, 105 F. Supp. 2d 139 (E.D.N.Y. 2000), as another instance of a court's permitting third-party releases in the absence of consideration. *See* Supp. Response at 2. While that court did accept the release of non-parties notwithstanding their uncooperativeness because of the overall fairness of the recovery and "the substantial legal and factual uncertainties that would have complicated effective pursuit of legal claims" against them, 105 F. Supp. 2d at 149, 160, 164–65, the Court does not rest on this example. Its procedural and factual complexity, in addition to the fact that non-parties participated in that settlement to varying degrees, renders it inapposite to this case.

against non-parties, that may have the effect of re-opening the litigation"). And Plaintiffs'

counsel made a clear representation to the Court that they diligently investigated the viability of

claims against Uber and concluded that litigation against Uber could present risks for both class

and individual recovery. Hearing Tr. at 30:5–21; *id.* at 31:8–9 ("[W]e did not intend to give

Uber a free ride."). Together with the absence of class member objections on this point, the

Court finds these representations sufficient to support a finding that the release provision serves

the interests of the class and does not compromise the fairness, reasonableness, and adequacy of

the settlement.

### 2. The Revised Release Provision Raises No Further Substantive Unfairness Concerns

The release as initially drafted raised an additional, now resolved, fairness concern. At

the Fairness Hearing, the Court noted that the initial proposed release provision was not limited

to overdraft fees charged by Bank of America. Hearing Tr. at 22:12–23:11. The revised release

provision, *see* Amendment to Settlement Agreement ¶ 101, clarifies that the release concerns

claims against only Bank of America, Uber, and related entities, and accordingly raises no

further substantive fairness concerns.

### 3. The *Grinnell* Factors Render the Settlement Substantively Fair

Having addressed these threshold concerns, the Court turns to the substantive fairness of

the Settlement Agreement's remaining provisions. In assessing substantive fairness, the Court

considers the nine factors detailed by the Second Circuit in *Grinnell*, 495 F.2d at 448:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of
> the class to the settlement; (3) the stage of the proceedings and the amount of
> discovery completed; (4) the risks of establishing liability; (5) the risks of
> establishing damages; (6) the risks of maintaining the class action through the trial;
> (7) the ability of the defendants to withstand a greater judgment; (8) the range of
> reasonableness of the settlement fund in light of the best possible recovery; (9) the
> range of reasonableness of the settlement fund to a possible recovery in light of all
> the attendant risks of litigation.

*Id.* at 463 (internal citations omitted). "All nine factors need not be satisfied; rather, a court should look at the totality of these factors in light of the particular circumstances." *In re Top Tankers, Inc. Sec. Litig.*, No. 06-CV-13761 (CM), 2008 WL 2944620, at *4 (S.D.N.Y. July 31, 2008) (internal quotation marks omitted). The Court finds that these factors, individually and weighed against one another, counsel approval of the settlement.

### a. The Complexity, Expense and Likely Duration of the Litigation

The expense and duration of the litigation weigh in favor of approving this settlement. A fully briefed motion to dismiss was previously filed in this case, *see* Dkt. Nos. 48–52, and Defendants retain several defenses, including arguments that the fees were authorized under the contract, arguments that Plaintiffs' claims were barred by notification requirements, and arguments contesting the appropriateness of merits class certification, *see* Final Approval Br. at 15–16. Although the strength of these defenses varies, the expense and delay of fully litigating each of them through trial and any appellate briefing would likely offset the gains of a higher settlement amount. Accordingly, this factor favors approval of the settlement.

### b. The Reaction of the Class to the Settlement

"If only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement." *Wal-Mart*, 396 F.3d at 118 (quotation omitted). But at the same time "[l]ack of objection by the great majority of claimants means little when the point of objection is limited to a few whose interests are being sacrificed for the benefit of the majority." *Id.* (quoting *Nat'l Super Spuds, Inc. v. N.Y. Mercantile Exch.*, 660 F.2d 9, 16 (2d Cir. 1981) (alteration in original)).

Here, the reaction of the class to the settlement also weighs in favor of approval. Sixty-one[3] class members opted out of the Settlement, representing a tiny fraction of the Settlement Class. Those persons are identified in Exhibit A attached to the accompanying Final Approval Order and Judgment. And no objections to the settlement remain. While one class member initially purported to object to the settlement, *see* Dkt. No. 87, Class Counsel represent that they contacted him, learned that his objection was based on his belief that he would owe Bank of America money as a result of the settlement, and corrected this misunderstanding. *See* Final Approval Br. at 10–11 (citing Ahdoot Final Decl. ¶¶ 3–9). The class member then reportedly orally withdrew his objection. *See id.*

### c. The Stage of the Proceedings and the Amount of Discovery Completed

While the parties need not have engaged in extensive discovery for a settlement to garner approval, a sufficient factual investigation must have been conducted to afford the Court the opportunity to make an intelligent appraisal of the settlement. *Plummer v. Chemical Bank*, 668 F.2d 654, 660 (2d Cir. 1982). Furthermore, "the pretrial negotiations and discovery must be sufficiently adversarial that they are not designed to justify a settlement . . . [,but] an aggressive effort to ferret out facts helpful to the prosecution of the suit." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 176 (S.D.N.Y. 2000) (quoting *Martens v. Smith Barney, Inc.*, 181 F.R.D. 243, 263 (S.D.N.Y. 1998)).

Although this case settled swiftly, Class Counsel represent that they conducted substantial discovery, including document and data productions and interviews of Bank of America employees. Final Approval Br. at 18–19 (citing Wolfson Decl. ¶¶ 3–4). There is

---

[3] The settlement administrator received 84 unique requests for exclusion by the opt-out deadline, but deemed 5 incomplete and 2 duplicate and determined that it was unable to verify whether the remaining 18 were valid class members. *See* Final Approval Br. at 10 & n.7 (citing Azari Final Decl. ¶ 21); Marquez Decl., Dkt. No. 103 ¶¶ 12–13 & Ex. C (providing final notice update to the Court).

nothing in the record to suggest an underdeveloped investigation. Accordingly, this factor does not weigh against approval.

### d. The Risks of Establishing Liability and Damages and Maintaining a Class Action Through Trial

As noted in Part IV.B.3.a (factor a *supra*), Bank of America retained viable defenses in this case and was well-counseled. Impediments standing between the class and recovery include the previously filed motion to dismiss; a possible motion for summary judgment; a class certification briefing process; and appeal of class certification. Although the parties have not identified significant risks to establishing damages, the risks to establishing liability and securing class recovery are sufficiently great for both of these factors to favor settlement approval.

### e. The Ability of the Defendant to Withstand a Greater Judgment

While Defendants could likely withstand greater judgment, its capacity does not, standing alone, suggest that the settlement is unfair. *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d at 178 n.9; *see also Davis v. J.P. Morgan Chase & Co.*, 827 F. Supp. 2d 172, 178 (W.D.N.Y. 2011) (assigning "relatively little weight" to this factor). Given total potential damages in the range of what Defendants agreed to in this case, this factor favors approval of the settlement.

### f. The Range of Reasonableness of the Settlement Fund in Light of the Best Possible Recovery and in Light of all of the Attendant Risks of Litigation

"It is well-settled that a cash settlement amounting to only a fraction of the potential recovery will not *per se* render the settlement inadequate or unfair." *Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 621 (S.D.N.Y. 2012) (quotation omitted). "[I]n any case there is a range of reasonableness with respect to a settlement—a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs

necessarily inherent in taking any litigation to completion—and the judge will not be reversed if the appellate court concludes that the settlement lies within that range." *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972).

The settlement amount of $22 million constitutes, in the parties' estimation, "80% of all revenues charged by Bank of America as a result of Uber Overdraft fees." Final Approval Br. at 1. In comparison, if Plaintiffs' class were certified, Plaintiffs prevailed on the merits, and the Court accepted Plaintiffs' damages theories, Plaintiffs contend that the class would recover $27.1 million (plus an additional $2.45 million if prejudgment interest were assessed). *Id.* at 22 & n.8. Plaintiffs emphasize that courts regularly approve much lower recovery rates. *See, e.g.*, *Trombley v. Nat'l City Bank*, 826 F. Supp. 2d 179, 198 (D.D.C. 2011) (approving overdraft settlement with recovery range of 12 to 30 percent as "within the realm of reasonableness"); *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 583 (N.D. Ill. 2011) (approving overdraft settlement representing 10 percent of the class's maximum potential recovery). That is only part of the story, as the question before the Court is how the recovery rate compares to the likelihood of recovery. It is possible that the claims in the instant action are stronger than those in the comparators Plaintiffs identify. *See, e.g.*, *Trombley*, 826 F. Supp. 2d at 197–98 (discussing data limitations). Nonetheless, the recovery rate in this settlement significantly outpaces what is typical; it is much closer to full recovery. Weighed against the risks of litigation, the Court finds such a fund reasonable in this case.

* * *

Weighed together, the Court find that the *Grinnell* factors weigh in favor of the proposed settlement. For the foregoing reasons, the Court find the settlement, together with the distribution plan, to be fair, reasonable, and adequate.

## V. Distribution Plan

The parties propose that the Settlement Fund be automatically distributed to Settlement Class members after deduction of administration expenses (estimated to be $442,775 and capped at $455,000), attorneys' fees, expenses, and incentive awards approved by the Court; and any taxes due on interest earned by the Escrow Account into which the funds have been deposited. Settlement Agreement ¶¶ 82, 85a-b; Azari Preliminary Decl., Dkt. No. 66 ¶ 9. Under the Settlement, the fund will be automatically distributed to Settlement Class members in proportion to the number of Uber overdraft fees each Settlement Class member incurred. Settlement Agreement ¶ 85. Each such member will receive a settlement share calculated by dividing the fund balance by the total number of Uber overdraft fees paid by class members, and multiplying this per-fee amount by the number of fees paid by the class member. *Id.* ¶¶ 83, 85. The fees will be automatically distributed by credits to class members with open Bank of America accounts and by checks distributed by mail to the remainder, with the residual to be distributed as further explained in the Settlement Agreement. *Id* ¶¶ 86–91.

The Court finds this distribution plan, which efficiently allocates the fund to Settlement Class members in proportion to their alleged injury, to be fair, reasonable, and adequate.

## VI. Attorneys' Fees and Expenses

Class Counsel seek attorneys' fees in the amount of 25 percent of the settlement fund ($5.5 million); litigation expenses in the amount of $51,562.67; and service awards of $2,500 to each of the three Settlement Class Representatives. Fees Approval Br., Dkt. No. 80 at 1. Applying the lodestar method, the fees request yields a multiplier of 4.88. *See id.* at 22. The Court finds each of these requests fair, reasonable, and adequate.

## A. The Requested Fee Is Fair and Reasonable Under the Percentage Method

Class Counsel in a class action settlement may be entitled to a "reasonable fee." *See Goldberger*, 209 F.3d at 47. Whether a fee in a common fund case is reasonable may be determined by using either the lodestar method—in which the Court ascertains the number of hours reasonably billed to the class, multiples those hours by a reasonably hourly rate, and applies any appropriate adjustments—or by setting a reasonable percentage of the recovery as a fee. *Id.* In light of the "strong consensus—both in this Circuit and across the country—in favor of awarding attorneys' fees in common fund cases as a percentage of the recovery," *Maley v. Del Globel Techs. Corp.*, 186 F. Supp. 2d 358, 370 (S.D.N.Y. 2002), the Court applies the percentage-of-the-fund method to this case, with a lodestar cross-check to confirm its reasonableness, *see Goldberger*, 209 F.3d at 50. Under either method, courts evaluate the reasonableness of the resulting fee by considering (1) counsel's time and labor; (2) the case's magnitude and complexities; (3) the risk of continued litigation; (4) the quality of the representation; (5) the fee's relation to the settlement; and (6) public policy considerations. *Id.* Under these metrics, the Court finds that the requested award of 25 percent of the settlement fund is fair, reasonable, and adequate.

### 1. The *Goldberger* Factors Favor Approval of the Requested Fees

While the *Goldberger* factors do not all point in the same direction, the Court concludes that the balance favor approval. Factors counseling against a large award include the time, expense, and complexity of this lawsuit. Most importantly, this case progressed to settlement without extensive litigation, involving a lighter expenditure of counsel's time and labor than many comparable cases: Class Counsel expended only 1,454.1 hours in litigating this case, for total billable fees of approximately $1.03 million. Fees Approval Br. at 22 (citing Wolfson Decl. ¶¶ 42–49).

But Plaintiffs argue convincingly that the speed with which this litigation resolved itself reflects the quality of their representation rather than a reason to discount the appropriate reward. *See id.* at 2, 12–13; *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 467 (S.D.N.Y. 2004) ("[T]he quality of . . . representation is best evidenced by the recovery obtained[.]"). Plaintiffs also correctly point out that the litigation, while straightforward, involved novel legal issues raising a risk of non-recovery. *See* Fees Approval Br. at 15–17. They further appear to have exhaustively investigated the legitimacy and viability of the class claims. *See* Wolfson Decl. ¶¶ 3–27. And courts in this Circuit regularly approve higher awards in consumer class actions reaching settlement within a similar time frame. *See In re Interpublic Sec. Litig.*, No. 02-CV-6527 (DLC), 2004 WL 2397190, at *12 (S.D.N.Y. Oct. 26, 2004) ("Any award of attorneys' fees . . . should not penalize counsel for settling at an early stage of the litigation when it appeared appropriate to do so."). Accordingly, even if the hours expended counsel for a decreased award, the risks of litigation and the quality of representation provide sufficient counterpoint.

The final *Goldberger* factors confirm this conclusion. Turning next to the fee's relation to the settlement, courts in this district, including the undersigned, have regularly approved fees comparable to those sought in this case. *See Springer v. Code Rebel Corp.*, No. 16-cv-3492 (AJN), 2018 WL 1773137, at *5 (S.D.N.Y. Apr. 10, 2018) (describing award of 33.3% of a common fund as "within the range of fee awards typically awarded"); *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 587–88 & n.8 (S.D.N.Y. 2008) (collecting cases); *In re Am. Bank Note Holographics, Inc.*, 127 F. Supp. 2d 418, 433 (S.D.N.Y. 2001) (awarding 25% of common-fund settlement as reduction from counsel's 30% request). The public policy benefits of rewarding counsel for pursuing class claims that might not be viable as individual actions confirm the

reasonableness of the requested award. *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 161 (1974) (explaining that, in a case with low individual recovery amounts, "[e]conomic reality dictates that [the] suit proceed as a class action or not at all.").

### 2. The Lodestar Crosscheck Confirms the Fees' Reasonableness

The Court next performs a lodestar "cross-check" to verify the reasonableness of the requested fees. *See Goldberger*, 209 F.3d at 50 ("encourage[ing] the practice of requiring documentation of hours as a 'cross check' on the reasonableness of the requested percentage" but cautioning that "the hours documented by counsel need not be exhaustively scrutinized by the district court"). This method entails "multiplying the number of hours reasonably expended by the prevailing rates for the services provided" to generate a lodestar figure and comparing that figure to the requested fees. *Id.* at 489. "The lodestar should be based on 'prevailing market rates.'" *Sternberg v. Fletcher*, 143 F.3d 748, 764 (2d Cir. 1998).

The requested fee award of $5.5 million in this case, based on 1,618.8 hours of attorney time and total fees of $1,125,294.50, yields a multiplier of 4.89. *See* Fees Approval Br. at 22. Standing alone, a multiplier of 4.89 falls within the realm of reasonableness. *Yuzary v. HSBC Bank USA, N.A.*, No. 12-CV-3693-PGG, 2013 WL 5492998, at *10 (S.D.N.Y. Oct. 2, 2013) ("Courts regularly award lodestar multiples of up to eight times lodestar."); *Beckman*, 293 F.R.D. at 481–82 (similar). But because this standard value is in part a product of the high billable rates charged by senior partners on this matter and the significant proportion of hours of work performed by senior counsel, *see* Fees Approval Br. at 22, the Court must scrutinize whether those figures are themselves reasonable.

To justify their claimed fees, Plaintiffs point to contemporaneous class actions in which courts have approved rates of over $800 for counsel with 20 to 30 years of experience and identify industry reports roughly confirming these figures. *Id.* at 23; Wolfson Decl. ¶¶ 52–58;

Dkt. No. 81-C. Plaintiffs do not discuss the reasonableness of the hours performed or their performance by relatively senior members of the trial team, although Plaintiffs note that the lodestar will continue to diminish over time as the class is administered. The Court finds the foregoing sufficient to verify that the fees claimed in this case are appropriate prevailing rates, but insufficient, standing alone, to justify the precise distribution of hours performed. Nonetheless, the multiplier in this matter is low enough that any appropriate upward adjustment does not undermine its reasonableness, particularly in light of the significant and rapid recovery achieved on behalf of the class.

For the foregoing reasons, the Court approves the requested fees award.

## B.     The Litigation Costs Are Reasonable

Class Counsel are entitled to be reimbursed for litigation costs and expenses. *See In re Marsh ERISA Litig.*, 265 F.R.D. 128, 150 (S.D.N.Y. 2010). Here, Plaintiffs request reimbursement of $51,562.67 in litigation expenses. Fees Approval Br. at 25. These expenses are reasonable and are approved.

## C.     The Incentive Awards Are Reasonable

In the Second Circuit, class plaintiffs may receive additional payments as "incentive awards." *Roberts v. Texaco, Inc.*, 979 F. Supp. 185, 200 (S.D.N.Y. 1997). In this case, modest awards of $2,500 for each Class Plaintiff are appropriate given their efforts to retain Class Counsel, gather and provide Class Counsel with account-related documents, and maintain communication with and supervision over Class Counsel. *See generally* Scherer Decl., Dkt. No. 86; Edwards Decl., Dkt. No. 85; Pantelyat Decl., Dkt. No. 84. Although the Settlement Class Representatives did not take on significant risk in agreeing to serve in that role, *contra Roberts*, 979 F. Supp. at 200, the award they seek is correspondingly minimal. *See Dornberger v. Metro.*

*Life Ins. Co.*, 203 F.R.D. 118, 125 (S.D.N.Y. 2001) (describing payments ranging from $2,500 to $85,000).

## VII. Conclusion

For the reasons stated, the Settlement is determined to be fair, reasonable, and adequate. Accordingly, Plaintiffs' Motion for Final Approval of the Class Action Settlement is GRANTED. Plaintiff's Motion for Award of Service Payments to Class Representatives, Award of Attorneys' Fees, and Reimbursement of Expenses is also GRANTED.

In accordance with the terms of the Settlement Agreement, the Court will separately enter a Final Approval Order. The Court will also separately enter a final judgment and order of dismissal.

SO ORDERED.

Dated: January 31, 2019
New York, New York

_____
ALISON J. NATHAN
United States District Judge